UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HANS MOKE NIEMANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:22-cv-01110-AGF |
| ) | |
| SVEN MAGNUS ØEN CARLSEN A/K/A ) | |
| MAGNUS CARLSEN, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT CHRISTOPHER HIKARU NAKAMURA'S MOTION TO DISMISS**

Plaintiff Hans Moke Niemann ("Plaintiff"), a Connecticut citizen, has asserted various claims against, among others, Defendant Christopher Hikaru Nakamura ("Mr. Nakamura"), a Florida citizen.  Plaintiff's allegations against Mr. Nakamura are predicated entirely on Mr. Nakamura's alleged expression of opinions online, while in Florida, regarding whether *others* believed Plaintiff, who has admitted to cheating at chess, cheated in a recent chess tournament. The absence of any pleaded connection between Mr. Nakamura's alleged conduct and Missouri—much less one sufficient to confer this Court with personal jurisdiction over Mr. Nakamura—is obvious.  Indeed, Plaintiff does not—and cannot—plead any facts demonstrating the existence of personal jurisdiction in Missouri over Mr. Nakamura.  Plaintiff's claims against Mr. Nakamura must be dismissed for lack of personal jurisdiction.

Even were this Court to reach the sufficiency of the allegations in Plaintiff's Amended Complaint, Plaintiff's claims against Mr. Nakamura fare no better.  For several reasons, Plaintiff's vague and conclusory allegations fail to state a claim for which relief can be granted.

Simply put, all of Plaintiff's claims pleaded against Mr. Nakamura are wholly defective. As such, they must be dismissed.

## I.     BACKGROUND

On September 4, 2022, Plaintiff alleges he won a chess game against Magnus Carlsen ("Mr. Carlsen") during the Sinquefield Cup tournament in St. Louis, Missouri. (Am. Compl., Doc. 20, ¶ 6.) Plaintiff alleges that Mr. Carlsen falsely accused him of cheating afterwards and, when tournament officials refused his request that Plaintiff be disqualified, Mr. Carlsen withdrew from the tournament. (*Id.*, ¶¶ 8-9, 80.) Days later, Mr. Carlsen refused to play a complete game with Plaintiff in another chess tournament. (*Id.*, ¶ 10.) Plaintiff admits to having cheated at chess before but denies doing so during his Sinquefield Cup game with Mr. Carlsen. (*Id.*, ¶ 102.)

None of these allegations relate to Mr. Nakamura. Indeed, Mr. Nakamura is not mentioned until the fifth page of the Amended Complaint, and only sparsely thereafter. Plaintiff asserts that his relationship with Mr. Nakamura has been "acrimonious" for "several years."[1] (*Id.*, ¶ 59.) Plaintiff takes issue with various alleged, online statements of Mr. Nakamura regarding: (i) whether others believed Plaintiff had cheated; (ii) whether Plaintiff's pace of play and post-game explanation were odd; and (iii) publicly available news articles. (*Id.*, ¶¶ 97(a)-(d), 98(a)-(e), 99, 100(a)-(b), 101, 121-23, 132-34, 161-62.)

Plaintiff asserts five Counts against all five Defendants, *collectively*: (i) Count I, slander (*id.*, ¶¶ 172-77); (ii) Count II, libel (*id.*, ¶¶ 178-83); (iii) Count III, violation of the Sherman Act (*id.*, ¶¶ 184-90); (iv) Count IV, tortious interference with contract and business expectancies (*id.*, ¶¶ 191-97); and (v) Count V, civil conspiracy (*id.*, ¶¶ 198-202). None of the Counts is specific to any Defendant; instead each Count incorporates all 171 paragraphs of "factual" allegations.

---

[1] Plaintiff's Amended Complaint is littered with superfluous vitriol. (*E.g.*, Am. Compl., Doc. 20, ¶ 9 (referring to Mr. Carlsen's request that tournament officials disqualify Plaintiff as "corrupt and cowardly"), ¶ 10 (alleging that Mr. Carlsen "gutlessly" refused to play Plaintiff).) This, combined with its many obvious deficiencies, raises questions about the true intent of Plaintiff's lawsuit. Regardless, consistent with this Court's expectations of litigants and their counsel, Mr. Nakamura refrains from using such irrelevant rhetoric. *See* E.D.Mo. L.R. 12.02; Mo. R. Prof'l Conduct, Preamble, [7].

## II. ARGUMENT

As an initial matter, Plaintiff's Amended Complaint contains no allegations of *any* conduct by Mr. Nakamura in, or directed to, Missouri. The traditional jurisdictional analysis confirms the absence of personal jurisdiction over Mr. Nakamura. As such, each of Plaintiff's Counts against Mr. Nakamura must be dismissed. Though the Court need not reach the sufficiency of his allegations, each of Plaintiff's Counts also fails to state a claim.

### A. Plaintiff's Counts I-V Against Mr. Nakamura Must Be Dismissed under Federal Rule of Civil Procedure 12(b)(2) for Lack of Personal Jurisdiction.

#### 1. Standard of Review.

The plaintiff "bears the burden of establishing a prima facie showing of jurisdiction[.]" *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022) (citation and alteration omitted). Although "[t]he evidentiary showing required at the prima facie stage is minimal," the plaintiff must still plead "sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Id.*

"There are two types of personal jurisdiction—general and specific." *Bender v. Boyreau*, No. 4:20-CV-001850 AGF, 2021 WL 5451390, at *5 (E.D. Mo. Mar. 30, 2021). "General personal jurisdiction arises when a defendant's contacts with the forum state are so continuous and systematic that [he] may be subject to suit there for causes of action entirely distinct from the in-state activities." *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is [his] domicile." *Id.* at *8 (citation omitted). Mr. Nakamura is not domiciled in Missouri; he resides, and intends to remain indefinitely, in Florida. (Am. Compl., Doc. 20, ¶ 24; Decl. of H. Nakamura, attached as Ex. A hereto, ¶ 3.)[2] The Court thus lacks general jurisdiction over him.

---

[2] The Court "may look beyond the pleadings to determine whether personal jurisdiction exists, including reviewing affidavits and other exhibits." *Zazzle*, 42 F.4th at 951.

3

The Court may exercise specific jurisdiction over an out-of-state defendant "only to the extent permitted by the state's long-arm statute and the Constitution's due process clause." *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 619 (8th Cir. 2021). In Missouri, this is a two-step inquiry; jurisdiction must be proper under **both** the long-arm statute **and** the Due Process Clause for the Court to proceed. *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012); *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909-10 (8th Cir. 2012).

### 2. Missouri's Long-Arm Statute Does Not Reach Mr. Nakamura in this Case.

"The Missouri Supreme Court has held that the legislature intended the long-arm statute to provide for jurisdiction, **within the specific categories enumerated in the statutes**, to the full extent permitted by the due process clause of the Fourteenth Amendment."[3] *Dairy Farmers*, 702 F.3d at 475 (emphasis added) (internal quotation marks and citation omitted). Although Plaintiff's Amended Complaint is silent on the issue, Section 506.500.1(3) R.S.Mo., which extends jurisdiction over a non-resident defendant as to any cause of action arising out of "[t]he commission of a tortious act within this state," is presumably the provision of Missouri's long-arm statute Plaintiff would argue could apply to his claims against Mr. Nakamura. It does not.

"A party relying on a defendant's commission of a tort within [Missouri] to invoke long arm jurisdiction must make a prime facie showing of the validity of [his] claim." *Cepia, LLC v. Universal Pictures Visual Programming Ltd.*, 177 F. Supp. 3d 1129, 1140 (E.D. Mo. 2016) (citation omitted). For intentional torts, "the defendant must have set in motion some course of

---

[3] This jurisdictional analysis applies with equal force with respect to all of the claims asserted by Plaintiff. *See, e.g.*, *Johnson v. Gawker Media, LLC*, 2016 WL 193390, at *7 (E.D. Mo. Jan. 15, 2016) (defamation); *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593-94 (8th Cir. 2011) (tortious interference); *SRS Energy, Inc. v. Bio-Prod. Int'l, Inc.*, 2008 WL 2224803, at *3-4 (E.D. Mo. May 27, 2008) (civil conspiracy); *Health Care Equalization Comm. of the Iowa Chiropractic Soc'y v. Iowa Med. Soc'y*, 851 F.2d 1020, 1030-31 (8th Cir. 1988) (antitrust); *Torrey v. Infectious Diseases Soc'y of Am.*, No. 5:17-CV-00190-RWS, 2018 WL 10124894, at *19 (E.D. Tex. Sept. 27, 2018) (antitrust); *Jarrow Formulas, Inc. v. Int'l Nutrition Co.*, 175 F. Supp. 2d 296, 304 (D. Conn. 2001) (antitrust).

4

action *which was deliberately designed to move into Missouri and injure the plaintiff*." *Id.* at 1140-41 (citation omitted) (emphasis added).

Plaintiff's Amended Complaint is completely devoid of any allegation that Mr. Nakamura took any action in, or specifically directed to, Missouri. (Am. Compl., Doc. 20, *passim*.) He did not. (Decl. of H. Nakamura, Ex. A, ¶ 5.) Nor has Plaintiff alleged that he suffered an injury caused by Mr. Nakamura *in Missouri*—where Plaintiff does not even reside. (*See* Am. Compl., *passim*; *see also* Dkt. 44 at pp. 7-8 (discussing a plaintiff's residence as the place of injury from alleged defamation and related torts)). Thus, Plaintiff has not shown that Mr. Nakamura "set in motion some course of action which was *deliberately designed* to move into Missouri and injure [him]." *Cepia*, 177 F. Supp. 3d at 1142; *see also J.H. Berra Paving Co., Inc. v. Legendary Motorcar Co., Ltd.*, Case No. 4:18-CV-02148-NCC, 2019 WL 2342448, at *3 (E.D. Mo. June 3, 2019) (holding that Missouri's long-arm statute did not reach non-resident defendant despite non-resident defendant's website and advertising presence in Missouri and telephone calls and emails to Missouri plaintiff regarding the contract at issue).

Missouri's long-arm statute does not reach Mr. Nakamura in this case. This, alone, is sufficient to end the analysis. That said, as discussed below, the Court's exercise of personal jurisdiction over Mr. Nakamura would not comport with the Due Process Clause, either.

### 3. Further, the Due Process Clause Does Not Permit the Exercise of Personal Jurisdiction Over Mr. Nakamura in this Case.

"Due process requires that a defendant have certain 'minimum contacts' with the forum State for the State to exercise specific jurisdiction." *Morningside Church*, 9 F.4th at 619. That is, there must be sufficient "minimum contacts" between a defendant and the forum state so that jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "Due process limits on the State's

5

adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* at 284.  Accordingly, "[t]he defendant's connection with the forum state must be more than random, fortuitous, or attenuated, and must permit the defendant to reasonably anticipate being haled into court there." *Morningside Church*, 9 F.4th at 619 (citation omitted).  The contacts must be based on "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (citation omitted).  In other words, "[t]he relationship between the defendant and the forum state 'must arise out of contacts that the defendant himself creates with the forum State.'" *Clement v. Carter-Young Inc.*, 4:18CV00074 AGF, 2018 WL 2321064, at *2 (E.D. Mo. May 22, 2018) (quoting *Walden*, 571 U.S. at 284).

"In determining whether specific jurisdiction exists, [courts] consider the totality of the circumstances, using five factors to guide [their] analysis: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Zazzle*, 42 F.4th at 952 (internal alteration and citation omitted). The first three factors are primary, with the remaining two carrying less weight. *Id.*  None of these factors supports the exercise of personal jurisdiction over Mr. Nakamura in this case.

As to the first three factors, Mr. Nakamura, a Florida citizen, was present in Florida when he expressed each of his alleged statements online.  (Am. Compl., Doc. 20, ¶ 24; Decl. of H. Nakamura, Ex. A, ¶¶ 3-4.)  Plaintiff does not and cannot allege that Mr. Nakamura participated in the 2022 Sinquefield Cup; he, in fact, did not. (*Id.*, ¶ 6.)  Mr. Nakamura made no effort to direct his alleged statements to Missouri.  (*Id.*, ¶ 5.)  The only connection between Mr. Nakamura's alleged statements and Missouri is that, when Mr. Nakamura expressed some of them, Plaintiff

6

*might* have been in Missouri.  But even if this were pleaded, which it is not, it still would not supply the "minimum contacts" necessary to exercise personal jurisdiction over Mr. Nakamura. *See, e.g.*, *Walden*, 571 U.S. at 290 (explaining that "mere injury to a forum resident is not a sufficient connection to the forum"); *Zazzle*, 42 F.4th at 953 (affirming dismissal of nonresident defendant where "[plaintiff] has not alleged that [defendant] took such purposeful, targeted action towards Missouri"); *Bender*, 2021 WL 5451390, at *9 ("Minimum contacts do not exist where the primary link between the forum state and the wrongful conduct is that the plaintiff is present in the forum state and therefore feels the harm in that state." (collecting cases)).

In addition, courts consider the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984), when the underlying cause of action involves intentional torts potentially "performed for the very purpose of having their consequences felt in the forum state."  *See, e.g.*, *Zazzle*, 42 F.4th at 954 (explaining that the effects test is "an additional factor to consider when evaluating a defendant's relevant contacts with the forum state"); *Pederson v. Frost*, 951 F.3d 977, 981 (8th Cir. 2020) ("[P]ersonal jurisdiction can exist over a nonresident defendant who commits an intentional tort when its effect is 'felt' primarily within the forum state.").  The test provides that

> a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state.

*Zazzle*, 42 F.4th at 954 (citation and alteration omitted).  The test is "construe[d] . . . narrowly"; "absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Id.* (citation omitted).  In *Walden*, the Supreme Court clarified that the analysis is controlled by the defendant's relationship with the forum state based on "contacts that the defendant himself created with the forum state[.]" 571 U.S. at 284-85.  Only when the plaintiff's

7

*alleged injury* connects the defendant's conduct to the forum state can a plaintiff satisfy the effects test. *Id.* at 288.

Here, the effects test confirms the absence of personal jurisdiction over Mr. Nakamura. Mr. Nakamura's alleged statements were not made in Missouri. (Decl. of H. Nakamura, Ex. A, ¶ 4); *see Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (per curiam) (affirming dismissal of nonresident defendant when no defamatory statements were published in the forum state). The alleged statements, made online, were not directed at Missouri.[4] (Decl. of H. Nakamura, Ex. A, ¶¶ 4-5); *see Zazzle*, 42 F.4th at 954 ("[Defendant's] website is nationally accessible, and nowhere does [plaintiff] allege that [defendant] specifically targeted Missouri consumers or the Missouri market."); *Johnson v. Gawker Media, LLC*, No. 4:15-CV-1137 CAS, 2016 WL 193390, at *9 (E.D. Mo. Jan. 15, 2016) (dismissing claims for lack of personal jurisdiction where defendants' "contacts with the State of Missouri are limited to publication of articles on internet websites that can be viewed from Missouri"). That Plaintiff *may* have been in Missouri when Mr. Nakamura expressed *some* statements changes nothing. *See, e.g.*, *Wood v.*

---

[4] Although Mr. Nakamura's alleged statements were expressed online, Plaintiff does not and cannot allege that Mr. Nakamura operated any of the online platforms at issue. Thus, the "sliding scale" test of *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), is not likely to apply; but even if it did, the result would be the same. *E.g.*, *N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc.*, 975 F. Supp. 2d 993, 999 (E.D. Mo. 2013). "The scale runs from active contract formation and repeated transmission of computer files to mere posting of information on a website." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010). Plaintiff does not and cannot allege in good faith that Mr. Nakamura used a website for "contract formation" purposes; Plaintiff alleges that Mr. Nakamura made comments online via "video-streaming" and Twitter. (*E.g.*, Am. Compl., Doc. 20, ¶¶ 14(b), 54-57, 97(a)-(d), 99, 100(a)-(b), 121-23, 132-34, 161-62.) The mere accessibility of Mr. Nakamura's alleged statements online does not confer personal jurisdiction over him in Missouri, under *Zippo* or otherwise. *See, e.g.*, *Arden*, 614 F.3d at 796; *Marty v. Dave's Wholesale Fireworks*, No. 2:18-cv-00038-PLC, 2019 WL 670344, at *8 (E.D. Mo. Feb. 19, 2019) ("Specific personal jurisdiction is not established by access to a website merely mak[ing] information available to other people."); *Gawker Media*, 2016 WL 193390, at *8 (holding that the "mere fact that [the defendant's] websites [were] accessible in Missouri or that they provide[d] the possibility a Missouri resident might have some contact with the defendants by leaving comments to an article" did not confer personal jurisdiction).

8

*Kapustin*, 992 F. Supp. 2d 942, 946 (D. Minn. 2014) (holding defendant's knowledge of plaintiff's presence in the forum state and brief mentions of the forum state do not satisfy due process).

The Eighth Circuit's analysis in *Johnson v. Arden* is instructive. In *Arden*, Missouri plaintiffs brought suit against out-of-state defendants who allegedly conspired to post false statements about them online. 614 F.3d 785, 787-88 (8th Cir. 2010). The district court dismissed for lack of jurisdiction and the Eighth Circuit affirmed, explaining that "[t]he statements were aimed at the [plaintiffs]," *not* "Missouri." *Id.* at 796. Further, there was no evidence that the "website specifically target[ed] Missouri, or that the content of [defendant's] alleged postings specifically targeted Missouri." *Id.*; *see also Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 400 (E.D. Tex. 2022) ("Posting an allegedly defamatory statement on Twitter does not satisfy *Calder*'s 'effects test' merely because some members of the Tweet's audience fortuitously reside in the forum state."). So too here. Plaintiff does not and cannot allege that Mr. Nakamura, an international chess personality (*see* Am. Compl., Doc. 20, ¶¶ 54-55), somehow acted in a way uniquely aimed at Missouri and knowingly caused the brunt of any supposed harm in Missouri.

Neither Plaintiff nor Mr. Nakamura is a resident of Missouri. *See, e.g.*, *Kaliannan v. Liang*, 2 F.4th 727, 734 (8th Cir. 2021) (clarifying that the fourth factor considers specifically whether the plaintiff is a resident of the forum state, not whether the forum state may have some other interest in adjudicating the dispute); *Gawker Media, LLC*, 2016 WL 193390, at *9 (holding that the fourth and fifth factors weighed against the exercise of personal jurisdiction because "Missouri ha[d] at most a minor interest in providing a forum for nonresident defamation plaintiffs with no real connections to the state" and a "trial in Missouri would not [have been] convenient for either side"). As such, the final two factors likewise preclude the exercise of personal jurisdiction over Mr. Namakura in this case.

In sum, *all* of the relevant factors reveal that personal jurisdiction over Mr. Nakamura is lacking under the Due Process Clause. Plaintiff's claims against Mr. Nakamura must be dismissed.

**B.     Plaintiff's Count III Fails to State a Claim for Myriad Reasons and Should Be Dismissed under Federal Rule of Civil Procedure 12(b)(6).**

In his Count III, Plaintiff alleges a violation of the Sherman Act by all Defendants. (Am. Compl., Doc. 20, ¶¶ 184-90.) As explained at length in Chess.com's Memorandum in Support of its Motion to Dismiss (Doc. 47), Plaintiff's Count III fails to state a claim because Plaintiff has not alleged an antitrust injury, does not allege an agreement among Defendants, and does not allege that any such agreement unreasonably restrained trade.

Mr. Nakamura highlights *Hurley v. National Basketball Players Association*, which the Court may find instructive here. In *Hurley*, the plaintiff alleged, among other things, an antitrust claim after the National Basketball Players Association denied his application to become a player-agent. Case No. 1:21 CV 1099, 2021 WL 6065783, at *1 (N.D. Ohio Dec. 22, 2021). The plaintiff alleged that, by his application being denied, he was "denied access to the market of representing prospective and current NBA Basketball players[.]" *Id.*, at *4. The court had little difficulty rejecting the Sherman Act claim, in that the plaintiff alleged only an "individualized injury"—not an "injury to competition"—and because the plaintiff's conclusory conspiracy allegations did nothing to bolster his insufficient allegations that would not amount to a Sherman Act violation in any event. *Id.*, at *7-8.

As in *Hurley*, Plaintiff's allegations come nowhere close to stating a plausible claim. This is particularly true as to Mr. Nakamura, who is alleged to be a "competitor" in *playing the game of chess*. Plaintiff does not and cannot allege that Mr. Nakamura controls some undefined market in such a way that could cause an antitrust violation. For these reasons, and the reasons otherwise

10

set forth in Chess.com's Memorandum in Support of its Motion to Dismiss (Doc. 47), which Mr. Nakamura adopts, Plaintiff's Count III fails to state a claim.

C.  **Plaintiff's Counts I, II, IV, and V Should Be Dismissed Pursuant to Connecticut's Anti-SLAPP Law.**

As discussed in Mr. Carlsen's Memorandum in Support of his Motion to Dismiss (Doc. 44), Plaintiff's Counts I, II, IV, and V should be dismissed pursuant to Connecticut's anti-SLAPP law. Mr. Nakamura adopts the arguments in Mr. Carlsen's briefing, which apply with at least equal force to Plaintiff's claims directed to Mr. Nakamura's alleged statements. *See Pacheco Quevedo v. Hearst Corp.*, No. FSTCV195021689S, 2019 WL 7900036 (Conn. Super. Ct. Dec. 19, 2019); *Charamut v. Savage*, No. HHBCV216068665S, 2022 WL 620782, at *4 (Conn. Super. Ct. Feb. 2, 2022); *Lawrence v. Chambers*, No. FSTCV205022942S, 2020 WL 6121712, at *4 (Conn. Super. Ct. Sept. 21, 2020). Plaintiff has not met (and cannot meet) his burden to maintain his Counts I, II, IV, or V against Mr. Nakamura. These claims should be dismissed with prejudice, with Mr. Nakamura awarded his attorneys' fees and costs, *see* Conn. Gen. Stat. § 52-196a(f)(1).

D.  **Plaintiff's Counts I, II, IV, and V Otherwise Fail to State a Claim and Should Be Dismissed under Federal Rule of Civil Procedure 12(b)(6).**

As to Plaintiff's Counts I (slander) and II (libel), which have comingled all Defendants into each Count, Plaintiff fails to identify specifically which of Mr. Nakamura's alleged statements form the basis of his claims. Instead, Plaintiff impermissibly incorporates-by-reference all 171 paragraphs of allegations, whether full of vitriol or directed toward other Defendants, against Mr. Nakamura. (*See* Am. Compl., Doc. 20, ¶¶ 172-77, 178-83.) Dismissal is warranted.[5] *See, e.g.*, *Mo. Primate Found. v. PETA, Inc.*, No. 4:16 CV 2163 CDP, 2017 WL 4176431, at *5 (E.D. Mo.

---

[5] Although a choice of law analysis is necessary for purposes of Connecticut's anti-SLAPP statute, no such analysis is necessary in analyzing whether Plaintiff's Counts I, II, IV, and V fail under Federal Rule of Civil Procedure 12(b)(6), as these claims fail under both Missouri and Connecticut law.

11

Sept. 21, 2017) (complaint alleging that press releases were the defamatory statements was insufficiently pleaded); *Stevens v. Helming*, 135 A.3d 728, 732 n.3 (Conn. App. Ct. 2016) ("Imprecise pleading is not permitted in the context of defamation[.]") (alterations omitted).

If Plaintiff intended that each of Mr. Nakamura's alleged statements referenced at any point in the Amended Complaint forms the basis of his Counts I-II, Plaintiff still fails to state a claim—particularly considering that Plaintiff was required to, but failed to, plausibly allege actual malice:[6]

(i) Mr. Nakamura's alleged opinion that Mr. Carlsen withdrew from the chess tournament because Mr. Carlsen believed that Plaintiff had cheated (*id.*, ¶¶ 97(a)-(d)) does not give rise to either claim both because it is Mr. Nakamura's opinion (regarding what he believed Mr. Carlsen thought), and because Plaintiff himself alleges that Mr. Carlsen withdrew from the chess tournament because Mr. Carlsen believed that Plaintiff had cheated.

(ii) Likewise, Mr. Nakamura allegedly having heard that others believed Plaintiff had cheated at chess (*id.*, ¶¶ 98(a)-(b), 100(a)-(b), 101) is not an actionable statement of fact, and Plaintiff himself admits that he has cheated at chess before (*see id.*, ¶ 102).

(iii) Mr. Nakamura's alleged opinion that Plaintiff's explanation as to how he beat Mr. Carlsen in the chess game, and Plaintiff's pace of play during the chess game, were dubious (*id.*, ¶ 98(c)-(e)) is similarly a non-actionable opinion.

(iv) Mr. Nakamura's alleged re-Tweeting of a Tweet from Twitter from an account named "Unsubstantiated Chess Rumors" (*id.*, ¶ 99) is not an actionable statement of fact—the Twitter account re-Tweeted was quite literally named *Unsubstantiated Chess Rumors*.

(v) Mr. Nakamura's alleged belief that Plaintiff attended the chess academy of Maxim Dlugy, who "is rumored to have cheated in online games on Chess.com" (*id.*, ¶¶ 119, 121-23, 134), is likewise not an actionable statement of fact. (*See id.*, ¶ 102.)

(vi) Finally, Mr. Nakamura's alleged commentary regarding news articles and Chess.com's published report on Plaintiff's alleged cheating (*id.*, ¶¶ 132-33, 161-162) is an expression of his opinion—Mr. Nakamura is not alleged to have published the articles or report on Plaintiff's alleged cheating but, rather, simply commented on them.

---

[6] *E.g.*, *Primrose Companies, Inc. v. McGee*, No. UWY-CV-21-6062747-S, 2022 WL 3712636, at *8, 11-13 (Conn. Super. Ct. Aug. 26, 2022); *Chastain v. Cypress Media, LLC*, No. 4:19-CV-00315-DGK, 2019 WL 13203920, at *3-4 (W.D. Mo. July 22, 2019); *see also Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) ("Every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." (alteration and citation omitted)).

For all these reasons, Plaintiff's Counts I and II fail to state a claim. *See, e.g.*, *Chiaravallo v. Middletown Transit Dist.*, 561 F. Supp. 3d 257, 289 (D. Conn. 2021) ("Statements of opinion, even if negative or otherwise harmful, cannot, as a matter of law, form the basis for a defamation claim."); *Noble v. Hennessey*, KNLCV206045166S, 2021 WL 830014, at *9 (Conn. Super. Ct. Jan. 12, 2021) (dismissing defamation claim based on defendant's statement that an agreement was "probably illicit" because "the use of the word 'probably' inherently does not suggest a fact but, rather, is more like a 'personal comment about another's conduct' constituting an opinion" (citation omitted)); *Smith v. Humane Soc'y of United States*, 519 S.W.3d 789, 798-803 (Mo. banc 2017) (holding that subjective interpretations of data or events are non-actionable); *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 241-43 (Mo. Ct. App. 2011) (affirming dismissal of libel claim where statements at issue were opinions); *Henry v. Halliburton*, 690 S.W.2d 775, 787 (Mo. banc 1985) ("If the alleged defamatory remarks can be characterized as 'opinions,' they should be subject to the First Amendment absolute privilege.").

Because Plaintiff's Counts I and II fail to state a claim, Plaintiff's Count IV (tortious interference) and Count V (civil conspiracy) necessarily fail. *See, e.g.*, *Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 829 F.3d 576, 579–80 (8th Cir. 2016) ("[W]here a tortious interference claim is based upon an alleged defamation, if a plaintiff's defamation claim fails, the tortious interference claim must also fail because the plaintiff cannot establish an absence of justification as a matter of law." (quoting *Castle Rock Remodeling, LLC*, 354 S.W.3d at 245); *S. Home Care Servs., Inc. v. Visiting Nurse Servs., Inc. of S. Conn.*, No. 3:13-CV-00792 RNC, 2015 WL 4509425, at *11 (D. Conn. July 24, 2015) (same); *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. banc 2012) ("In Missouri, if tortious acts alleged as elements of a civil

13

conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well." (citation omitted)); *Litchfield Asset Mgmt. v. Howell*, 799 A.2d 298, 306 (Conn. Ct. App. 2002) (same).

Plaintiff's Counts IV and V fail for additional reasons as well. Plaintiff has not adequately alleged that Mr. Nakamura had knowledge of the purported contracts or business expectancies with which he supposedly interfered. *See Ariel Preferred Retail Grp., LLC v. CWCapital Asset Mgmt.,* No. 4:10CV623SNLJ, 2011 WL 4501049, at *4 (E.D. Mo. Sept. 28, 2011); *S. Home Care Servs.,* 2015 WL 4509425, at *11 (same). Plaintiff has also not plausibly alleged how Mr. Nakamura engaged in some undefined conspiracy with the other Defendants. *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 146–47 (D. Conn. 2014) ("Without sufficient allegations of an agreement, there can be no conspiracy."); *Park Ridge Assocs. v. U.M.B. Bank*, 613 S.W.3d 456, 464 (Mo. Ct. App. 2020) ("Civil conspiracy is an agreement or understanding between two or more parties . . . .").

### III.  CONCLUSION

Plaintiff's claims against Mr. Nakamura must be dismissed for lack of personal jurisdiction. Should the Court consider the merits of Plaintiff's claims, Plaintiff's Count III fails to state a claim and should be dismissed, and Plaintiff's Counts I, II, IV, and V should be dismissed under Connecticut's anti-SLAPP law, with Mr. Nakamura awarded his attorneys' fees and costs, or alternatively these claims should be dismissed for failure to state a claim.

                                                    Respectfully submitted,

                                                    **LEWIS RICE LLC**

Dated: December 7, 2022        By:   /s/ Neal F. Perryman
                                                         Neal F. Perryman, #43057 (MO)
                                                           Michael L. Jente, #62980 (MO)
                                                           Benjamin M. Farley, #69073 (MO)
                                                           600 Washington Avenue, Suite 2500
                                                           St. Louis, Missouri 63101
                                                           Telephone:  (314) 444-7661
                                                           Facsimile:  (314) 612-7661
                                                           nperryman@lewisrice.com
                                                           mjente@lewisrice.com
                                                           bfarley@lewisrice.com

                                                           and

                                                           Michael J. Ryan, FL State Bar #975990*
                                                           *Application for PHV Admission Pending*
                                                           Freedland Harwin Valori Ryan
                                                           110 SE Sixth Street, Suite 2300
                                                           Fort Lauderdale, Florida 33301
                                                           Telephone: (954) 467-6400
                                                           Facsimile: (954) 670-2530
                                                           mryan@fhvlegal.com

                                                           *Attorneys for Defendant*
                                                           *Christopher Hikaru Nakamura*