# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| HANS MOKE NIEMANN, | |
| Plaintiff, | Case No. 4:22-cv-01110-AGF |
| v. | |
| SVEN MAGNUS ØEN CARLSEN A/K/A MAGNUS CARLSEN, PLAY MAGNUS AS D/B/A PLAY MAGNUS GROUP, CHESS.COM, LLC, DANIEL RENSCH A/K/A "DANNY" RENSCH, AND HIKARU NAKAMURA, | Hon. Audrey G. Fleissig |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DANIEL "DANNY" RENSCH'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Nima H. Mohebbi (# 275453CA)
Sarah F. Mitchell (# 308467CA)
Michael A. Hale (# 319056CA)
**LATHAM & WATKINS LLP**
355 S. Grand Ave., Suite 100
Los Angeles, CA 90071
Tel: (213) 485-1234
*nima.mohebbi@lw.com*
*sarah.mitchell@lw.com*
*michael.hale@lw.com*

Jeffrey B. Jensen (# 46745MO)
Kate Ledden (# 66026MO)
**HUSCH BLACKWELL LLP**
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Tel: (314) 480 1500
*jeff.jensen@huschblackwell.com*
*kate.ledden@huschblackwell.com*

Jamie L. Wine (# 4529251NY)
Blake E. Stafford (# 888324775DC)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
*jamie.wine@lw.com*
*blake.stafford@lw.com*

Derek Teeter (# 59031MO)
Spencer Tolson (# 74467MO)
**HUSCH BLACKWELL LLP**
4801 Main, Suite 1000
Kansas City, MO 64112
Tel: (816) 983-8000
*derek.teeter@huschblackwell.com*
*spencer.tolson@huschblackwell.com*

*Counsel for Defendant Daniel "Danny" Rensch*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................2

ARGUMENT .....................................................................................................4

I.      THE COURT LACKS PERSONAL JURISDICTION OVER RENSCH........................4

     A.      The SAC Fails To Establish Jurisdiction Under The Due Process Clause. ............5

          1.      The SAC Fails To Establish General Jurisdiction. ...................................5

          2.      The SAC Also Fails To Establish Specific Jurisdiction. ............................6

     B.      The SAC Fails To Establish Jurisdiction Under Missouri's Long-Arm Statute. ..................................................................................................11

II.     THE SAC FAILS TO STATE A CLAIM AGAINST RENSCH ...................................12

CONCLUSION..................................................................................................12

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Blessing v. Chandrasekhar*,
  988 F.3d 889 (6th Cir. 2021) ..................................................................................8

*BNSF Ry. v. Tyrrell*,
  581 U.S. 402 (2017)................................................................................................5

*Brennerman v. Guardian News & Media Ltd.*,
  2015 WL 9484466 (D. Del. Dec. 29, 2015).............................................................9

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
  137 S. Ct. 1773 (2017)...........................................................................................5

*Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*,
  42 F.4th 948 (8th Cir. 2022) ......................................................................... *passim*

*BYD Co. Ltd. v. VICE Media LLC*,
  531 F. Supp. 3d 810 (S.D.N.Y. 2021).....................................................................9

*C. Pepper Logistics, LLC v. Lanter Delivery Sys., LLC*,
  2021 WL 3725680 (E.D. Mo. Aug. 23, 2021).....................................................4, 9

*City of St. Louis v. Am. Tobacco Co.*,
  2003 WL 23277277 (Mo. Cir. Dec. 16, 2003).......................................................11

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)................................................................................................5

*In re Dental Supplies Antitrust Litig.*,
  2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ......................................................10

*Fastpath, Inc. v. Arbela Techs. Corp.*,
  760 F.3d 816 (8th Cir. 2014) ..................................................................................4

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021)............................................................................................5

*Glob. Media Grp., Inc. v. Express Tax Serv., Inc.*,
  2005 WL 2452542 (E.D. Mo. Oct. 4, 2005)....................................................11, 12

*Health Care Equalization Comm. of the Iowa Chiropractic Soc'y v. Iowa Med. Soc'y*,
  851 F.2d 1020 (8th Cir. 1988) ................................................................................6

*Johnson v. Arden*,
    614 F.3d 785 (8th Cir. 2010) ...................................................................8

*Johnson v. Gawker Media, LLC*,
    2016 WL 193390 (E.D. Mo. Jan. 15, 2016) ........................................6, 10

*Kick Int'l, Inc. v. Brown*,
    2020 WL 409110 (E.D. Mo. Jan. 24, 2020) ...........................................5

*Marty v. Dave's Wholesale Fireworks*,
    2019 WL 670344 (E.D. Mo. Feb. 19, 2019).............................................9

*Miller v. Gizmodo Media Grp., LLC*,
    383 F. Supp. 3d 1365 (S.D. Fla. 2019) ...................................................8

*Mongler v. Knight*,
    2017 WL 2931369 (E.D. Mo. July 10, 2017) .....................................10, 11

*N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc.*,
    975 F. Supp. 2d 993 (E.D. Mo. 2013)....................................................11

*Nunes v. NBCUniversal Media, LLC*,
    582 F. Supp. 3d 387 (E.D. Tex. 2022)....................................................8

*Rickman v. BMW of N. Am. LLC*,
    538 F. Supp. 3d 429 (D.N.J. 2021) ......................................................10

*SRS Energy, Inc. v. Bio-Prod. Int'l, Inc.*,
    2008 WL 2224803 (E.D. Mo. May 27, 2008) .........................................6

*Top Gun Ammo Sales, LLC v. COF Techs., LLC*,
    2022 WL 823061 (E.D. Mo. Mar. 18, 2022) .........................................7

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
    646 F.3d 589 (8th Cir. 2011) .........................................................6, 11

*Walden v. Fiore*,
    571 U.S. 277 (2014).............................................................2, 4, 6, 10

## STATUTES

Conn. Gen. Stat. § 52-196a...........................................................................12

Mo. Rev. Stat. § 506.500.1(3).................................................................11, 12

## RULES

Federal Rule of Civil Procedure 12(b)(2) ........................................................4

## INTRODUCTION

Plaintiff Hans Niemann's Second Amended Complaint ("SAC") (ECF No. 75) reflects his third attempt to fulfill the pleading obligations necessary to maintain this federal lawsuit. He has failed and his claims are as meritless today as they were on day one. As explained in the other Defendants' motions to dismiss, the Court should dismiss Niemann's claims because they fail as a matter of law. Defendant Daniel Rensch joins those arguments and incorporates them by reference here.

The Court should dismiss the claims against Rensch for the additional reason that—despite three revised pleadings—the SAC *still* fails to establish that the Court has personal jurisdiction over Rensch. He resides and works in Utah, and has for the entire relevant period specified in the SAC. He has no property or bank accounts in, or any other legally significant connections to, the State of Missouri. And Niemann fails to allege that Rensch engaged in any suit-related conduct specifically *directed* at Missouri—a mandatory requirement to establish specific personal jurisdiction over him. In fact, the only connection between this case and Missouri is the Sinquefield Cup, a two-week-long over-the-board ("OTB") chess tournament in St. Louis where Niemann played against Defendant Magnus Carlsen. But Niemann fails to allege any relevant connection between Rensch and Missouri; rather, he now admits that Rensch "was not in Missouri during the time period relevant to this [lawsuit]." (SAC ¶ 24.) And while the SAC contains a conclusory allegation that Rensch "regularly" travels to St. Louis for business unrelated to this lawsuit, the SAC contains no allegations connecting Niemann's claims against Rensch to any conduct by Rensch directed at Missouri.

This lawsuit continues to be a publicity stunt devoid of legal merit. Niemann's insistence on naming Rensch—one of Chess.com's highest profile executives—as a defendant, despite the clear lack of personal jurisdiction, ignores "the limits imposed by federal due process" and the

1

Missouri long-arm statute, *Walden v. Fiore*, 571 U.S. 277, 283 (2014), and is emblematic of Niemann's approach.   The Court lacks personal jurisdiction over Rensch and should dismiss the claims against him.

## BACKGROUND

The background of this case is set forth in Chess.com's concurrent motion to dismiss. Rensch incorporates that background and provides here only the facts relevant to his argument that he should be dismissed from this lawsuit for lack of personal jurisdiction.

Rensch has no relevant connection to the State of Missouri.  He is a citizen of Utah, where he performs his day-to-day responsibilities as Chief Chess Officer of Chess.com.  (SAC ¶ 24; *see* D. Rensch Jan. 24, 2023 Decl. ¶¶ 4-5 ("Rensch Decl.").)  He has never been a citizen of Missouri, has no property or assets in Missouri, and otherwise has no legally significant connection to Missouri. (Rensch Decl. ¶¶ 6-11.)  And none of the other parties in this case is located in or resides in Missouri.  (SAC ¶¶ 20-25.)  Niemann is a citizen of Connecticut.  (*Id.* ¶ 20.)  Defendant Chess.com is a Nevada limited liability company.  (*Id.* ¶ 23.)  Defendant Carlsen is a citizen of Norway, as is Defendant Play Magnus Group.  (*Id.* ¶¶ 21-22.)  And Defendant Hikaru Nakamura is a citizen of Florida.  (*Id.* ¶ 25.)

The only conceivable connection between this lawsuit and Missouri is the September 2022 Sinquefield Cup held in St. Louis, where Niemann played a chess game against Carlsen.  (*Id.* ¶¶ 6, 74-82; Rensch Decl. ¶ 17.)  The Sinquefield Cup is an in-person, over-the-board tournament sanctioned by the International Chess Federation, known as FIDE.  (SAC ¶¶ 29, 74-75.)  Neither Chess.com nor Rensch is alleged to have had any involvement in hosting or organizing the Sinquefield Cup.  To the contrary, the SAC makes clear that Chess.com's online platform, which allows its users to play recreational chess online, operates completely "[o]utside of"—and has "absolutely no effect on"—the "'official' chess events and tournaments sanctioned and regulated

by FIDE." (*Id.* ¶¶ 36, 42; *see also id.* ¶ 45 ("Chess.com has no official role in governing professional chess").) And while the SAC alleges that Rensch "was in St. Louis, Missouri during the Sinquefield Cup," it acknowledges that Rensch "was not in Missouri during the time period relevant to" Niemann's claims. (*Id.* ¶ 24; *see* Rensch Decl. ¶ 17.)

Like the prior iterations of the complaint in this case, the SAC contains only a few allegations even mentioning Rensch at all. And none of the allegations actually underlying Niemann's claims against Rensch has any connection to Missouri.[1]

*First*, the SAC alleges that, in August and December 2022, Rensch virtually participated in two announcements with Carlsen regarding Chess.com's merger with Play Magnus Group. (SAC ¶¶ 67-68, 72.) *Second*, it alleges that Rensch "caused Chess.com's Twitter account" to post a "statement" about Chess.com's decision to "remove [Niemann] from Chess.com and [its] events." (*Id.* ¶ 111.) *Third*, it alleges that, in late September 2022, "Chess.com and Rensch deliberately leaked years-old emails" to "VICE Media" regarding another chess player, and that Rensch participated in an interview with The Guardian during which he refrained from commenting on whether Niemann cheated against Carlsen. (*Id.* ¶¶ 114, 149, 151.) *Fourth*, and finally, the SAC vaguely references Rensch in connection with the October 2022 report issued by Chess.com (the "Report"), in which Chess.com set out a detailed statistical analysis of Niemann's prior cheating on the platform. (*Id.* ¶¶ 168, 173; *see* Rensch Decl., Ex. 1.)[2]

---

[1] The allegations in the SAC about Rensch's conduct are taken at face value only for purposes of this motion. Neither Rensch nor Chess.com concede any of Niemann's allegations.

[2] Niemann also adds in his SAC that in 2016, Rensch banned another chess player, Akshat Chandra, from Chess.com for cheating in online play. (SAC ¶ 60.) Not only does this assertion lack any relevance to the events giving rise to Niemann's claims, it also has no relationship or connection to Missouri.

The SAC—like the prior complaints—then indiscriminately asserts defamation, antitrust, tortious interference, and civil conspiracy claims against "all Defendants," including Rensch. (SAC ¶¶ 208-45.)  The SAC also adds a breach of contract claim against only Chess.com.  (*Id.* ¶¶ 246-51.)

## ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER RENSCH

A party may bring a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  To survive such a motion, the plaintiff must "establish[] a prima facie showing of [personal] jurisdiction" under both "the long-arm statute of the forum state and the federal Due Process Clause." *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022).  The "plaintiff bears the burden to show that jurisdiction exists," and to meet that burden, the plaintiff "must state sufficient facts in the complaint to support a reasonable inference that [the defendant] may be subjected to jurisdiction in the forum state." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citation omitted).  "[C]onclusory and speculative allegations are insufficient." *C. Pepper Logistics, LLC v. Lanter Delivery Sys., LLC*, 2021 WL 3725680, at *4 n.7 (E.D. Mo. Aug. 23, 2021).  Personal jurisdiction is defendant-specific; it must be established as to "each defendant" "individually." *Id.* at *4-5 & n.9 (citations omitted); *see Walden*, 571 U.S. at 284-86.

Despite filing three complaints in just three months, Niemann still fails to allege sufficient facts establishing personal jurisdiction as to Rensch under either the federal Due Process Clause or the Missouri long-arm statute for any of his claims.  Each of those failures independently requires dismissal of Rensch from this case.

4

A.    **The SAC Fails To Establish Jurisdiction Under The Due Process Clause**.

For the exercise of personal jurisdiction to "comport[] with the Due Process Clause," the "'defendant's conduct and connection with the forum state'" must be significant enough "'that he should reasonably anticipate being haled into court there.'"  *Zazzle*, 42 F.4th at 951 (citation omitted).   Only "two types of personal jurisdiction" comport with due process: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1779-80 (2017); *see also Zazzle*, 42 F.4th at 951-52.  Neither exists as to Rensch.

1.    **The SAC Fails To Establish General Jurisdiction.**

General jurisdiction exists "where a defendant is 'essentially at home' in the forum state." *Zazzle*, 42 F.4th at 952 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)).  "For an individual defendant, the forum for general jurisdiction is the individual's domicile." *Kick Int'l, Inc. v. Brown*, 2020 WL 409110, at *3 (E.D. Mo. Jan. 24, 2020); *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  Rensch is domiciled in Utah, not Missouri.  (SAC ¶ 24; Rensch Decl. ¶¶ 4-5.)  He is not a citizen of Missouri, owns no property in Missouri, and otherwise has no legally significant connection to Missouri.  (Rensch Decl. ¶¶ 6-11.)  And although the SAC now vaguely alleges that Rensch "engages in extensive commercial activities in St. Louis, Missouri" by "attending chess tournaments and other events" in his capacity as "Chess.com's 'Chief Chess Officer'" (SAC ¶ 24), Rensch's general travel to Missouri in his professional capacity has no bearing on his place of domicile.  *Cf., e.g.*, *BNSF Ry. v. Tyrrell*, 581 U.S. 402, 414 (2017) (making clear that mere "in-state business . . . does not suffice to permit the assertion of general jurisdiction").  Because the SAC fails to allege facts showing that Rensch is "at home" in Missouri, it fails to establish general jurisdiction.

5

## 2.      The SAC Also Fails To Establish Specific Jurisdiction.

For specific jurisdiction to exist, the defendant must have "certain minimum contacts with the forum state," and the claims asserted against that defendant must "arise out of or relate to [those] contacts." *Zazzle*, 42 F.4th at 952 (citation omitted).  As the Supreme Court has made clear, to establish the "'minimum contacts' necessary to create specific jurisdiction," the "defendant's suit-related conduct must create a *substantial connection* with the forum." *Walden*, 571 U.S. at 284 (emphasis added).  In particular, the defendant "'must take some act by which [he] purposefully avails [him]self of the privilege of conducting activities within the forum State,' such as *directing [his] activities at the forum or targeting forum residents*." *Zazzle*, 42 F.4th at 953 (emphasis added) (citations omitted).  And this inquiry considers only forum contacts "related to [the plaintiff's] claims"; in other words, "'[s]pecific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state.'" *Id.* at 952 (citation omitted).[3]

The allegations in this case do not come close to showing that Rensch has sufficient claim-related contacts with Missouri to create specific jurisdiction.  Indeed, while the Eighth Circuit has articulated a multi-factor test for determining the sufficiency of alleged forum contacts,[4] the Court

---

[3] This fundamental principle applies with full force with respect to all of the claims asserted by Niemann against Rensch.  *See, e.g.*, *Johnson v. Gawker Media, LLC*, 2016 WL 193390, at *7 (E.D. Mo. Jan. 15, 2016) (defamation); *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593-94 (8th Cir. 2011) (tortious interference); *SRS Energy, Inc. v. Bio-Prod. Int'l, Inc.*, 2008 WL 2224803, at *3-4 (E.D. Mo. May 27, 2008) (civil conspiracy); *Health Care Equalization Comm. of the Iowa Chiropractic Soc'y v. Iowa Med. Soc'y*, 851 F.2d 1020, 1030-31 (8th Cir. 1988) (antitrust).

[4] The Eighth Circuit has identified "five factors" for evaluating a defendant's forum contacts, with the first three being of "primary importance": "(1) the nature and quality of [defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Zazzle*, 42 F.4th at 952 (citation omitted).  Each of these factors decidedly weighs against the exercise of jurisdiction over Rensch.

need not engage those factors because Niemann fails to allege *any* purposeful connection between the litigation-specific conduct attributed to Rensch and Missouri.

As an initial matter, all allegations involving Rensch—Rensch's presence in St. Louis during the Sinquefield Cup, the merger announcements between Play Magnus Group and Chess.com, the tweet on Chess.com's Twitter profile, Rensch's interview with The Guardian, the emails to VICE Media, and the issuance of the Chess.com Report—involve Rensch acting in his official capacity as an officer of Chess.com.  (*See* SAC ¶¶ 24, 67-68, 72, 110-11, 149-51, 168-73.) That dooms the exercise of specific jurisdiction over Rensch because "the acts of corporate officers and directors in their official capacities are the acts of the corporation exclusively and are thus not material for purposes of establishing minimum contacts as to the individuals." *Top Gun Ammo Sales, LLC v. COF Techs., LLC*, 2022 WL 823061, at *7 (E.D. Mo. Mar. 18, 2022) (citation omitted).  Thus, even if those allegations established a connection to Missouri, which they do not, they "would not subject [Rensch] to the Court's jurisdiction in [his] individual capacit[y]." *Id.*

Moreover, the allegations involving Rensch do not establish his own "purposeful, targeted action towards Missouri." *Zazzle*, 42 F.4th at 953.  *First*, the SAC alleges that in August and December 2022, Rensch participated in two virtual announcements with Carlsen concerning Chess.com's merger with Play Magnus Group.  (SAC ¶¶ 67-68, 72.)  But Niemann does not allege any purposeful connection between Rensch's involvement in those announcements and Missouri. Rensch did not make either announcement from Missouri (*see* Rensch Decl. ¶ 15), and neither Chess.com nor Play Magnus Group is located in Missouri (*see* SAC ¶¶ 22-23).

*Second*, the SAC alleges that on September 8, 2022, Rensch "caused Chess.com's Twitter account" to post a "statement" about Chess.com's decision to "remove [Niemann] from Chess.com and [its] events." (*Id.* ¶ 111.)  That statement makes no mention of Missouri, and none of the

parties mentioned in that statement—Rensch, Chess.com, nor Niemann—resides in Missouri.  (*See id.* ¶¶ 20, 23, 24; Rensch Decl. ¶¶ 4, 7.)  Moreover, Twitter is a global social media website, and the Eighth Circuit has repeatedly held that merely posting information on a "nationally accessible" website does not amount to conduct "'uniquely or expressly aimed at Missouri'" and thus does not create sufficient "contacts with Missouri" for purposes of personal jurisdiction.  *Zazzle*, 42 F.4th at 954 (quoting *Johnson v. Arden*, 614 F.3d 785, 798 (8th Cir. 2010)).  Consistent with that principle, courts have frequently refused to "extend[] personal jurisdiction based on a defendant's allegedly tortious postings on social media" that are "not specifically directed at the forum state." *Blessing v. Chandrasekhar*, 988 F.3d 889, 905 (6th Cir. 2021); *see, e.g.*, *Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1375 (S.D. Fla. 2019) ("[C]ourts have uniformly rejected the argument that a tweet [on Twitter], not specifically directed to a forum state, is a sufficient minimum contact to confer personal jurisdiction under the Due Process Clause."); *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 400 (E.D. Tex. 2022) (holding, in line with "several district courts across the country," that "[p]osting an allegedly defamatory statement on Twitter" that does not "'specifically'" target the forum state "'is not enough to support the exercise of personal jurisdiction'" (citations omitted)).

*Third*, the SAC contains allegations about Rensch's interactions with global news outlets in late September 2022.  The SAC alleges that "Chess.com and Rensch deliberately leaked years-old emails" (none of which mentions Niemann) to "VICE Media," which VICE then published in an article on VICE's website.  (SAC ¶¶ 149, 151.)  The SAC also alleges that "Rensch and Chess.com[]" made "accusations" against Niemann during an interview with The Guardian, which published a story noting Rensch's refusal to publicly comment on Niemann's conduct.  (*Id.* ¶¶ 114-15.)

Because these allegations "lump" Rensch and Chess.com together, they cannot sustain personal jurisdiction as to Rensch individually. *C. Pepper Logistics*, 2021 WL 3725680, at *4. More importantly, the SAC contains no allegation of a purposeful connection between this conduct and Missouri. The SAC does not—because it cannot—allege that any of Rensch's conduct with respect to these articles occurred in Missouri. (*See* Rensch Decl. ¶¶ 19-20.) And the news organizations themselves are not connected to Missouri: VICE Media is a global news organization based in New York, *see, e.g.*, *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 817 (S.D.N.Y. 2021), and The Guardian is a British news organization based in London, *see, e.g.*, *Brennerman v. Guardian News & Media Ltd.*, 2015 WL 9484466, at *1-2, *9 (D. Del. Dec. 29, 2015). None of the allegations about either article—and certainly none of the allegations about Rensch's supposed involvement with these articles—remotely suggests that Rensch "specifically targeted Missouri" in any way. *Zazzle*, 42 F.4th at 954.

*Fourth*, the SAC mentions Rensch in connection with the Chess.com Report in which Chess.com laid out an extensive statistical analysis regarding Niemann's history of play. (SAC ¶¶ 168, 173.) While Niemann discusses the Report in connection with his claims, he does not specifically attribute any conduct, let alone Missouri-targeted conduct, to Rensch in these allegations. There is no basis to infer that the Chess.com Report itself represents a connection between Rensch and Missouri, nor is there any allegation that the Report was prepared or published in Missouri, nor that it specifically targeted Missouri or its residents. Rather, the Report was "published on [Chess.com's] website." (*Id.* ¶ 171; *see id.* ¶ 38.) And as explained above, posting information on a "nationally accessible" website does not create sufficient "contacts with Missouri." *Zazzle*, 42 F.4th at 954; *accord, e.g.*, *Marty v. Dave's Wholesale Fireworks*, 2019 WL 670344, at *8 (E.D. Mo. Feb. 19, 2019) ("Specific personal jurisdiction is not established by access

to a website 'merely mak[ing] information available to other people.'" (citation omitted)); *Gawker Media*, 2016 WL 193390, at *8 (same).  That principle controls here.

 *Finally*, the SAC tacks on an allegation that Rensch "was in St. Louis, Missouri during the Sinquefield Cup."  (SAC ¶ 24.)  But "'[s]pecific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state,'" *Zazzle*, 42 F.4th at 952 (citation omitted), and Niemann fails to allege any connection between Rensch's mere presence in Missouri and the claims asserted against Rensch, none of which involves the Sinquefield Cup.  (*See supra* at 2-3, 6-7.)  Indeed, Niemann does not even allege that Rensch attended the Sinquefield Cup when Niemann played against Carlsen.  Nor does Niemann allege that Rensch was in Missouri for the events following that game underlying this lawsuit.  Rensch, in fact, left Missouri before the Niemann-Carlsen game.  (Rensch Decl. ¶ 17.)  Thus, as Niemann concedes, Rensch "was *not* in Missouri during the time period relevant to this [lawsuit]."  (SAC ¶ 24 (emphasis added).)[5]

 Ultimately, Niemann has failed to allege facts establishing specific jurisdiction.  The Court thus lacks personal jurisdiction over Rensch, and he should be dismissed from this lawsuit.

---

[5] Niemann alleges that, although Rensch was "not in Missouri," he "conspired and coordinated with Carlsen and the other Defendants" while "Niemann and Carlsen were in Missouri."  (SAC ¶ 24.)  This allegation is conclusory; Niemann alleges no facts showing any such conspiracy or coordination during that time.  Regardless, to the extent Niemann is attempting to use this unsupported "conspiracy" allegation as a hook for personal jurisdiction over Rensch based on other parties' contacts with Missouri, that effort fails as a matter of law.  The requirements of personal jurisdiction "'must be met as to each defendant'" individually, based on "contacts that the 'defendant *himself*' creates with the forum."  *Walden*, 571 U.S. at 284-86 (citation omitted); *see id.* at 291 ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").  Subverting that principle though some sort of "'conspiracy theory of personal jurisdiction' [is] not consistent with due process."  *Mongler v. Knight*, 2017 WL 2931369, at *6 (E.D. Mo. July 10, 2017) (citation omitted); *accord, e.g.*, *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 440 (D.N.J. 2021); *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *7 (E.D.N.Y. Sept. 20, 2017).

**B.** **The SAC Fails To Establish Jurisdiction Under Missouri's Long-Arm Statute.**

Because Niemann has failed to allege facts demonstrating personal jurisdiction under the Due Process Clause, the Court's analysis can end there. *See, e.g.*, *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) ("We need not decide whether [the defendant's actions] suffice to place it within the bounds of Missouri's long-arm statute, because it is clear that the cited activities are not sufficient to surmount the due-process threshold."). But even if Niemann could surmount the due-process threshold, he has failed to establish that Rensch is subject to personal jurisdiction under Missouri's long-arm statute. As relevant here, that statute authorizes personal jurisdiction over non-resident defendants for claims "arising from" "the commission of a tortious act within th[e] state." Mo. Rev. Stat. § 506.500.1(3). To satisfy this provision, the defendant must commit the allegedly tortious act within Missouri or engage in "extraterritorial acts which produce actionable consequences in Missouri." *N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc.*, 975 F. Supp. 2d 993, 1001 (E.D. Mo. 2013).

Here, none of the alleged conduct by Rensch had any actionable consequences in Missouri, and Niemann acknowledges that Rensch was not in Missouri during the time period relevant to this lawsuit. (SAC ¶ 24); *see Glob. Media Grp., Inc. v. Express Tax Serv., Inc.*, 2005 WL 2452542, at *3 (E.D. Mo. Oct. 4, 2005) (no personal jurisdiction where "[defendant] was never physically present in Missouri during any time relevant to th[e] suit").[6] Though Niemann alleges that Rensch was in St. Louis at some undefined point "during the Sinquefield Cup" (SAC ¶ 24), Niemann does not allege that any of his claims "aris[e] from" *any* "tortious act" by Rensch while in Missouri.

---

[6] Niemann's "conspiracy" allegation (SAC ¶ 24) is not only insufficient to establish personal jurisdiction over Rensch as a matter of due process, *see supra* at 10 n.5, but it is also insufficient under "the Missouri long-arm statute." *Mongler*, 2017 WL 2931369, at *6 (citing *City of St. Louis v. Am. Tobacco Co.*, 2003 WL 23277277, at *7 (Mo. Cir. Dec. 16, 2003)).

Mo. Rev. Stat. § 506.500.1(3).  Niemann's allegations are thus insufficient to confer jurisdiction under Missouri's long-arm statute.  *See, e.g.*, *Glob. Media Grp., Inc.*, 2005 WL 2452542, at \*3.

## II.  THE SAC FAILS TO STATE A CLAIM AGAINST RENSCH

In addition to the fact that the Court lacks personal jurisdiction over Rensch, the claims against him should be dismissed as set forth in Chess.com's motion to dismiss, which is fully incorporated here by reference.  All of the allegations against Rensch concern conduct he undertook in his role as an officer of Chess.com.  And as explained in Chess.com's motion, those allegations fail to state a plausible claim for relief and are barred by Connecticut's anti-SLAPP statute, Conn. Gen. Stat. § 52-196a.

## CONCLUSION

For the foregoing reasons, the claims against Rensch should be dismissed, and Rensch should be awarded fees and costs under the anti-SLAPP statute.

12

DATED:  January 24, 2023

Respectfully submitted,

*/s/ Nima H. Mohebbi*
Nima H. Mohebbi (# 275453CA)
Sarah F. Mitchell (# 308467CA)
Michael A. Hale (# 319056CA)
**LATHAM & WATKINS LLP**
355 S. Grand Ave., Suite 100
Los Angeles, CA 90071
Tel: (213) 485-1234
*nima.mohebbi@lw.com*
*sarah.mitchell@lw.com*
*michael.hale@lw.com*

*/s/ Jamie L. Wine*
Jamie L. Wine (# 4529251NY)
Blake E. Stafford (# 888324775DC)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
*jamie.wine@lw.com*
*blake.stafford@lw.com*

Derek Teeter (# 59031MO)
Spencer Tolson (# 74467MO)
**HUSCH BLACKWELL LLP**
4801 Main, Suite 1000
Kansas City, MO 64112
Tel: (816) 983-8000
*derek.teeter@huschblackwell.com*
*spencer.tolson@huschblackwell.com*

*/s/ Jeffrey B. Jensen*
Jeffrey B. Jensen (# 46745MO)
Kate Ledden (# 66026MO)
**HUSCH BLACKWELL LLP**
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Tel: (314) 480 1500
*jeff.jensen@huschblackwell.com*
*kate.ledden@huschblackwell.com*

*Counsel for Defendant Daniel "Danny" Rensch*

13

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 24, 2023, the foregoing document was served on all counsel of record by ECF.

DATED:        January 24, 2023        <u>*/s/ Nima H. Mohebbi*</u>
Nima H. Mohebbi (# 275453CA)
Attorney for Defendant Daniel "Danny" Rensch
**LATHAM & WATKINS LLP**
355 S. Grand Ave., Suite 100
Los Angeles, CA 90071
Tel: (213) 485-1234