UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HANS MOKE NIEMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:22-cv-01110-AGF |
| | ) | |
| SVEN MAGNUS ØEN CARLSEN A/K/A | ) | |
| MAGNUS CARLSEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT CHRISTOPHER HIKARU NAKAMURA'S MOTION TO DISMISS

In his Second Amended Complaint, Plaintiff Hans Moke Niemann ("Plaintiff"), a Connecticut citizen, continues to assert various claims against Defendant Christopher Hikaru Nakamura ("Mr. Nakamura"), a Florida citizen, among other defendants.  As previously explained in Mr. Nakamura's Motion to Dismiss Plaintiff's First Amended Complaint, this Court lacks personal jurisdiction over Mr. Nakamura because Plaintiff's allegations against Mr. Nakamura, who is a Florida resident, are predicated entirely on Mr. Nakamura's alleged expression of opinions online, while he was in Florida and which were not directed towards Missouri.

In his Second Amended Complaint, Plaintiff tries to fix these problems by attempting to associate himself and Mr. Nakamura with the State of Missouri.  No amount of "artful" pleading by Plaintiff can make this so and cure his defective claims.  The facts remain that Plaintiff is a Connecticut citizen; Mr. Nakamura is a Florida citizen; Mr. Nakamura was not in Missouri at any relevant time; Mr. Nakamura's alleged conduct does not arise out of or relate to any of his prior contacts with Missouri; and Mr. Nakamura's alleged statements were made online, not directed to Missouri specifically.  As the Eighth Circuit has held on nearly identical facts, *see Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010), this Court lacks personal jurisdiction over Mr. Nakamura.

Even were this Court to reach the sufficiency of the allegations in Plaintiff's Second Amended Complaint, Plaintiff's claims against Mr. Nakamura fare no better.  Plaintiff's Clayton Act claims fail for myriad reasons—particularly as directed to Mr. Nakamura.  The balance of the claims directed against Mr. Nakamura are barred by Connecticut's anti-SLAPP statute and otherwise fail to state a claim.

In sum, even though Plaintiff had the benefit of Mr. Nakamura's previously filed Motion to Dismiss since early December 2022, nothing has meaningfully changed from Plaintiff's prior Complaints.  Plaintiff's claims against Mr. Nakamura remain wholly defective and must be dismissed.

## I.      BACKGROUND

On September 4, 2022, Plaintiff alleges he won a chess game against Magnus Carlsen ("Mr. Carlsen") during the Sinquefield Cup tournament in St. Louis, Missouri.  (Second Amended Complaint ("SAC"), Doc. 75, ¶ 6.)  Plaintiff alleges that Mr. Carlsen falsely accused Plaintiff of cheating and, when tournament officials refused Mr. Carlsen's request that Plaintiff be disqualified, Mr. Carlsen withdrew from the tournament.  (*Id.*, ¶¶ 8-9, 83.)  Days later, Mr. Carlsen refused to play a complete game with Plaintiff in another chess tournament.  (*Id.*, ¶ 10.)  Notably, Plaintiff admits to having cheated at chess but denies doing so during his Sinquefield Cup game with Mr. Carlsen.  (*Id.*, ¶ 109.)  None of these allegations relate to Mr. Nakamura.

Mr. Nakamura is not mentioned until the fifth page of the Second Amended Complaint, and only sparsely thereafter.[1]  Plaintiff takes issue with various alleged, online statements of Mr.

---

[1]  Although Mr. Nakamura previously pointed out the superfluous vitriol contained in the First Amended Complaint, (Mem. Supp. Mot. Dismiss, Doc. 61 at p. 2 n.1),  Plaintiff persists in irrelevant mudslinging.  (*E.g.*, SAC, Doc. 75, ¶ 60 (alleging that seven years ago Mr. Nakamura "baselessly accused . . . Akshat Chandra of cheating against him"),  ¶ 61 (alleging that Mr. Nakamura's "acrimonious relationship" with another chess player resulted in a "fist fight" five years ago).)  The Federal Rules frown on such "immaterial," "impertinent" allegations.  *See* Fed. R. Civ. P. 12(f).

Nakamura regarding: (i) whether *others* believed Plaintiff had cheated; (ii) whether Plaintiff's pace of play and post-game explanation were odd; and (iii) publicly available news articles. (*Id.*, ¶¶ 104(a)-(d), 105(a)-(e), 99, 107(a)-(b), 108, 137-39, 152-54, 189-90.)

In his third pleading attempt, Plaintiff asserts in the Second Amended Complaint six Counts against all five Defendants, *collectively*: Count I, slander (*id.*, ¶¶ 208-13); Count II, libel (*id.*, ¶¶ 214-19); Count III, a Clayton Act claim for "Violations of [§ 1 of] the Sherman Act" (*id.*, ¶¶ 220-26); Count IV, a Clayton Act claim for "Violations of [§ 2 of] the Sherman Act" (*id.*, ¶¶ 227-33); Count V, tortious interference with contract and business expectancies (*id.*, ¶¶ 234-40); and Count VI, civil conspiracy (*id.*, ¶¶ 241-45). Plaintiff also asserts (in Count VII) a breach-of-contract claim against Defendant Chess.com. (*Id.*, ¶¶ 246-51.) Besides the breach-of-contract claim, none of the Counts is specific as to any particular Defendant; instead, each Count incorporates all 209 paragraphs of "factual" allegations against all five Defendants.[2]

## II.  ARGUMENT

As an initial matter, Plaintiff's Second Amended Complaint contains no allegations of *any* jurisdictionally relevant conduct by Mr. Nakamura in, or directed by him to, Missouri. Moreover, the lack of personal jurisdiction over Mr. Nakamura in this litigation is confirmed by the traditional jurisdictional analysis. Though the Court need not reach the sufficiency of his allegations, each of Plaintiff's Counts I-VI also fails to state a claim.

---

[2] While the final "factual" paragraph is numbered "207," there are actually 209 paragraphs of such allegations, including two non-duplicative paragraphs numbered "53" and "54." (*See* SAC, Doc. 75, at pp. 13-14.)

3

A.   **Plaintiff's Counts I-VI Against Mr. Nakamura Must Be Dismissed under Federal Rule of Civil Procedure 12(b)(2) for Lack of Personal Jurisdiction.**

1.   **Standard of Review.**

The plaintiff "bears the burden of establishing a prima facie showing of jurisdiction[.]" *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022) (citation and alteration omitted).  Although "[t]he evidentiary showing required at the prima facie stage is minimal," the plaintiff must still plead "sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state."  *Id.* (citations and internal quotation marks omitted).

"There are two types of personal jurisdiction—general and specific."  *Bender v. Boyreau*, No. 4:20-cv-1850 AGF, 2021 WL 5451390, at *5 (E.D. Mo. Mar. 30, 2021).  "General personal jurisdiction arises when a defendant's contacts with the forum state are so continuous and systematic that [he] may be subject to suit there for causes of action entirely distinct from the in-state activities."  *Id.*  "For an individual, the paradigm forum for the exercise of general jurisdiction is [his] domicile."  *Id.* at *8 (citation omitted).  Mr. Nakamura is not domiciled in Missouri; he resides, and intends to remain indefinitely, in Florida.  (SAC, Doc. 75, ¶ 25; Decl. of H. Nakamura, attached as Ex. A hereto, ¶ 3.)[3]  The Court thus lacks general jurisdiction over him.

The Court may exercise specific jurisdiction over an out-of-state defendant "only to the extent permitted by the state's long-arm statute and the Constitution's due process clause." *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 619 (8th Cir. 2021) (citation omitted).  In Missouri, this is a two-step inquiry; jurisdiction must be proper under ***both*** the Due Process Clause

---

[3] The Court "may look beyond the pleadings to determine whether personal jurisdiction exists, including reviewing affidavits and other exhibits." *Zazzle*, 42 F.4th at 951 (citation omitted).  In the Second Amended Complaint, Plaintiff pleads nothing in conflict with the contents of Mr. Nakamura's declaration submitted with his prior motion to dismiss papers.

*and* the long-arm statute for the Court to proceed. *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012); *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909-10 (8th Cir. 2012).

> **2.      The Due Process Clause Does Not Permit the Exercise of Specific Personal Jurisdiction Over Mr. Nakamura in this Case.**

"Due process requires that a defendant have certain 'minimum contacts' with the forum State for the State to exercise specific jurisdiction." *Morningside Church*, 9 F.4th at 619 (citation omitted). That is, there must be sufficient "minimum contacts" between a defendant and the forum state so that jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citation and internal quotation marks omitted). "Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* at 284 (citation omitted). Accordingly, "[t]he defendant's connection with the forum state must be more than random, fortuitous, or attenuated, and must permit the defendant to reasonably anticipate being haled into court there." *Morningside Church*, 9 F.4th at 619 (citation and internal quotation marks omitted). The contacts must be based on "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (citation omitted). In other words, "[t]he relationship between the defendant and the forum state 'must arise out of contacts that the defendant himself creates with the forum State.'" *Clement v. Carter-Young Inc.*, 4:18-cv-74 AGF, 2018 WL 2321064, at *2 (E.D. Mo. May 22, 2018) (quoting *Walden*, 571 U.S. at 284).

"In determining whether specific jurisdiction exists, [courts] consider the totality of the circumstances, using five factors to guide [their] analysis: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of

action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Zazzle*, 42 F.4th at 952 (citation, internal alteration, and internal quotation marks omitted).  The first three factors are primary, with the remaining two carrying less weight. *Id.*  None of these factors supports the exercise of personal jurisdiction over Mr. Nakamura in this case; in fact, Eighth Circuit precedent requires dismissal.

As to the first three factors, Mr. Nakamura, a Florida citizen, was present in Florida when he expressed each of his alleged statements online.  (SAC, Doc. 75, ¶ 25; Decl. of H. Nakamura, Ex. A, ¶¶ 3-4.)  Plaintiff does not and cannot allege that Mr. Nakamura participated in the 2022 Sinquefield Cup; Mr. Nakamura, in fact, did not.  (Decl. of H. Nakamura, Ex. A, ¶ 6.)  Mr. Nakamura made no effort to direct his alleged statements to Missouri.  (*Id.*, ¶ 5.)  The only connection between Mr. Nakamura's alleged statements and Missouri is that, when Mr. Nakamura expressed *some* (although it is not clear which) of them, Plaintiff alleges that Plaintiff was in Missouri.[4]  (SAC, Doc. 75, ¶ 25.)  Even accepting this "fact" as true, it does not supply the "minimum contacts" necessary to exercise personal jurisdiction over Mr. Nakamura.  *See, e.g.*, *Walden*, 571 U.S. at 290 (explaining that even "mere injury to a forum resident is not a sufficient connection to the forum"); *Zazzle*, 42 F.4th at 953 (affirming dismissal of nonresident defendant where "[plaintiff] has not alleged that [defendant] took such purposeful, targeted action towards Missouri"); *Bender*, 2021 WL 5451390, at *9 (explaining that "[m]inimum contacts do not exist

---

[4] Alleging that Mr. Nakamura "commit[ted] tortious acts against [Plaintiff] when both [Plaintiff] and [Mr.] Carlsen were in Missouri," (SAC, Doc. 75, ¶ 25), Plaintiff appears to represent that he was in Missouri when all of the conduct complained of took place.  While not an issue for today, Mr. Nakamura doubts the truth of this seemingly deliberately vague assertion, which itself appears to be belied by Plaintiff's own allegations.  Suffice it to say for purposes of Mr. Nakamura's instant Motion, "both due process and the Missouri long-arm statute require something more than a boilerplate allegation of conspiracy" to permit the exercise of personal jurisdiction over a non-resident defendant.  *Mongler v. Knight*, No. 2:17-cv-6 CDP, 2017 WL 2931369, at *6 (E.D. Mo. July 10, 2017).

where the primary link between the forum state and the wrongful conduct is that the plaintiff is present in the forum state" (citation omitted)).

In his Second Amended Complaint, Plaintiff proceeds to tack on bald assertions that Mr. Nakamura "engages in extensive commercial activities in St. Louis, Missouri, including regularly competing in and commentating on chess tournaments and events" and "routinely travels to St. Louis, Missouri for these events." (SAC, Doc. 75, ¶ 25.) But even accepting these conclusory allegations as true, Plaintiff does *not* allege that *his* particular claims "arise out of or relate to" any of Mr. Nakamura's alleged contacts with the forum; Mr. Nakamura's alleged contacts with Missouri do not form the basis of, and are not related to, Plaintiff's claims.[5] *See, e.g.*, *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (citation omitted); *Williams v. LG Chem, Ltd.*, 4:21-cv-966 SRC, 2021 WL 6072500, at *3 (E.D. Mo. Dec. 23, 2021) (dismissing claims against defendant because although defendant "carrie[d] on *some* business in Missouri, . . . none related to this litigation" (emphasis in original)). Plaintiff similarly asserts that Mr. Nakamura has competed in St. Louis chess tournaments in the past, yet Plaintiff does not and cannot make any argument that his claims involve these other tournaments. *See Zazzle*, 42 F.4th at 952 ("[I]n assessing specific jurisdiction, we look only to [defendant]'s contacts with Missouri related to [plaintiff]'s claims." (citation omitted)). "This . . . weighs heavily against finding personal jurisdiction over [Mr. Nakamura]." *Williams*, 2021 WL 6072500, at *3 (citing *Ford*, 141 S. Ct. at 1025).

---

[5] Having filed the Second Amended Complaint with the benefit of Mr. Nakamura's prior Motion to Dismiss, Plaintiff was unquestionably aware of Mr. Nakamura's detailed exceptions to the failure of the First Amended Complaint to establish contacts between Mr. Nakamura and Missouri, let alone specific contacts related to Plaintiff's claims. Yet, in the Second Amended Complaint, Plaintiff does not (and cannot) allege that Mr. Nakamura has any contacts with Missouri related to Plaintiff's claims. Instead, Plaintiff offers only vague and conclusory allegations of "extensive commercial activities" in and "routine travel" to Missouri, which fall far short of satisfying either the Due Process Clause or Missouri's long-arm statute.

The Eighth Circuit's decision in *Johnson v. Arden* requires dismissal of all claims against Mr. Nakamura.  In *Arden*, a case decided even before the Supreme Court's later significant narrowing of specific jurisdiction in *Walden*, Missouri plaintiffs brought a defamation suit against out-of-state defendants who allegedly conspired to post false online statements about activities plaintiffs undertook in Missouri.  614 F.3d at 787-88.  The district court dismissed for lack of jurisdiction and the Eighth Circuit affirmed, explaining that, even though the statements concerned plaintiff's acts in Missouri, "[t]he statements were aimed at the [plaintiffs]," *not* "Missouri."  *Id.* at 796.  Further, there was no evidence that the "website specifically target[ed] Missouri, or that the content of [defendant's] alleged postings specifically targeted Missouri."  *Id.*; *see also Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 400 (E.D. Tex. 2022) ("Posting an allegedly defamatory statement on Twitter does not satisfy *Calder*'s 'effects test' merely because some members of the Tweet's audience fortuitously reside in the forum state." (citation omitted)).  So too here.  Plaintiff does not and cannot allege that Mr. Nakamura, an international chess personality, somehow acted in a way uniquely aimed at Missouri and knowingly caused the brunt of any supposed harm to Plaintiff, a non-Missourian, in Missouri.  In sum, "[p]osting on the internet from [outside the forum state] an allegedly defamatory statement" about even a forum resident, which Plaintiff is not, "does not create the type of substantial connection between [the poster] and Missouri necessary to confer specific personal jurisdiction."  *Arden*, 614 F.3d at 797.

This result follows regardless of the lens through which the Court conducts its jurisdictional analysis.  For example, courts sometimes consider the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984), when the underlying cause of action involves intentional torts potentially "performed for the very purpose of having their consequences felt in the forum state."  *Zazzle*, 42 F.4th at 954 (citation omitted); *see, e.g.*, *id.* (explaining that the effects test is "an additional factor to consider

when evaluating a defendant's relevant contacts with the forum state" (citation omitted));
*Pederson v. Frost*, 951 F.3d 977, 981 (8th Cir. 2020) ("[P]ersonal jurisdiction can exist over a
nonresident defendant who commits an intentional tort when its effect is 'felt' primarily within the
forum state." (citation omitted)).  The test provides that

> a defendant's tortious acts can serve as a source of personal jurisdiction only where
> the plaintiff makes a prima facie showing that the defendant's acts (1) were
> intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused
> harm, the brunt of which was suffered—and which the defendant knew was likely
> to be suffered—in the forum state.

*Zazzle*, 42 F.4th at 954 (citation and alteration omitted).  The test is "construe[d] . . . narrowly";
"absent additional contacts, mere effects in the forum state are insufficient to confer personal
jurisdiction."  *Id.* (citation omitted).  In *Walden*, the Supreme Court clarified that the analysis is
controlled by the defendant's relationship with the forum state based on "contacts that the
'defendant *himself*' creates with the forum State."  571 U.S. at 284 (citation omitted).  Only when
the plaintiff's *alleged injury* connects the defendant's conduct to the forum state can a plaintiff
satisfy the effects test.  *Id.* at 288.

Here, the effects test confirms the absence of personal jurisdiction over Mr. Nakamura.
Mr. Nakamura's alleged statements were not made in Missouri.  (Decl. of H. Nakamura, Ex. A,
¶ 4); *see Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (per curiam)
(affirming dismissal of nonresident defendant when no defamatory statements were published in
the forum state).  The alleged statements, made online to a worldwide audience, were not directed
*at Missouri*.[6]  (Decl. of H. Nakamura, Ex. A, ¶¶ 4-5; SAC, Doc. 75, ¶ 57); *see Zazzle*, 42 F.4th at

---

[6] Although Mr. Nakamura's alleged statements were expressed online, Plaintiff does not and cannot
allege that Mr. Nakamura operated any of the online platforms at issue.  Thus, the "sliding scale" test of
*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), is not likely to apply; but even
if it did, the result would be the same.  *E.g.*, *N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc.*, 975 F.
Supp. 2d 993, 999 (E.D. Mo. 2013).  "The scale runs from active contract formation and repeated
transmission of computer files to mere posting of information on a website."  *Arden*, 614 F.3d at 796

954 ("[Defendant]'s website is nationally accessible, and nowhere does [plaintiff] allege that [defendant] specifically targeted Missouri consumers or the Missouri market." (citation omitted)); *Johnson v. Gawker Media, LLC*, No. 4:15-cv-1137 CAS, 2016 WL 193390, at *9 (E.D. Mo. Jan. 15, 2016) (dismissing claims for lack of personal jurisdiction where defendants' "contacts with the State of Missouri are limited to publication of articles on internet websites that can be viewed from Missouri"). That Plaintiff, who is not a Missouri resident, allegedly was in Missouri when Mr. Nakamura may have expressed some (though Plaintiff does not allege which) statements changes nothing; and, of course, it necessarily follows that Plaintiff, a non-Missourian with no Missouri-specific harm, was not in Missouri when some of the alleged statements were made.[7] *See, e.g.*, *Wood v. Kapustin*, 992 F. Supp. 2d 942, 946 (D. Minn. 2014) (holding defendant's knowledge of plaintiff's presence in the forum state and brief mentions of the forum state do not satisfy due process); *Twin Flames Universe.com v. Cole*, 528 F. Supp. 3d 708, 718 (E.D. Mich. 2021) ("In any event, something more than knowledge of the Plaintiffs' presence in the forum must be found . . ." (citation omitted)); *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002) ("[T]he plaintiff's

---

(citation omitted). Plaintiff does not and cannot allege in good faith that Mr. Nakamura used a website for "contract formation" purposes; Plaintiff alleges that Mr. Nakamura made comments online via "video-streaming" and Twitter. (*E.g.*, SAC, Doc. 75, ¶¶ 14(b), 54-57, 104(a)-(d), 106, 107(a)-(b), 137-39, 152-54, 189-90.) The mere accessibility of Mr. Nakamura's alleged statements online does not confer personal jurisdiction over him in Missouri, under *Zippo* or otherwise. *See, e.g.*, *Arden*, 614 F.3d at 796; *Marty v. Dave's Wholesale Fireworks*, No. 2:18-cv-38 PLC, 2019 WL 670344, at *8 (E.D. Mo. Feb. 19, 2019) ("Specific personal jurisdiction is not established by access to a website 'merely mak[ing] information available to other people.'" (citation omitted and alteration in original)); *Gawker Media*, 2016 WL 193390, at *8 (holding that the "mere fact that [the defendant]'s websites [were] accessible in Missouri or that they provide[d] the possibility a Missouri resident might have contact with the defendants by leaving comments to an article" did not confer personal jurisdiction (citation omitted)).

[7] As explained previously and again herein, while Plaintiff alleges that Mr. Nakamura made numerous statements, Plaintiff fails to identify which statements Plaintiff believes are actionable (none is) and whether Plaintiff was in Missouri or elsewhere (such as Plaintiff's home state of Connecticut) when such statements were made (though ultimately it would not matter).

residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*." (citation omitted)).

As to the fourth and fifth jurisdiction factors, neither Plaintiff nor Mr. Nakamura is a resident of Missouri.  *See, e.g.*, *Kaliannan v. Liang*, 2 F.4th 727, 734-35 (8th Cir. 2021) (clarifying that the fourth factor considers specifically whether the plaintiff is a resident of the forum state, not whether the forum state may have some other interest in adjudicating the dispute); *Gawker Media*, 2016 WL 193390, at *9 (holding that the fourth and fifth factors weighed against the exercise of personal jurisdiction because "Missouri ha[d] at most a minor interest in providing a forum for nonresident defamation plaintiffs with no real connections to the state" and a "trial in Missouri would not [have been] convenient for either side").  As such, the final two factors likewise preclude the exercise of personal jurisdiction over Mr. Nakamura in this case.

In sum, ***all*** of the relevant factors reveal—and Eighth Circuit precedent confirms—that personal jurisdiction over Mr. Nakamura is lacking under the Due Process Clause.  Plaintiff's claims against Mr. Nakamura must be dismissed.

### 3.     Missouri's Long-Arm Statute Does Not Reach Mr. Nakamura in this Case.

"The Missouri Supreme Court has held that the legislature intended the long-arm statute to provide for jurisdiction, ***within the specific categories enumerated in the statutes***, to the full extent permitted by the due process clause of the Fourteenth Amendment."[8]  *Dairy Farmers*, 702 F.3d at 475 (emphasis added) (internal quotation marks and citation omitted).  Plaintiff's Second

---

[8] This jurisdictional analysis applies with equal force with respect to all of the claims asserted by Plaintiff.  *See, e.g.*, *Gawker Media*, 2016 WL 193390, at *4-6 (defamation); *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593-94 (8th Cir. 2011) (tortious interference); *SRS Energy, Inc. v. Bio-Prod. Int'l, Inc.*, 2008 WL 2224803, at *3-4 (E.D. Mo. May 27, 2008) (civil conspiracy); *Health Care Equalization Comm. of the Iowa Chiropractic Soc'y v. Iowa Med. Soc'y*, 851 F.2d 1020, 1029-31 (8th Cir. 1988) (antitrust); *Torrey v. Infectious Diseases Soc'y of Am.*, No. 5:17-cv-190 RWS, 2018 WL 10124894, at *19 (E.D. Tex. Sept. 27, 2018) (antitrust); *Jarrow Formulas, Inc. v. Int'l Nutrition Co.*, 175 F. Supp. 2d 296, 304 (D. Conn. 2001) (antitrust).

Amended Complaint remains silent on this issue, despite Mr. Nakamura raising this in his prior Motion to Dismiss.  (Mem. Supp. Mot. Dismiss, Doc. 61 at pp. 4-5.)  In any event, Section 506.500.1(3) R.S. Mo., which extends jurisdiction over a non-resident defendant as to any cause of action arising out of "[t]he commission of a tortious act within this state," is presumably the provision of Missouri's long-arm statute Plaintiff believes would potentially apply to his claims against Mr. Nakamura.  It does not.

"A party relying on a defendant's commission of a tort within [Missouri] to invoke long arm jurisdiction must make a prime facie showing of the validity of [his] claim."  *Cepia, LLC v. Universal Pictures Visual Programming Ltd.*, 177 F. Supp. 3d 1129, 1140 (E.D. Mo. 2016) (first alteration in original and citation omitted).  For intentional torts, "the defendant must have set in motion some course of action ***which was deliberately designed to move into Missouri and injure the plaintiff***."  *Id.* at 1140-41 (citation omitted and emphasis added).

Plaintiff's Second Amended Complaint is completely devoid of any allegations of fact that Mr. Nakamura took any action in, or specifically directed to, Missouri.  He did not.  (Decl. of H. Nakamura, <u>Ex. A</u>, ¶ 5.)  Indeed, despite it being his third attempt, Plaintiff does not and cannot plausibly allege that he suffered an injury caused by Mr. Nakamura ***in Missouri***—where Plaintiff does not even reside.  (*See* Doc. 82, at pp. 7-11 (discussing a plaintiff's residence as the place of injury from alleged defamation and related torts)).  Instead, Plaintiff alleges that Mr. Nakamura wronged him by making some (though Plaintiff does not allege which) statements while Plaintiff happened to be "in Missouri."  (SAC, Doc. 75, ¶ 25.)  Plaintiff has not alleged—and cannot allege—that Mr. Nakamura "set in motion some course of action which was *deliberately designed to move into Missouri and injure [him]*."  *Cepia*, 177 F. Supp. 3d at 1142 (emphasis in original and citation omitted); *see also J.H. Berra Paving Co., Inc. v. Legendary Motorcar Co., Ltd.*, Case

No. 4:18-cv-2148 NCC, 2019 WL 2342448, at *3 (E.D. Mo. June 3, 2019) (holding that Missouri's long-arm statute did not reach non-resident defendant despite non-resident defendant's website and advertising presence in Missouri and telephone calls and emails to Missouri plaintiff regarding the contract at issue).

In short, Missouri's long-arm statute does not reach Mr. Nakamura in this case.  Nor does the Due Process Clause permit the exercise of personal jurisdiction over Mr. Nakamura. For both of these independent reasons, Plaintiff's claims against Mr. Nakamura should be dismissed.

**B.**     **Plaintiff's Counts III and IV Fail to State a Claim for Myriad Reasons and Should Be Dismissed under Federal Rule of Civil Procedure 12(b)(6).**

In Counts III and IV, Plaintiff alleges antitrust violations by all Defendants.  (SAC, Doc. 75, ¶¶ 220-33.)  As explained at length in Chess.com's Memorandum in Support of its Motion to Dismiss (Doc. 84), Counts III and IV fail to state a claim because Plaintiff does not allege an antitrust injury; does not allege a well-defined market; does not plausibly allege an agreement among Defendants; does not plausibly allege that any such agreement unreasonably restrained trade; and does not plausibly allege the elements of a supposed "attempted-monopolization" claim. These glaring pleading deficiencies are the byproduct of the inherently untenable nature of Plaintiff's antitrust claims—particularly as applied to Mr. Nakamura.

*Hurley v. National Basketball Players Association* is instructive here.  In *Hurley*, the plaintiff alleged, among other things, an antitrust claim after the National Basketball Players Association denied his application to become a player-agent.  Case No. 1:21-cv-1099, 2021 WL 6065783, at *1 (N.D. Ohio Dec. 22, 2021), *aff'd* 2022 WL 17998878 (6th Cir. Dec. 30, 2022). The plaintiff alleged that, by his application being denied, he was "denied access to the market of representing prospective and current NBA Basketball players[.]"  *Id.* at *4.  The court had little difficulty rejecting the Sherman Act claim, in that the plaintiff alleged only an "individualized

13

injury"—not an "injury to competition"—and because the plaintiff's conclusory conspiracy allegations did nothing to bolster his insufficient allegations, which would not amount to a Sherman Act violation in any event. *Id.* at *7-8.

As in *Hurley*, Plaintiff's allegations come nowhere close to stating a plausible claim. This is particularly true as to Mr. Nakamura, who is alleged to be a "competitor" in *playing the game of chess*. Plaintiff does not and cannot allege that Mr. Nakamura controls some overbroad, supposed "market" for online recreational and professional chess tournaments in such a way that could cause an antitrust violation.[9] For these reasons, and the reasons otherwise set forth in Chess.com's Memorandum in Support of its Motion to Dismiss (Doc. 84), which Mr. Nakamura adopts, Counts III and IV fail to state a claim.

**C.    Plaintiff's Counts I, II, V, and VI Should Be Dismissed Pursuant to Connecticut's Anti-SLAPP Law.**

As discussed in Mr. Carlsen's Memorandum in Support of his Motion to Dismiss (Doc. 82), Plaintiff's Counts I, II, V, and VI should be dismissed pursuant to Connecticut's anti-SLAPP law. Mr. Nakamura adopts the arguments in Mr. Carlsen's briefing, which apply with at least equal force to Plaintiff's claims directed to Mr. Nakamura's alleged statements.[10] *See Pacheco Quevedo v. Hearst Corp.*, No. FSTCV195021689S, 2019 WL 7900036 (Conn. Super. Ct. Dec. 19, 2019); *Charamut v. Savage*, No. HHBCV216068665S, 2022 WL 620782, at *4 (Conn. Super. Ct.

---

[9] FIDE is featured prominently throughout Plaintiff's Second Amended Complaint. (*See* SAC, Doc 75, *passim*.) Plaintiff makes no allegation that Mr. Nakamura has any influence or control over FIDE as the "international governing body of professional chess," any of the worldwide FIDE sanctioned events in 200 countries, FIDE's rules, FIDE's arbiters, or how FIDE qualifies players for events.

[10] At core, Plaintiff, with an admitted history of cheating that has been widely reported by global news outlets, commenced this suit against Mr. Nakamura—and none of the countless others who shared their opinions on the matter (*see, e.g.*, SAC, Doc. 75, ¶ 120)—in an obvious effort to chill Mr. Nakamura's free speech and, perhaps equally importantly, the free speech of others out of fear of being haled into Federal Court in a distant forum to face a $100 million lawsuit. This is a quintessential example of a lawsuit barred by Connecticut's anti-SLAPP law.

Feb. 2, 2022); *Lawrence v. Chambers*, No. FSTCV205022942S, 2020 WL 6121712, at *4 (Conn. Super. Ct. Sept. 21, 2020). Plaintiff has not met (and cannot meet) his burden to maintain his Counts I, II, V, or VI against Mr. Nakamura. These claims should be dismissed with prejudice, with Mr. Nakamura awarded his attorneys' fees and costs. *See* Conn. Gen. Stat. § 52-196a(f)(1).

**D.**    **Plaintiff's Counts I, II, V, and VI Otherwise Fail to State a Claim and Should Be Dismissed under Federal Rule of Civil Procedure 12(b)(6).**

      **1.**    **Despite Defendants Having Challenged Plaintiff's Pleading Deficiencies in Plaintiff's First Amended Complaint, Plaintiff Continues to Improperly Commingle His Allegations against All Defendants.**

Prior to filing his Second Amended Complaint, Plaintiff had the benefit of Motions to Dismiss filed by each of the Defendants. Mr. Nakamura, among others, specifically argued that Plaintiff had improperly commingled his allegations against all Defendants and all of the parties' (and non-parties') alleged statements in Plaintiff's Counts I (slander) and II (libel), including in that Plaintiff failed to identify which alleged statements of Mr. Nakamura are alleged to be actionable in and the subject of Counts I and II. (Mem. Supp. Mot. Dismiss, Doc. 61, at pp. 2, 11-12.)[11]

Nevertheless, Plaintiff persists in his Second Amended Complaint in intentionally commingling all Defendants into each Count and failing to identify specifically which of Mr. Nakamura's alleged statements sprinkled through the 209 "factual" paragraphs of the Second Amended Complaint form the basis of his claims. Additionally, Plaintiff impermissibly attempts to incorporate-by-reference all 209 paragraphs of allegations, whether full of vitriol or directed toward other Defendants, against Mr. Nakamura. (*See* SAC, Doc. 75, ¶¶ 208-13, 214-19.)

---

[11] By way of example, Plaintiff includes in the 209 paragraphs incorporated into Counts I, II, V and VI irrelevant and impertinent alleged actions and statements by Mr. Nakamura related to non-parties, and then fails to enumerate specifically which statements are alleged to be actionable fact statements made with "actual malice" or which are offered as (irrelevant, supposed) background. *See also supra* n.1.

Dismissal is warranted.[12]  *See, e.g.*, *Mo. Primate Found. v. PETA, Inc.*, No. 4:16-cv-2163 CDP, 2017 WL 4176431, at *5 (E.D. Mo. Sept. 21, 2017) (complaint alleging that press releases were the defamatory statements was insufficiently pleaded); *Stevens v. Helming*, 135 A.3d 728, 732 n.3 (Conn. App. Ct. 2016) ("Imprecise pleading is not permitted in the context of alleged defamation[.]" (citation and alterations omitted)); *see also Boggs v. American Optical Co.*, 4:14-cv-1434 CEJ, 2015 WL 300509, at *2 (E.D. Mo. Jan. 22, 2015) ("A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." (citation omitted)); *Campbell v. ABB Inc.*, 4:14-cv-1489 AGF, 2015 WL 1006388, at *2 (E.D. Mo. Mar. 5, 2015) (discussing the interplay between Federal Rules of Civil Procedure 1 and 8 and holding that the plaintiff's complaint lacked necessary detail regarding the plaintiff's allegations against each of the various defendants).

## 2.  None of the Alleged Statements by Mr. Nakamura Is Actionable.

This Court is not obligated to sift through all 209 (mis-numbered) paragraphs of Plaintiff's Second Amended Complaint to discern those statements Plaintiff alleges to be actionable; clearly identifying the alleged statements at issue, as well as facts that would establish each of the elements of a cause of action, is the plaintiff's burden—not the Court's.  *E.g.*, *King v. Union Station Holdings, LLC*, No. 4:12-cv-696 SNLJ, 2012 WL 5351598, at *4 (E.D. Mo. Oct. 30, 2012).

But even if the Court were to do so, and even if Plaintiff intended that *all* alleged statements of Mr. Nakamura in any way mentioned in the Second Amended Complaint form the basis of his Counts I and II against Mr. Nakamura, Plaintiff still fails to state a claim.  Every such statement is

---

[12] Although a choice of law analysis is necessary for purposes of Connecticut's anti-SLAPP statute, no such analysis is necessary in analyzing whether Plaintiff's Counts I, II, V, and VI fail under Federal Rule of Civil Procedure 12(b)(6), as these claims fail under both Missouri and Connecticut law.

a non-actionable statement of opinion and, regardless, Plaintiff was required to, but failed to, plausibly allege actual malice for each statement:[13]

(i)  Mr. Nakamura's alleged opinion that Mr. Carlsen withdrew from the chess tournament because Mr. Carlsen believed that Plaintiff had cheated, *e.g.*, "Magnus did not withdraw because he was pissed at losing the game, let's put it that way.  I mean, I've played with Magnus for the last 20 years, he did not withdraw because he lost the game" (SAC, Doc. 75, ¶¶ 104(a)-(d)), does not give rise to either claim both because it is Mr. Nakamura's opinion (regarding what he believed Mr. Carlsen thought), and because Plaintiff himself alleges that Mr. Carlsen withdrew from the chess tournament because Mr. Carlsen believed that Plaintiff had cheated.

(ii)  Mr. Nakamura allegedly having heard that others believed Plaintiff had cheated at chess, *e.g.*, "Why would Magnus say [this] if there's literally no hard proof? Like I said, amongst grandmasters, this rumor's been around forever, I've heard it, I've summarily dismissed it many different times, but actual top players are saying stuff now" (*id.*, ¶¶ 105(a)-(b), 107(a)-(b), 108), is not an actionable statement of fact, and Plaintiff himself admits that he has cheated at chess before (*see id.*, ¶ 109).

(iii)  Mr. Nakamura's alleged opinion that Plaintiff's explanation as to how he beat Mr. Carlsen in the chess game, *e.g.*, "This is weird. This analysis [by Plaintiff] is not 2700 level analysis. This is not 2700 level analysis. Like, Alejandro's outplaying him [as the interviewer]. Alejandro's not even using the engine and he's outplaying him," and that Plaintiff's pace of play during the chess game, were dubious (*id.*, ¶ 105(c)-(e)) are similarly non-actionable opinions.

(iv)  Mr. Nakamura's alleged re-Tweeting of a Tweet from Twitter from an account named "Unsubstantiated Chess Rumors" and stating it is in fact a legitimate Tweet (*id.*, ¶ 106) is not an actionable statement of fact—the Twitter account re-Tweeted was quite literally named *Unsubstantiated Chess Rumors* and Plaintiff does not allege that Mr. Nakamura somehow fabricated the Tweet.

---

[13] *E.g.*, *Primrose Companies, Inc. v. McGee*, No. UWY-CV-21-6062747-S, 2022 WL 3712636, at *8, 11-13 (Conn. Super. Ct. Aug. 26, 2022) (explaining that a public figure, such as Plaintiff, must also plausibly allege actual malice); *Chastain v. Cypress Media, LLC*, No. 4:19-cv-315 DGK, 2019 WL 13203920, at *3-4 (W.D. Mo. July 22, 2019) (same); *see also Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) ("Every circuit that has considered the matter has applied the *Iqbal*/*Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." (alteration and citation omitted)).

(v)     Mr. Nakamura's alleged belief that Plaintiff was a student of Maxim Dlugy, who "is rumored to have cheated in online games on Chess.com" (*id.*, ¶¶ 135, 137-39, 154), is likewise not an actionable statement of fact.[14]  (*See id.*, ¶ 109.)

(vi)    Finally, Mr. Nakamura's alleged commentary regarding news articles and Chess.com's published report on Plaintiff's alleged cheating (*id.*, ¶¶ 152-53, 189-90) is an expression of his opinion—Mr. Nakamura is not alleged to have published the articles or reported on Plaintiff's alleged cheating but, rather, simply commented on them.

For all these reasons, Plaintiff's Counts I and II fail to state a claim.  *See, e.g.*, *Chiaravallo v. Middletown Transit Dist.*, 561 F. Supp. 3d 257, 289 (D. Conn. 2021) ("Statements of opinion, even if negative or otherwise harmful, cannot, as a matter of law, form the basis for a defamation claim." (citation omitted)); *Noble v. Hennessey*, KNLCV206045166S, 2021 WL 830014, at *9 (Conn. Super. Ct. Jan. 12, 2021) (dismissing defamation claim based on defendant's statement that an agreement was "probably illicit" because "the use of the word 'probably' inherently does not suggest a fact but, rather, is more like a 'personal comment about another's conduct' constituting an opinion" (citation omitted)); *Smith v. Humane Soc'y of United States*, 519 S.W.3d 789, 798-803 (Mo. banc 2017) (holding that subjective interpretations of data or events are non-actionable); *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 241-43 (Mo. Ct. App. 2011) (affirming dismissal of libel claim where statements at issue were opinions); *Henry v. Halliburton*, 690 S.W.2d 775, 786-87 (Mo. banc 1985) ("If the alleged defamatory remarks can be characterized as 'opinions,' they should be subject to the First Amendment absolute privilege.").

### 3.    Plaintiff's Counts V and VI Likewise Fail to State a Claim.

Because Plaintiff's Counts I and II fail to state a claim, Plaintiff's Count V (tortious interference) and Count VI (civil conspiracy) necessarily fail.  *See, e.g.*, *Others First, Inc. v. Better*

---

[14] Indeed, in his Second Amended Complaint, Plaintiff admits, or at least fails to take exception with VICE News reporting that, he was coached by (and therefore was a student of) Maxim Dlugy.  (SAC, Doc. 75, ¶ 151 ("Dlugy, who is one of Hans Niemann's coaches . . .").)

*Bus. Bureau of Greater St. Louis, Inc*., 829 F.3d 576, 579–80 (8th Cir. 2016) ("[W]here a tortious interference claim is based upon an alleged defamation, if a plaintiff's defamation claim fails, the tortious interference claim must also fail because the plaintiff cannot establish an absence of justification as a matter of law." (quoting *Castle Rock Remodeling, LLC*, 354 S.W.3d at 245) (alteration in original)); *S. Home Care Servs., Inc. v. Visiting Nurse Servs., Inc. of S. Conn.*, No. 3:13-cv-792 RNC, 2015 WL 4509425, at *11 (D. Conn. July 24, 2015) (same); *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. banc 2012) ("In Missouri, if tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well." (citation omitted)); *Litchfield Asset Mgmt. Corp. v. Howell*, 799 A.2d 298, 306 (Conn. Ct. App. 2002) (same).

Plaintiff's Counts V and VI fail for additional reasons as well.  Plaintiff has not adequately alleged that Mr. Nakamura had knowledge of the purported contracts or business expectancies with which he supposedly interfered.  *See Ariel Preferred Retail Grp., LLC v. CWCapital Asset Mgmt.,* No. 4:10-cv-623 SNLJ, 2011 WL 4501049, at *4 (E.D. Mo. Sept. 28, 2011); *S. Home Care Servs.,* 2015 WL 4509425, at *11.  Plaintiff has also not plausibly alleged how Mr. Nakamura engaged in some undefined conspiracy with the other Defendants; Plaintiff pleads absolutely no facts suggesting an agreement, meeting, conference, or communications that could potentially support some supposed conspiracy.  *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 146–47 (D. Conn. 2014) ("Without sufficient allegations of an agreement, there can be no conspiracy."); *Park Ridge Assocs. v. U.M.B. Bank*, 613 S.W.3d 456, 463 (Mo. Ct. App. 2020) ("Civil conspiracy is an agreement or understanding between two or more parties . . . ." (citation omitted)).

## III.    CONCLUSION

Plaintiff's claims against Mr. Nakamura must be dismissed for lack of personal jurisdiction.  Should the Court consider the merits of Plaintiff's claims, Plaintiff's Counts III and IV fail to state a claim and should be dismissed, and Plaintiff's Counts I, II, V, and VI should be dismissed under Connecticut's anti-SLAPP law, with Mr. Nakamura awarded his attorneys' fees and costs, or, alternatively, these claims should be dismissed for failure to state a claim.

Respectfully submitted,

**LEWIS RICE LLC**

Dated:  January 24, 2023                     By:     /s/ Neal F. Perryman
                                                              Neal F. Perryman, #43057 (MO)
                                                              Michael L. Jente, #62980 (MO)
                                                              Benjamin M. Farley, #69073 (MO)
                                                              600 Washington Avenue, Suite 2500
                                                              St. Louis, Missouri 63101
                                                              Telephone:  (314) 444-7661
                                                              Facsimile:  (314) 612-7661
                                                              nperryman@lewisrice.com
                                                              mjente@lewisrice.com
                                                              bfarley@lewisrice.com

                                                              and

                                                              Michael J. Ryan, FL State Bar #975990*
                                                              *Admitted PHV
                                                              Freedland Harwin Valori Ryan
                                                              110 SE Sixth Street, Suite 2300
                                                              Fort Lauderdale, Florida 33301
                                                              Telephone: (954) 467-6400
                                                              Facsimile: (954) 670-2530
                                                              mryan@fhvlegal.com

                                                              *Attorneys for Defendant*
                                                              *Christopher Hikaru Nakamura*