# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| HANS MOKE NIEMANN, | |
| Plaintiff, | Case No. 4:22-cv-01110-AGF |
| v. | Hon. Audrey G. Fleissig |
| SVEN MAGNUS ØEN CARLSEN A/K/A MAGNUS CARLSEN, PLAY MAGNUS AS D/B/A PLAY MAGNUS GROUP, CHESS.COM, LLC, DANIEL RENSCH A/K/A "DANNY" RENSCH, AND HIKARU NAKAMURA, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT PLAY MAGNUS AS D/B/A PLAY MAGNUS GROUP'S
## <u>MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT</u>

Nima H. Mohebbi (# 275453CA)
Sarah F. Mitchell (# 308467CA)
Michael A. Hale (# 319056CA)
**LATHAM & WATKINS LLP**
355 S. Grand Ave., Suite 100
Los Angeles, CA 90071
Tel: (213) 485-1234
*nima.mohebbi@lw.com*
*sarah.mitchell@lw.com*
*michael.hale@lw.com*

Jeffrey B. Jensen (# 46745MO)
Kate Ledden (# 66026MO)
**HUSCH BLACKWELL LLP**
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Tel: (314) 480 1500
*jeff.jensen@huschblackwell.com*
*kate.ledden@huschblackwell.com*

Jamie L. Wine (# 4529251NY)
Blake E. Stafford (# 888324775DC)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
*jamie.wine@lw.com*
*blake.stafford@lw.com*

Derek Teeter (# 59031MO)
Spencer Tolson (# 74467MO)
**HUSCH BLACKWELL LLP**
4801 Main, Suite 1000
Kansas City, MO 64112
Tel: (816) 983-8000
*derek.teeter@huschblackwell.com*
*spencer.tolson@huschblackwell.com*

*Counsel for Defendant Play Magnus AS d/b/a Play Magnus Group*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................1

ARGUMENT ...........................................................................................................4

I. THE COURT LACKS PERSONAL JURISDICTION OVER PLAY MAGNUS..............4

    A. The SAC Fails To Establish Jurisdiction Under The Due Process Clause. ............5

    B. The SAC Fails Under Missouri's Long-Arm Statute. ............................8

II. NIEMANN'S STATE LAW TORT CLAIMS FAIL .....................................................8

    A. Connecticut's Anti-SLAPP Statute Bars Niemann's Tort Claims..........................8

    B. Niemann's Defamation Claims Fail On The Merits. ..............................................8

        1. Niemann Fails To State A Defamation Claim Based On The Meme. ...........................................................................................9

        2. Niemann Fails To State A Claim Based On Trent's Statement................11

    C. Niemann's Interference And Conspiracy Claims Fail. ...........................................14

III. NIEMANN'S ANTITRUST CLAIMS SHOULD BE DISMISSED ...............................15

CONCLUSION........................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Antonacci v. Allergan USA, Inc.*,
2021 WL 3404023 (E.D. Mo. Aug. 4, 2021) .............................................................5

*Behr v. Weber*,
172 A.D.2d 441 (N.Y. App. Div. 1991) ..................................................................12

*Blessing v. Chandrasekhar*,
988 F.3d 889 (6th Cir. 2021) ..................................................................................6

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017)..................................................................................................5

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
582 U.S. 255 (2017)..................................................................................................5

*Britt v. Unknown Officers*,
2019 WL 2453763 (D. Conn. June 12, 2019)...........................................................9

*Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*,
42 F.4th 948 (8th Cir. 2022) ........................................................................... *passim*

*Brown v. Dash*,
2020 WL 6806433 (D. Mass. Nov. 18, 2020) ..........................................................7

*Brown v. Herald Co.*,
698 F.2d 949 (8th Cir. 1983) ..................................................................................10

*C. Pepper Logistics, LLC v. Lanter Delivery Sys., LLC*,
2021 WL 3725680 (E.D. Mo. Aug. 23, 2021).........................................................4

*Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*,
354 S.W.3d 234 (Mo. Ct. App. 2011)....................................................................10

*Chastain v. Cypress Media, LLC*,
2019 WL 13203920 (W.D. Mo. July 22, 2019).....................................................11

*Corsi v. Newsmax Media, Inc.*,
519 F. Supp. 3d 1110 (S.D. Fla. 2021) ..................................................................12

*CSL Silicones, Inc. v. Midsun Grp. Inc.*,
301 F. Supp. 3d 328 (D. Conn. 2018).....................................................................12

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)..................................................................................................5

ii

*Fastpath, Inc. v. Arbela Techs. Corp.*,
    760 F.3d 816 (8th Cir. 2014) ...................................................................................4

*Glob. Media Grp., Inc. v. Express Tax Serv., Inc.*,
    2005 WL 2452542 (E.D. Mo. Oct. 4, 2005) ..........................................................8

*Gray v. Hudson*,
    2015 WL 4488143 (E.D. Mo. July 23, 2015) ........................................................7

*Howell v. Trib. Ent. Co.*,
    106 F.3d 215 (7th Cir. 1997) .................................................................................12

*Jackson v. Pollard*,
    2022 WL 993826 (W.D. Ky. Apr. 1, 2022) ...........................................................2

*Johnson v. Arden*,
    614 F.3d 785 (8th Cir. 2010) ...................................................................................6

*Kloth v. Citibank (S.D.), N.A.*,
    33 F. Supp. 2d 115 (D. Conn. 1998) ...................................................................11

*Moses v. YouTube, Inc.*,
    2013 WL 12095139 (W.D. Tenn. Sept. 23, 2013) .................................................7

*Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*,
    951 F.3d 952 (8th Cir. 2020) ......................................................................... *passim*

*NetScout Sys., Inc. v. Gartner, Inc.*,
    223 A.3d 37 (Conn. 2020) ..................................................................................9, 10

*Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*,
    829 F.3d 576 (8th Cir. 2016) .................................................................................13

*Price v. Viking Penguin, Inc.*,
    881 F.2d 1426 (8th Cir. 1989) ..........................................................................10, 14

*Smith v. Humane Soc'y of the U.S.*,
    519 S.W.3d 789 (Mo. 2017) ...............................................................................9, 10

*Stockley v. Joyce*,
    963 F.3d 809 (8th Cir. 2020) ..............................................................................9, 13

*Tarasewicz v. Royal Caribbean Cruises, Ltd.*,
    2015 WL 3970546 (S.D. Fla. June 30, 2015) ........................................................5

*Turkish Coal. of Am., Inc. v. Bruininks*,
    678 F.3d 617 (8th Cir. 2012) .................................................................................13

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
    646 F.3d 589 (8th Cir. 2011) ...................................................................................7

iii

*Walden v. Fiore*,
   571 U.S. 277 (2014).......................................................................................4, 6

*Washington v. Thomas*,
   778 S.W.2d 792 (Mo. Ct. App. 1989)..............................................................12

## STATUTES

15 U.S.C. § 1...............................................................................................................15

15 U.S.C. § 2...............................................................................................................15

Conn. Gen. Stat. § 52-196a..........................................................................................8

Mo. Rev. Stat. § 506.500.1(1)-(3)................................................................................8

## OTHER AUTHORITIES

*Avengers: Infinity War* (Marvel 2018)........................................................................3

*Champions Chess Tour: Julius Baer Generation Cup | Prelims Day 2 | Tania Sachev & Peter
   Leko*, YouTube (Sept. 19, 2022), https://www.youtube.com/watch?v=RNngyBUH4ao..........3

*Gamora: On Screen Full Report*, Marvel, https://www.marvel.com/characters/gamora/on-screen
   (last visited Apr. 10, 2023) ........................................................................2

*Thanos: On Screen Full Report*, Marvel, https://www.marvel.com/characters/thanos/on-screen
   (last visited Apr. 10, 2023) .....................................................................2, 3

## INTRODUCTION

Plaintiff Hans Niemann's lawsuit is devoid of legal merit for all the reasons set forth by Defendants Chess.com, LLC ("Chess.com"), Magnus Carlsen, Daniel Rensch, and Hikaru Nakamura in their motion to dismiss briefing.  Niemann's claims against additional Defendant Play Magnus AS d/b/a Play Magnus Group ("Play Magnus") are especially specious for several reasons, but most directly because Play Magnus has no connection to the facts alleged in the Second Amended Complaint ("SAC") (ECF No. 75).  It never banned Niemann from its platform.  It is a third party Niemann sued solely to gain leverage against Chess.com, since Chess.com recently acquired Play Magnus.  Niemann's claims against Play Magnus must be dismissed.

As an initial matter, the claims fail for lack of personal jurisdiction.  Play Magnus is a Norwegian-based company with no ties to Missouri.  And of the handful of allegations referencing Play Magnus, not one reflects *suit*-related conduct purposefully targeting Missouri.

Niemann's claims also fail as a matter of law.  The other Defendants have explained the many reasons why his claims—which he indiscriminately asserts against all Defendants following more than 200 paragraphs of unfocused allegations—must be dismissed.  The only unique claims against Play Magnus are defamation claims based on (i) a meme posted on Twitter that does not even mention Niemann, and (ii) snippets from a livestreamed interview with a guest commentator—unaffiliated with Play Magnus—offering his own opinion on the Niemann-Carlsen controversy.  Niemann is clearly grasping at straws.  Neither of these statements is remotely actionable, and even so, Niemann does not try to allege that Play Magnus acted with actual malice. The Court should dismiss the claims against Play Magnus.

## BACKGROUND

Play Magnus operates a popular platform for online recreational chess and integrates an ecosystem of innovative digital brands to grow the sport.  (SAC ¶¶ 4, 52-53.)  It is a Norwegian

private limited company founded, in part, by Magnus Carlsen, a citizen of Norway.  (*Id.* ¶ 22; *see* Declaration of Dmitri Shneider ("Shneider Decl.") ¶¶ 2, 4.)  The company's offices, and principal place of business, are located in Oslo, Norway.  (Shneider Decl. ¶ 4.)  Play Magnus owns no property in Missouri and otherwise has no legally significant connection to Missouri.  (*Id.* ¶¶ 5-9.)

The background of this case is detailed in Chess.com's motion to dismiss.  (*See* ECF No. 84.)  The SAC includes only three sets of allegations concerning Play Magnus.  *First*, the SAC alleges that Play Magnus posted an allegedly "defamatory meme on Twitter, which portrays Niemann as the villain from a movie and reiterates Carlsen's accusations that Niemann had to cheat in order to beat Carlsen" at the Sinquefield Cup in September 2022.  (SAC ¶ 119.)[1]



(*Id.*)  The meme depicts two characters from Marvel's *Avengers* franchise—the villain (depicted on the right) is Thanos, and the child (on the left) is his daughter, Gamora.  *See Thanos: On Screen Full Report*, Marvel, https://www.marvel.com/characters/thanos/on-screen (last visited Apr. 10, 2023); *Gamora: On Screen Full Report*, Marvel, https://www.marvel.com/characters/gamora/on-screen (last visited Apr. 10, 2023).  In the series, Thanos believes he must save the universe by

---

[1] A "meme" is "an amusing or interesting item (such as a captioned picture or video) or genre of items that is spread widely online especially through social media."  *Jackson v. Pollard,* 2022 WL 993826, at *1 n.1 (W.D. Ky. Apr. 1, 2022).

eradicating half its population, a feat he accomplishes by collecting six primeval "infinity stones," while sacrificing Gamora along the way. *Avengers: Infinity War* (Marvel 2018). Upon successfully destroying half of all life, "Thanos found himself in [the] ethereal landscape" depicted in the meme, where he sees a "childhood version of Gamora" and somberly tells her that "while he'd accomplished his goal, it had cost him everything"—including Gamora's life. *Thanos*, *supra*. This scene is about sacrifice, not lying or cheating.

*Second*, the SAC points to a statement by chess player Lawrence Trent during an interview livestreamed on chess24's[2] YouTube channel, in which Trent said, "'I am not going to reveal what I've seen' but 'I've seen things that were previously unavailable to me' and 'Magnus's side is much more credible.'" (SAC ¶ 120.)[3] From this, Niemann claims that "Play Magnus, through Lawrence Trent, falsely represented to the public that he [Trent] and Carlsen possess private and undisclosed facts indicating that Niemann cheated at the Sinquefield Cup when they do not." (*Id.*)

Trent is not a Play Magnus employee or affiliate; he appeared on the livestream as a guest "commentator." (*Id.*; *see* Shneider Decl. ¶¶ 12-14.) And the SAC omits the context of his statement, directly from the interview, which makes clear that Trent was expressing his "opinion on the validity of [Carlsen's] argument," that it was based "*not* [on] inside info" but on information "available for everybody," and that his opinion was tentative and subject to further "clarification." (Declaration of Nima H. Mohebbi ("Mohebbi Decl."), Ex. 1 at 00:23:44-00:25:33, 00:34:00-00:34:42 (emphasis added).)[4] The SAC also omits Trent's observation that Niemann "has played

---

[2] chess24 is a Play Magnus affiliate that has its own platform and YouTube channel. (*See* SAC ¶ 52; Shneider Decl. ¶ 12.)

[3] chess24, *Champions Chess Tour: Julius Baer Generation Cup | Prelims Day 2 | Tania Sachev & Peter Leko*, YouTube (Sept. 19, 2022), https://www.youtube.com/watch?v=RNngyBUH4ao (the statement quoted in the SAC occurs at 00:23:44-00:25:33).

[4] Because Trent's comments during the livestream are a central part of Niemann's defamation claim, they are "necessarily embraced by [Niemann's SAC]" and part of "the pleadings" that the Court may consider in resolving this motion. *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*,

really well" (*id.* at 00:27:56-00:29:29); and that the host of the livestream, Tania Sachdev, expressed her "hop[e] that [Niemann's] name is clear[ed]" (*id.* at 00:25:33-00:26:33).

*Third*, the SAC alleges that Play Magnus acquired various chess websites over the years (SAC ¶ 52) and that, in December 16, 2022, Play Magnus itself was acquired by Chess.com (*id.* ¶ 72).  The SAC also alleges that Carlsen, on behalf of Play Magnus, announced the Chess.com acquisition in August and December 2022.  (*Id.* ¶¶ 67-72.)

## ARGUMENT

The SAC fails to allege *any* facts plausibly demonstrating how Play Magnus—a Norwegian based-company based out of Oslo—belongs in this forum.  Should the Court look past that jurisdictional defect, the claims against Play Magnus fail on their own terms.

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER PLAY MAGNUS

Federal Rule of Civil Procedure 12(b)(2) permits dismissal for lack of personal jurisdiction. To survive a motion to dismiss under Rule 12(b)(2), Niemann must "establish[] a prima facie showing of [personal] jurisdiction" under both "the long-arm statute of the forum state and the federal Due Process Clause." *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022).  He "bears the burden to show that jurisdiction exists," and to meet that burden, he cannot just rely on empty jurisdictional allegations; rather, he "must state sufficient facts in the complaint to support a reasonable inference that [Play Magnus] may be subjected to jurisdiction in the forum state." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citation omitted).  Personal jurisdiction must be established as to "each defendant" "individually." *C. Pepper Logistics, LLC v. Lanter Delivery Sys., LLC*, 2021 WL 3725680, at *4-5 & n.9 (E.D. Mo. Aug. 23, 2021) (citations omitted); *see Walden v. Fiore*, 571 U.S. 277, 284-86 (2014).

---

951 F.3d 952, 955 (8th Cir. 2020).  For the Court's convenience, a certified transcript of Trent's commentary during the livestream is submitted with this motion.  (Mohebbi Decl. Ex. 1.)

Here, there is no personal jurisdiction as to Play Magnus under *either* the federal Due Process Clause or the Missouri long-arm statute.

### A.        The SAC Fails To Establish Jurisdiction Under The Due Process Clause.

For the exercise of personal jurisdiction to satisfy due process, the "'defendant's conduct and connection with the forum state'" must be significant enough "'that he should reasonably anticipate being haled into court there.'"  *Zazzle*, 42 F.4th at 951 (citation omitted).  Only "two types of personal jurisdiction" comport with due process: general jurisdiction and specific jurisdiction.  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017); *see also Zazzle*, 42 F.4th at 951-52.  Neither exists here.

***No General Jurisdiction***.    General jurisdiction exists only where the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).  Absent "exceptional" circumstances not present here, "a corporate defendant is 'at home'" in its "place of incorporation and its principal place of business." *Id.* (quoting *Daimler*, 571 U.S. at 137, 139 n.19); *see, e.g.*, *Antonacci v. Allergan USA, Inc.*, 2021 WL 3404023, at *3 (E.D. Mo. Aug. 4, 2021).  Play Magnus is not at home in Missouri.  It is incorporated in Norway and has its principal place of business in Oslo.  (Shneider Decl. ¶ 4.)  It owns no property in Missouri and has no legally significant connection to Missouri.  (*Id.* ¶¶ 5-9.) The SAC thus fails to establish general jurisdiction over Play Magnus in Missouri.  *See Tarasewicz v. Royal Caribbean Cruises, Ltd.*, 2015 WL 3970546, at *22-24 (S.D. Fla. June 30, 2015) (no general jurisdiction over Norwegian company).

***No Specific Jurisdiction***.  As to specific jurisdiction, the defendant must have "certain minimum contacts with the forum state," and the claims asserted against that defendant must "arise out of or relate to [those] contacts."  *Zazzle*, 42 F.4th at 952 (citation omitted).  The "defendant's

suit-related conduct must create a substantial connection with the forum." *Walden*, 571 U.S. at 284.  In particular, the defendant "'must take some act by which [he] purposefully avails [him]self of the privilege of conducting activities within the forum State,' such as directing its activities at the forum or targeting forum residents." *Zazzle*, 42 F.4th at 953 (citations omitted).  And this inquiry considers only forum contacts "related to [the plaintiff's] claims"; in other words, "'[s]pecific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state.'" *Id.* at 952 (citation omitted).

Niemann fails to identify any connection between the few allegations concerning Play Magnus and Missouri.  As for the allegedly defamatory meme posted on Twitter, the meme does not mention Missouri, Play Magnus did not post the meme from Missouri, and the only party referenced (Carlsen) does not reside in Missouri.  (*See* SAC ¶¶ 22, 119; Shneider Decl. ¶ 11.)  Nor, for that matter, does Niemann reside in Missouri.  (*See* SAC ¶ 20.)  Twitter is a global social media website, and the Eighth Circuit has held repeatedly that merely posting information on a "nationally accessible" website that is not "'uniquely or expressly aimed at [the forum state]'" does not create sufficient contacts for personal jurisdiction.  *Zazzle*, 42 F.4th at 954 (quoting *Johnson v. Arden*, 614 F.3d 785, 798 (8th Cir. 2010)).   Under that principle, courts have consistently refused to "extend[] personal jurisdiction based on a defendant's allegedly tortious postings on social media" that are "not specifically directed at the forum state." *Blessing v. Chandrasekhar*, 988 F.3d 889, 905 (6th Cir. 2021); (*see* ECF No. 87 at 8 (citing cases).)

The same is true of the comment made by Lawrence Trent on YouTube.  To begin with, Niemann fails to demonstrate how this comment can be attributed to Play Magnus. *See Walden*, 571 U.S. at 284 ("[jurisdiction] must arise out of contacts that the 'defendant *himself*' creates with the forum State.").  As Niemann alleges, Trent is a chess player who appeared as a "commentator" during the livestream (SAC ¶ 120), no different than the many third-party players that provide

independent commentary during livestreamed events hosted by Play Magnus.  (Shneider Decl. ¶¶ 12-13.)  But Niemann does not—because he cannot—allege that Play Magnus employed Trent or otherwise authorized him to speak on its behalf; Trent has no affiliation with Play Magnus other than appearing as a guest commentator.  (*See id.* ¶¶ 12-14.)  Thus, even if Trent's comments were directed at Missouri (which they are not, as explained below), "[Trent's] Missouri contacts [are not] attributable to [Play Magnus]" for purposes of personal jurisdiction. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 595 (8th Cir. 2011).

The SAC also fails to allege that Trent's comment "purposeful[ly] targeted" Missouri. *Zazzle*, 42 F.4th at 953.  Niemann does not allege that Trent resides in Missouri or made the statement while in Missouri.  (*See* SAC ¶ 120.)  Nor does he allege that the statement targeted any Missouri resident.  And although Niemann suggests in conclusory fashion that Trent's statement addressed "Niemann cheat[ing] at the Sinquefield Cup," the alleged statement itself does not target Missouri.  (*Id.*)  Furthermore, YouTube is (like Twitter) a global social media website, and because Trent's commentary on YouTube was not "uniquely or expressly aimed at Missouri," it does not create personal jurisdiction in Missouri. *Zazzle*, 42 F.4th at 954; *see, e.g.*, *Moses v. YouTube, Inc.*, 2013 WL 12095139, at *5 (W.D. Tenn. Sept. 23, 2013) ("[P]osting a video to YouTube—a website that is available internationally—does not constitute purposeful availment merely because it can be accessed by [forum] residents."); *Brown v. Dash*, 2020 WL 6806433, at *11 (D. Mass. Nov. 18, 2020) (same); *Gray v. Hudson*, 2015 WL 4488143, at *2, *6-7 (E.D. Mo. July 23, 2015) (same).

Finally, the allegations regarding Chess.com's acquisition of Play Magnus and related announcements are irrelevant.  There is nothing in them about Missouri.  Neither the acquisitions nor the announcements occurred in Missouri, and none of the companies involved is located in

Missouri.  (*See* SAC ¶¶ 22-23; Shneider Decl. ¶ 10.)  And in any event, Niemann's claims do not "arise out of or relate to" these allegations.  *Zazzle*, 42 F.4th at 952.

> **B.** **The SAC Fails Under Missouri's Long-Arm Statute.**

Because Niemann fails to allege facts demonstrating personal jurisdiction under the Due Process Clause, the Court's analysis can end there.  But Niemann also fails to satisfy Missouri's long-arm statute.  That statute authorizes personal jurisdiction over non-resident defendants for claims "arising from" "[t]he transaction of any business within th[e] state," "[t]he making of any contract within this state," or "the commission of a tortious act within th[e] state."  Mo. Rev. Stat. § 506.500.1(1)-(3).  As discussed, none of Play Magnus's alleged conduct was committed within Missouri or had any actionable consequences therein.  *See Glob. Media Grp., Inc. v. Express Tax Serv., Inc.*, 2005 WL 2452542, at *3 (E.D. Mo. Oct. 4, 2005).

## II.    NIEMANN'S STATE LAW TORT CLAIMS FAIL

Alternatively, Niemann's claims against Play Magnus under state tort law for defamation, tortious interference, and civil conspiracy should be dismissed on the merits.

> **A.** **Connecticut's Anti-SLAPP Statute Bars Niemann's Tort Claims.**

At the threshold, Niemann's tort claims are barred by Connecticut's anti-SLAPP statute, Conn. Gen. Stat. § 52-196a.  As Carlsen has explained, that statute precludes all of Niemann's tort claims.  (*See* ECF No. 82 at 6-11; ECF No. 110 at 2-9.)  Play Magnus incorporates Carlsen's arguments by reference here.

> **B.** **Niemann's Defamation Claims Fail On The Merits.**

Niemann asserts claims for "libel" (written defamation) and "slander" (oral defamation). (SAC ¶¶ 208-19.)  As to Play Magnus, the SAC purports to challenge only two allegedly defamatory statements:  (1) the meme posted on Twitter, and (2) the statement by Lawrence Trent.

As Chess.com explained, although Niemann's claims are governed by Connecticut law, the relevant elements of defamation are the same under Connecticut and Missouri law.  (ECF No.

84 at 16.)  Both states require the plaintiff to show, among other elements, that the defendant "published" a "defamatory statement" that conveys an "objective," "false" statement of fact.  *Smith v. Humane Soc'y of the U.S.*, 519 S.W.3d 789, 798-99 (Mo. 2017) (en banc); *see NetScout Sys., Inc. v. Gartner, Inc.*, 223 A.3d 37, 47-49 (Conn. 2020).  "In determining whether a statement is defamatory, 'the alleged defamatory words must be considered in context, giving them their plain and ordinarily understood meaning.'"  *Stockley v. Joyce*, 963 F.3d 809, 819 (8th Cir. 2020).  And "statements of 'opinion'"—*i.e.*, statements that do not convey "an assertion of objective facts" but instead reflect a "subjective assessment" that is "not provable as false"—"cannot be the basis of a defamation claim" as a matter of law.  *Smith*, 519 S.W.3d at 798-801; *see NetScout*, 223 A.3d at 47-48.  Additionally, when (as here) the plaintiff is a "public figure" at the time of publication, he must show that the defendant published the challenged statement with "'actual malice'"—*i.e.*, "'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Nelson Auto*, 951 F.3d at 956.

Because "each alleged defamatory statement constitutes a separate cause of action," Niemann must plead facts satisfying the necessary elements for each statement.  *Britt v. Unknown Officers*, 2019 WL 2453763, at *4 (D. Conn. June 12, 2019).  Niemann falls short of that task.

### 1.    Niemann Fails To State A Defamation Claim Based On The Meme.

As explained above, the challenged meme repurposes an *Avengers* scene in which Thanos tells his daughter Gamora that he had to sacrifice "everything" (including her life) to achieve his goal of eradicating half of the universe.  In the meme, Gamora is shown as asking, "*How did you beat Magnus Carlsen?*" and "*What did it cost you?*"  (SAC ¶ 119.)  Thanos is shown responding, respectively, "*Chess speaks for itself!*" and "*Everything!*"  (*Id.*)  According to Niemann, this innocuous meme "portrays Niemann as the villain from a movie" and "reiterates Carlsen's

9

accusation that Niemann had to cheat in order to beat Carlsen." (*Id.*)  Niemann's attempt to turn an internet meme into fodder for a defamation claim is baseless.

For starters, Niemann's claim rests on a blatant distortion of the meme itself.  The most obvious:  the meme does not mention Niemann.  "In order to be defamatory, a statement must be *clear* as to the person addressed"; a statement that "is not specific to [the plaintiff] . . . cannot be considered defamatory." *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 240 (Mo. Ct. App. 2011) (emphasis added); *accord NetScout*, 223 A.3d at 47 (plaintiff must "demonstrate" that "the defamatory statement identified the plaintiff").  In this case, the meme does not clearly identify Niemann.  And Niemann admits that he is not the only chess player to have beaten Carlsen.  (SAC ¶¶ 44, 179 n.3.)

Moreover, whatever the meme conveys, it does not convey any verifiably false fact.  Niemann's suggestion that it reflects an accusation that he "cheat[ed]" (*id.* ¶ 120) is unfounded.  Indeed, the *Avengers* scene portrayed in the meme has nothing to do with cheating.  (*See supra* at 2-3.)  Thus, even on Niemann's self-aggrandizing view that he is the "villain" in the meme (SAC ¶ 120), Niemann does not allege that the "villain" (Thanos) cheated in order to accomplish his goal, such that the meme itself could imply that *Niemann* cheated.  And, of course, merely portraying Niemann as a comic-book "villain" would at most be nonactionable hyperbole.  *See Smith*, 519 S.W.3d at 802 ("'imaginative expressions of contempt'" and "'rhetorical hyperbole'" are not actionable (brackets omitted)); *cf. Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1445, 1450 (8th Cir. 1989) (depicting FBI agent as a "villain[]" is a nonactionable "opinion").

Were the foregoing not enough, Niemann's claim fails because he is a "public figure" but failed to "plead sufficient facts to support a plausible finding of actual malice."  *Nelson Auto*, 951 F.3d at 956.  Public-figure status is assessed "at the time the [allegedly defamatory statement] was published," *Brown v. Herald Co.*, 698 F.2d 949, 951 (8th Cir. 1983), and as Chess.com has

explained, Niemann's prominence as a professional chess player leaves no doubt that he is a public figure, particularly after the attention he has received and generated following the Sinquefield Cup controversy.  (*See* ECF No. 84 at 23-25; ECF No. 112 at 10-12.)  Although Niemann fails to allege the date on which the allegedly defamatory meme was posted—which itself is grounds for dismissal[5]—the sequence of his allegations show that, by the time the meme was posted, the controversy had "go[ne] viral on the internet" and "garnered the attention of, among many others," television and media celebrities with millions of viewers and hundreds of millions of Twitter followers.  (SAC ¶¶ 91-97, 117.)   Any internet meme about Niemann at that point was undisputedly about "a public figure" and thus protected from a defamation claim absent facts demonstrating "actual malice."  *Nelson Auto*, 951 F.3d at 956.

Niemann makes no effort to allege actual malice here.  Nowhere does he allege that Play Magnus posted the meme "'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Id.* at 956.  Instead, he references the meme once, where he merely labels it "defamatory" in conclusory fashion.  (SAC ¶ 119.)  Niemann's complete "fail[ure] to plausibly allege that [Play Magnus] acted with actual malice" in posting the meme independently requires dismissal of his meme-based defamation claim.  *Nelson Auto*, 951 F.3d  at 954; *see Chastain v. Cypress Media, LLC*, 2019 WL 13203920, at *3 (W.D. Mo. July 22, 2019).

### 2.      Niemann Fails To State A Claim Based On Trent's Statement.

Niemann also points to a remark by chess player Lawrence Trent during a livestream on chess24's YouTube channel:  "'I am not going to reveal what I've seen,' but 'I've seen things that were previously unavailable to me' and 'Magnus's side is much more credible from what I have seen.'"  (SAC ¶ 120.)  From this, Niemann claims that "Play Magnus, through [Trent], falsely

---

[5] *See, e.g.*, *Kloth v. Citibank (S.D.), N.A.*, 33 F. Supp. 2d 115, 121 (D. Conn. 1998) (plaintiff must plead "when" the allegedly defamatory statement was made).

represented to the public that he and Carlen possess private and undisclosed facts indicating Niemann cheated at the Sinquefield Cup." (*Id.*)  This allegation fails for multiple reasons.

Niemann fails to allege any basis for holding *Play Magnus* liable for Trent's statement. "The law is clear that to establish a claim for defamation, [the plaintiff] must show that *the defendant* published a defamatory statement." *CSL Silicones, Inc. v. Midsun Grp. Inc.*, 301 F. Supp. 3d 328, 378-79 (D. Conn. 2018); *see Washington v. Thomas*, 778 S.W.2d 792, 796 (Mo. Ct. App. 1989) ("An essential element of the tort of defamation is that the alleged defamatory material be communicated or published *by the alleged wrongdoer*." (emphasis added)).  Applying that rule, courts have rejected defamation claims that rest on statements made by third parties. *See, e.g.*, *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1120-22 (S.D. Fla. 2021) (dismissing defamation claim against a media platform where an "independent journalist" appearing on the platform "said the allegedly defamatory words at issue"); *Howell v. Trib. Ent. Co.*, 106 F.3d 215, 221 (7th Cir. 1997) (similar); *Behr v. Weber*, 172 A.D.2d 441, 443 (N.Y. App. Div. 1991) (similar).

Here, Niemann seeks to hold Play Magnus liable for a statement made by Trent, *not Play Magnus*.  Niemann does not allege that Trent had any legally significant relationship with Play Magnus such that his impromptu, livestreamed comment can be attributed to Play Magnus.  Nor does he allege that Play Magnus played any role in dictating or preparing the statement.  Rather, Trent appeared on the livestream as a guest "commentator."  (SAC ¶ 120; *see supra* at 3-4.) Indeed, he was introduced during the livestream as a "special *guest*."  (Mohebbi Decl., Ex. 1 at 00:16:34-00:17:00 (emphasis added).)  And a screenshot posted during the livestream confirmed that he was speaking as a "preshow *guest*".  (*Id.* ¶ 3 (emphasis added).)

Regardless, Trent's statement is not actionable on its own terms.  The first portion of the statement—about "things" Trent had "seen," which he did not "reveal" and were "previously unavailable to [him]" (SAC ¶ 120)—is simply not "defamatory" because it "does not alone 'tend

12

to disgrace and degrade' [Niemann]." *Stockley*, 963 F.3d at 819.  The Eighth Circuit reached a similar conclusion in *Stockley*, where the plaintiff challenged a statement by the defendant that the defendant "uncovered 'new evidence'" that "proved [the plaintiff] was guilty of first-degree murder."  *Id.*  The Eighth Circuit held that "[t]he portion of [the] statements related to uncovering new evidence is not defamatory as a matter of law" because it does not create "any conceivable reputational injury."  *Id.*  Rather, the defamation claim necessarily rested on the assertion about what "such evidence proved"—there, the plaintiff's guilt.  *Id.*  The same is true here:  Trent's assertion that he had "seen things that were previously unavailable to [him]" (SAC ¶ 120) is not itself defamatory as a matter of law.

The remainder of the challenged statement—reflecting Trent's view that "Magnus's side is much more credible from what [he] ha[d] seen" (*id.*)—is also not actionable as a matter of law.  This is plainly "an expression of [Trent's] opinion" rather than an assertion of "'an objectively verifiable fact.'"  *Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 829 F.3d 576, 581 (8th Cir. 2016).  Even in the snippet quoted in the SAC, Trent made clear that he was assessing "credib[ility]" based on what "[he] ha[d] seen" (SAC ¶ 120), and it is well-settled that "an evaluation of credibility is essentially an opinion, 'not capable of being proven true or false,' and thus not actionable in defamation."  *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 625 (8th Cir. 2012).  And the context—which "must" be considered, *Stockley*, 963 F.3d at 819— confirms this conclusion:  Trent explicitly said that he was providing his "opinion," and he hedged his comments with words like "I believe" and "I am now very . . . on the fence."  (Mohebbi Decl., Ex. 1 at 00:23:44-00:25:33, 00:34:00-00:34:42.)  This "equivocal language" leaves no doubt that Trent's statement reflected a "non-defamatory opinion."  *Others First*, 829 F.3d at 582-83.

Niemann simply rewrites Trent's statement in the SAC, claiming that Trent "falsely represented that he and Carlsen possess private and undisclosed facts indicating that Niemann

cheated at the Sinquefield Cup."  (SAC ¶ 120.)  Even in the portions quoted in the SAC, Trent does not say that.  But more troublingly, the SAC omits that Trent said precisely the opposite, making clear that his "opinion" was "*not* [based on] inside info," but on his review of information "available for everyone."  (Mohebbi Decl., Ex. 1 at 00:34:00-00:34:42 (emphasis added).) Niemann cannot contrive a defamation claim by including only portions of a statement while also omitting context that explicitly refutes his claim.

Finally, Niemann once again makes no attempt to allege "actual malice."  *Nelson Auto*, 951 F.3d at 956.  Niemann merely declares that the statement by Trent is "false[]" and leaves it at that.  (SAC ¶ 120.)  This is insufficient.  Moreover, even if Niemann had alleged that *Trent* made the statement with actual malice, Trent's actual malice could not be "imputed" to Play Magnus as a matter of law.  *Price*, 881 F.2d at 1446.  To sustain this claim, Niemann would have to allege facts demonstrating that Play Magnus "independent[ly]" acted with actual malice.  *Id.*  Because he has failed to allege such facts, his defamation claim fails.

### C.   Niemann's Interference And Conspiracy Claims Fail.

Niemann's tortious interference claim (SAC ¶¶ 234-40) and civil conspiracy claim (*id.* ¶¶ 241-45) are similarly baseless.  (*See* ECF No. 84 at 26-29; ECF No. 112 at 12-14.)  Niemann alleges that "Defendants" (including Play Magnus) tortiously interfered with (1) a one-off match he arranged against Vincent Keymer, (2) his negotiations to participate in the Tata Steel Chess Tournament, and (3) his invitation to participate in Chess.com's Global Championship.  But the SAC alleges nothing suggesting that Play Magnus even knew about these so-called "business expectancies," let alone that Play Magnus intentionally interfered with them.  At most, the SAC seems to merely assume that all "Defendants" (including Play Magnus) knew of Niemann's business expectancies and sabotaged them by virtue of being a "member[] of the Competitive Chess Market."  (SAC ¶ 236.)  This conclusory assertion is plainly insufficient.

14

Niemann's standalone claim for civil conspiracy also fails.  It fails because it is derivative of his other failed claims, and it fails because Niemann does not plausibly allege any agreement among Defendants to commit an unlawful act.  (*See* ECF No. 84 at 28-29; ECF No. 112 at 14.) Niemann's civil conspiracy claim must be dismissed.

## III.   <u>NIEMANN'S ANTITRUST CLAIMS SHOULD BE DISMISSED</u>

Finally, Niemann's antitrust claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, are frivolous.  (*See* SAC ¶¶ 220-33.)  As Chess.com has explained, Niemann failed to allege antitrust injury and failed to allege facts supporting the elements of his claims.  (ECF No. 84 at 6-15; ECF No. 112 at 1-8.)  Play Magnus incorporates those arguments by reference here.

The inconsistent pleadings Niemann has filed since commencing this action confirm just how meritless his antitrust claims against Play Magnus are.  In his first two complaints, Niemann supported his Section 1 antitrust claim by asserting that Play Magnus had banned him from its tournaments.  (ECF No. 1, ¶ 15; ECF No. 20, ¶ 15.)  This allegation was ***false***.  Indeed, Niemann has continued to play in events sponsored by Play Magnus affiliates.  (*See* Shneider Decl. ¶ 15.) After undersigned counsel informed Niemann's counsel of the false allegation, Niemann removed it from the SAC.  But rather than dismiss his Section 1 claim against Play Magnus, Niemann instead *added* a Section 2 attempted-monopolization claim against "[a]ll Defendants" (including Play Magnus).  And despite implicitly recognizing that he has not, in fact, been banned from Play Magnus tournaments, Niemann continues to insist "Defendants have . . . blacklist[ed] him from the [chess] profession."  (SAC ¶ 1; *see id.* ¶ 200.)  The Court should dismiss his claims.

## <u>CONCLUSION</u>

For the foregoing reasons, the claims against Play Magnus should be dismissed, and Play Magnus should be awarded fees and costs under Connecticut's anti-SLAPP statute.

DATED:  April 11, 2023

/s/ Nima H. Mohebbi
Nima H. Mohebbi (# 275453CA)
Sarah F. Mitchell (# 308467CA)
Michael A. Hale (# 319056CA)
**LATHAM & WATKINS LLP**
355 S. Grand Ave., Suite 100
Los Angeles, CA 90071
Tel: (213) 485-1234
*nima.mohebbi@lw.com*
*sarah.mitchell@lw.com*
*michael.hale@lw.com*


/s/ Jeffrey B. Jensen
Jeffrey B. Jensen (# 46745MO)
Kate Ledden (# 66026MO)
**HUSCH BLACKWELL LLP**
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Tel: (314) 480 1500
*jeff.jensen@huschblackwell.com*
*kate.ledden@huschblackwell.com*

Respectfully submitted,

/s/ Jamie L. Wine
Jamie L. Wine (# 4529251NY)
Blake E. Stafford (# 888324775DC)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
*jamie.wine@lw.com*
*blake.stafford@lw.com*


Derek Teeter (# 59031MO)
Spencer Tolson (# 74467MO)
**HUSCH BLACKWELL LLP**
4801 Main, Suite 1000
Kansas City, MO 64112
Tel: (816) 983-8000
*derek.teeter@huschblackwell.com*
*spencer.tolson@huschblackwell.com*


*Counsel for Defendant Play Magnus AS d/b/a Play Magnus Group*

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 11, 2023, the foregoing document was

served on all counsel of record by ECF.

DATED:          April 11, 2023          */s/ Nima H. Mohebbi*
                                        Nima H. Mohebbi (# 275453CA)
                                        Attorney for Defendant Play Magnus
                                        AS d/b/a Play Magnus Group
                                        **LATHAM & WATKINS LLP**
                                        355 S. Grand Ave., Suite 100
                                        Los Angeles, CA 90071
                                        Tel: (213) 485-1234