# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

HANS MOKE NIEMANN,

        Plaintiff,

    v.

SVEN MAGNUS ØEN CARLSEN A/K/A
MAGNUS CARLSEN, PLAY MAGNUS AS
D/B/A PLAY MAGNUS GROUP,
CHESS.COM, LLC, DANIEL RENSCH A/K/A
"RENSCH" RENSCH, AND HIKARU
NAKAMURA,

        Defendants.

Case No. 4:22-cv-01110-AGF

Hon. Audrey G. Fleissig

## REPLY IN SUPPORT OF DEFENDANT PLAY MAGNUS AS D/B/A PLAY MAGNUS GROUP'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Nima H. Mohebbi (# 275453CA)
Sarah F. Mitchell (# 308467CA)
Michael A. Hale (# 319056CA)
**LATHAM & WATKINS LLP**
355 S. Grand Ave., Suite 100
Los Angeles, CA 90071
Tel: (213) 485-1234
*nima.mohebbi@lw.com*
*sarah.mitchell@lw.com*
*michael.hale@lw.com*

Jeffrey B. Jensen (# 46745MO)
Kate Ledden (# 66026MO)
**HUSCH BLACKWELL LLP**
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Tel: (314) 480 1500
*jeff.jensen@huschblackwell.com*
*kate.ledden@huschblackwell.com*

Jamie L. Wine (# 4529251NY)
Blake E. Stafford (# 888324775DC)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
*jamie.wine@lw.com*
*blake.stafford@lw.com*

Derek Teeter (# 59031MO)
Spencer Tolson (# 74467MO)
**HUSCH BLACKWELL LLP**
4801 Main, Suite 1000
Kansas City, MO 64112
Tel: (816) 983-8000
*derek.teeter@huschblackwell.com*
*spencer.tolson@huschblackwell.com*

*Counsel for Defendant Play Magnus AS d/b/a Play Magnus Group*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ii

INTRODUCTION .........................................................................................1

ARGUMENT ..............................................................................................2

I.      THE COURT LACKS PERSONAL JURISDICTION OVER PLAY MAGNUS..............2

        A.      The Opposition Fails To Overcome The SAC's Clear Lack Of Personal
                Jurisdiction Under The Due Process Clause. ........................................2

        B.      Niemann Does Not Address The Missouri Long-Arm Statute,
                Independently Dooming His SAC. ....................................................7

II.     NIEMANN'S STATE LAW TORT CLAIMS FAIL. ........................................8

        A.      Niemann's Opposition Does Not Save His Deficient Defamation Claims..............8

                1.      The Meme Is Not Defamatory As A Matter Of Law.................................8

                2.      Trent's Statement Does Not Support Niemann's Defamation
                        Claim. ........................................................................12

        B.      Niemann's Intentional Interference And Conspiracy Claims Fail........................14

III.    THE OPPOSITION CONFIRMS THAT NIEMANN'S ANTITRUST CLAIMS
        MUST BE DISMISSED. ..............................................................14

CONCLUSION...........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Beu v. City of Vineland,*
  2021 WL 856882 (D.N.J. Mar. 8, 2021)................................................................................10

*Bigfoot on the Strip, LLC v. Winchester,*
  2018 WL 3676962 (W.D. Mo. Aug. 2, 2018).........................................................................5

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.,*
  582 U.S. 255 (2017)................................................................................................................3

*Bros. & Sisters in Christ, LLC v. Zazzle, Inc.,*
  42 F.4th 948 (8th Cir. 2022) .........................................................................................2, 3, 4, 8

*C. Pepper Logistics, LLC v. Lanter Delivery Sys., LLC,*
  2021 WL 3725680 (E.D. Mo. Aug. 23, 2021) .......................................................................5

*Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.,*
  354 S.W.3d 234 (Mo. Ct. App. 2011) ...................................................................................8

*Cuba's United Ready Mix, Inc. v. Bock Concrete Founds., Inc.,*
  785 S.W.2d 649 (Mo. Ct. App. 1990)...................................................................................13

*Dairy Farmers of Am., Inc., v. Bassett & Walker Int'l, Inc.,*
  702 F.3d 472 (8th Cir. 2012) .............................................................................................7, 8

*DERMAdoctor, LLC v. Arminak Sols., LLC,*
  2022 WL 16709708 (W.D. Mo. June 28, 2022) ...............................................................6, 12

*Dotzler v. Perot,*
  899 F. Supp. 416 (E.D. Mo. 1995), *aff'd*, 124 F.3d 207 (8th Cir. 1997)...............................12

*Eagle Express Lines, Inc. v. Nyazee,*
  2018 WL 6445623 (E.D. Mo. Dec. 10, 2018) ...........................................................1, 2, 5, 9

*Godfrey v. Clayco Inc.,*
  2021 WL 2915068 (E.D. Mo. July 12, 2021) ........................................................................2

*Hampsey v. Nacello,*
  2007 WL 9805531 (E.D. Mo. Jan. 31, 2007) ........................................................................12

*Johnson v. Arden,*
  614 F.3d 785 (8th Cir. 2010) ...............................................................................................4

*Johnson v. Gawker Media, LLC*,
  2016 WL 193390 (E.D. Mo. Jan. 15, 2016) ......................................................4

*Kaliannan v. Hoong Liang*,
  2 F.4th 727 (8th Cir. 2021) ............................................................................5

*Kowalski v. Greski*,
  2009 WL 1218666 (Conn. Super. Ct. Apr. 9, 2009)..........................................9

*Neelon v. Blair Krueger & Desert Eagle Res., Ltd.*,
  2013 WL 2384318 (D. Mass. May 29, 2013) ...................................................5

*Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*,
  951 F.3d 952 (8th Cir. 2020) .......................................................................11

*Nunes v. Lizza*,
  12 F.4th 890 (8th Cir. 2021) .........................................................................10

*Nunes v. WP Co. LLC*,
  513 F. Supp. 3d 1 (D.D.C. 2020) ..................................................................11

*Smith v. Auto Club Servs., Inc.*,
  2017 WL 4857431 (D. Minn. Oct. 25, 2017) ...................................................8

*Smith v. Humane Soc'y of the U.S.*,
  519 S.W.3d 789 (Mo. 2017) .........................................................................10

*Smith v. Truman Rd. Dev., LLC*,
  414 F. Supp. 3d 1205 (W.D. Mo. 2019) ..........................................................5

*Stockley v. Joyce*,
  963 F.3d 809 (8th Cir. 2020) .......................................................................13

*Tholen v. Assist Am., Inc.*,
  970 F.3d 979 (8th Cir. 2020) .........................................................................9

*Turntine v. Peterson*,
  959 F.3d 873 (8th Cir. 2020) .......................................................................13

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
  646 F.3d 589 (8th Cir. 2011) .....................................................................5, 7

*Vitti v. Vockrodt*,
  2016 WL 4487884 (W.D. Mo. Aug. 24, 2016).................................................13

*Walden v. Fiore*,
  571 U.S. 277 (2014)......................................................................................4

*In re Westfall*,
   808 S.W.2d 829 (Mo. 1991) ...............................................................................................14

## STATUTES

Mo. Rev. Stat. § 506.500.1(3)................................................................................................8

**INTRODUCTION**

Plaintiff Hans Niemann's opposition ("Opp.") (ECF No. 135) fails to save the claims in his Second Amended Complaint ("SAC") against Play Magnus.  Niemann has filed three complaints since he initiated this action, but not one demonstrates any meaningful connection between Play Magnus and this dispute.  Niemann largely tries to paper over the SAC's deficiencies by filling his opposition with assertions that are nowhere to be found in the SAC.  It is black-letter law that "a plaintiff may not add new factual allegations in an opposition brief" that are "not contained in the complaint"—much less in prior iterations of it.  *Eagle Express Lines, Inc. v. Nyazee*, 2018 WL 6445623, at *3 (E.D. Mo. Dec. 10, 2018).  Niemann's reaches beyond the SAC's allegations are improper and cannot stave off the conclusion that it must be dismissed.

To start, there is no personal jurisdiction.  As Play Magnus demonstrated in its motion, it is a Norwegian entity with no Missouri connections related to the claims in this case.  Relying almost entirely on assertions outside the SAC, Niemann attempts to cobble together a jurisdictional theory based on conduct by Play Magnus that has nothing to do with Missouri and/or his claims.  He also floats an "agency" theory attempting to impute to Play Magnus purported Missouri contacts of Defendant Magnus Carlsen and chess player Lawrence Trent.  But Niemann has failed to allege an agency relationship or any facts establishing the key predicate to such a relationship—that is, an *act* by the supposed principal (Play Magnus) *authorizing* the supposed agents (Carlsen and Trent) to act on its behalf.  Niemann's agency theory does not help him establish this Court's jurisdiction.

Alternatively, the opposition fails to save Niemann's claims on the merits.  The only unique claims against Play Magnus are defamation claims, which rest on (a) a meme depicting an *Avengers* villain and (b) a cherry-picked comment by Trent during a livestream.  In opposition, Niemann continues his failure to explain how these statements are actionable.  And more

1

importantly, he fails to come anywhere close to pleading actual malice.  Instead, his opposition weaves an implausible conspiracy-driven narrative unsupported by the allegations in the SAC.  Niemann cannot make a federal case out of his displeasure with others' opinions about his alleged interactions with Magnus Carlsen.  The Court should dismiss all claims against Play Magnus.

## ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER PLAY MAGNUS.

For this Court to sustain claims against Play Magnus, Niemann bears the burden of alleging facts establishing personal jurisdiction under both the federal Due Process Clause and the Missouri long-arm statute.  *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022).  With his opposition now in hand, it is clear he has failed to do so.

### A.    The Opposition Fails To Overcome The SAC's Clear Lack Of Personal Jurisdiction Under The Due Process Clause.

First, Niemann cannot establish either general or specific jurisdiction.  (Mot. 5-8.)  He does not dispute that general jurisdiction is lacking.  For specific jurisdiction, the complaint must demonstrate that Play Magnus has "certain minimum contacts with [Missouri]," and that the claims asserted against Play Magnus "arise out of or relate to [those] contacts."  *Zazzle*, 42 F.4th at 952 (citation omitted).  The complaint falls far short of making that showing, and Niemann's attempts to demonstrate otherwise in his opposition are unavailing.

His lead argument is based on Play Magnus's general "commercial activities in Missouri." (Opp. 4.)  This argument rests entirely on assertions that are not in the SAC, and thus fails for that reason alone.  *See Eagle Express*, 2018 WL 6445623, at *3; *Godfrey v. Clayco Inc.*, 2021 WL 2915068, at *3 n.3 (E.D. Mo. July 12, 2021).  In any event, general contacts with Missouri are irrelevant to the specific-jurisdiction inquiry because they have no connection to Niemann's claims

against Play Magnus.  Controlling precedent makes clear that "in assessing specific jurisdiction," courts "look *only* to [the defendant's] contacts with Missouri *related to [the plaintiff's] claims*." *Zazzle*, 42 F.4th at 952 (emphasis added).  That is because "[s]pecific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state," and unless the defendant has sufficient litigation-specific contacts with the forum, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Id.* (citations omitted); *see Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 264-65 (2017) ("forum contacts that are unrelated to" the "specific claims at issue" are not "relevant" for specific jurisdiction).

Ignoring this black-letter law, Niemann recites various Missouri connections that have nothing to do with this case, such as chess24's "broadcasts" of various "tournaments in Missouri" and an agreement "with FIDE for a Chessable sponsorship."  (Opp. 4.)  These are precisely the kind of "unconnected activities in the State" that—"regardless of the[ir] extent"—have no bearing on specific jurisdiction.  *Zazzle*, 42 F.4th at 952 (quoting *Bristol-Myers*, 582 U.S. at 264); *see id.* at 952-53 (rejecting request to "consider *all* of [the defendant's] contacts with Missouri, even those unrelated to the [claims at issue]," and considering instead only "suit-related contact with Missouri").  The same is true of chess24's live broadcast of the Sinquefield Cup and Play Magnus's "report[ing]" of the Sinquefield Cup on its blog.  (Opp. 4.)  **Niemann's claims against Play Magnus simply do not arise from any of these alleged activities**.  He does not claim otherwise.

Having thrown the kitchen sink, Niemann finally turns to the alleged conduct in the SAC.  Here, his argument runs afoul of another black-letter principle of specific jurisdiction:  The suit-related conduct must reflect "purposeful, targeted action towards" the "forum or [its] residents."  *Zazzle*, 42 F.4th at 953.  That standard is not satisfied here, as none of the conduct by Play Magnus alleged in the SAC—*e.g.*, the meme posted on Play Magnus's Twitter page (SAC ¶ 119) and the

globally broadcasted announcements of the merger with Chess.com (*id.* ¶¶ 67-69, 72)—purposefully targeted Missouri or its residents.  (Mot. 5-8.)  Rather than attempting to show otherwise, Niemann vaguely suggests that this Court may exercise personal jurisdiction because these actions had "actionable consequences in Missouri" insofar as they allegedly "injured" his "reputation" in Missouri.  (Opp. 6.)  This argument is expressly foreclosed by Supreme Court and Eighth Circuit precedent stressing that, for purposes of specific jurisdiction, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Zazzle*, 42 F.4th at 954 (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)).  Thus, whether the alleged conduct had "consequences" in Missouri—which it did not in any event—is manifestly "insufficient."  *Id.*

Also insufficient is Niemann's suggestion that this case "involve[s] communications directed at actions that occurred in the forum state."  (Opp. 6.)  None of Play Magnus's alleged "communications" has anything to do with Missouri.  But even so, merely discussing events that occurred in Missouri would not create the meaningful forum connection necessary to support personal jurisdiction.  *See, e.g.*, *Johnson v. Arden*, 614 F.3d 785, 796-97 (8th Cir. 2010) (holding that "allegedly defamatory statement[s]" on a national website about "a 'kitten mill' in Unionville, Missouri" did not support personal jurisdiction because the "statements were aimed at the [plaintiffs]" themselves and did not "specifically target[] Missouri"); *Johnson v. Gawker Media, LLC*, 2016 WL 193390, at *6, 8-9 (E.D. Mo. Jan. 15, 2016) (plaintiff failed to establish personal jurisdiction because "publishing [the] allegedly defamatory articles" concerning "the killing of Michael Brown, Jr. in Ferguson, Missouri" on a global website did not constitute meaningful "activity [that was] expressly targeted at or directed to Missouri").[1]

---

[1] The opposition's cases are readily distinguishable because they involved substantial *in*-forum, litigation-specific conduct by the defendant, which was expressly directed at the forum state or its

Unable to show any connection to Missouri, Niemann resorts to contacts with others. He first attempts to rely on Defendant Carlsen's purported contacts with Missouri. (Opp. 4-5.) But as Niemann concedes, personal jurisdiction must be established as to "each defendant[] . . . individually."[2] (*Id.* at 5 (citation omitted)); *see, e.g.*, *C. Pepper Logistics, LLC v. Lanter Delivery Sys., LLC*, 2021 WL 3725680, at *5 n.9 (E.D. Mo. Aug. 23, 2021). Realizing this, he attempts to impute Carlsen's contacts to Play Magnus under an "agency" theory. (Opp. 5-6.)

This effort fails on many levels. To establish personal jurisdiction over a defendant based on the conduct of an agent, the plaintiff must plead facts "showing the existence of an actual agency relationship." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 595-96 (8th Cir. 2011). But here, Niemann's agency theory is divorced from the SAC entirely. Niemann does not allege anywhere that Carlsen acted as Play Magnus's "agent"—indeed, *none* of the 251 paragraphs of allegations in the SAC even uses the word "agent" or "agency." The most Niemann alleges is that Carlsen co-founded Play Magnus. (SAC ¶¶ 4, 22.) And while Niemann now proclaims in his opposition that Carlsen "holds a unique role" in Play Magnus as "a major shareholder, content creator, and 'top global ambassador'" and "'has special input on all major decisions'" (Opp. 2, 4-5), none of this is contained in the SAC. For this reason alone, Niemann's agency theory fails. *See Eagle Express*, 2018 WL 6445623, at *3.[3]

---

residents. *See Kaliannan v. Hoong Liang*, 2 F.4th 727, 733-34 (8th Cir. 2021) (defendants actively recruited investors to purchase securities in North Dakota real estate, brokered the sale of North Dakota securities, communicated extensively with North Dakota entities, and traveled to North Dakota to take pictures and video of property for marketing); *Smith v. Truman Rd. Dev., LLC*, 414 F. Supp. 3d 1205, 1217-18 (W.D. Mo. 2019) (corporate defendant registered to do business in Missouri and operated from there); *Bigfoot on the Strip, LLC v. Winchester*, 2018 WL 3676962, at *3-4 (W.D. Mo. Aug. 2, 2018) (defendant published defamatory review about plaintiff's Missouri-based store after entering Missouri and visiting the store in person); *Neelon v. Blair Krueger & Desert Eagle Res., Ltd.*, 2013 WL 2384318, *6-7 (D. Mass. May 29, 2013) (defendants threatened to report plaintiff's unlicensed practice of law to the Massachusetts Bar Association).

[2] Similarly, Play Magnus's supposed "inextricable ties to Chess.com" (Opp. 5) are irrelevant.

[3] Nor does Niemann allege in the SAC that "Carlsen represent[ed] Play Magnus in Missouri by regularly competing in and commentating on chess tournaments there." (Opp. 4-5.) Even if he

Even if Niemann had included these allegations in the SAC (which he did not), they cannot help him to establish personal jurisdiction because the new allegations do not actually plead the existence of any agency relationship. To plead an agency relationship, a plaintiff must allege that the principal vested the agent with actual or apparent authority to act on its behalf. *DERMAdoctor, LLC v. Arminak Sols., LLC*, 2022 WL 16709708, at *3 (W.D. Mo. June 28, 2022). An agent has "actual authority" when the "principal either expressly or impliedly empowers the agent to act on their behalf," whereas an agent has "apparent authority" when the "principal, through its acts or representations, leads a third party to believe the agent has authority to act for the principal." *Id.* The critical point is that the authority can only arise "from the acts of the principal, ***not the alleged agent***." *Id.* (emphasis added) (citation omitted).

Here, none of the allegations in the SAC or the new assertions in Niemann's opposition suggests that Play Magnus, the supposed principal, vested Carlsen, the supposed agent, with authority to act on Play Magnus's behalf while in Missouri. Nor does Niemann claim that Play Magnus led third parties to believe that Carlsen was in fact acting on behalf of Play Magnus while in Missouri. All Niemann can muster is his unalleged and conclusory assertion that Carlsen held an important "role" at Play Magnus and that Play Magnus "cannot separate itself from Carlsen's actions in Missouri." (Opp. 2, 5.) None of these assertions speaks to any act by ***Play Magnus*** either expressly or implicitly "empower[ing]" Carlsen to act on its behalf. *DERMAdoctor*, 2022 WL 16709708, at *3.

If anything, what Niemann does allege in the SAC makes clear that Carlsen was *not* acting on behalf of Play Magnus while in Missouri. Carlsen participated in the Sinquefield Cup as an individual competitor. (SAC ¶¶ 74-76.) And the SAC alleges that Carlsen's participation in the

---

had, these general contacts with Missouri are irrelevant to the specific-jurisdiction inquiry because they have no connection to Niemann's claims against Play Magnus.

Sinquefield Cup occurred because Carlsen personally aspired to "achiev[e] a 2900 FIDE performance rating," "break[] his own world-record unbeaten streak in FIDE-sanctioned events," and solidify his position as the "King of Chess."  (*Id.* ¶¶ 7-8.)  Ultimately, Niemann's newly-minted agency theory is legally and factually baseless.

The same conclusion applies to Niemann's attempt to manufacture an agency relationship with Lawrence Trent.  (Opp. 7.)  The SAC merely alleges that Trent was a "commentator" on a chess24 livestream.  (SAC ¶ 120.)  While Niemann asserts in his opposition that Trent acted as Play Magnus's agent by "hosting a Play Magnus livestream" (Opp. 7), that is not alleged in the SAC.  Trent instead appeared on the livestream as a "special guest"; the livestream was hosted by Tania Sachdev.  (Mohebbi Decl., Ex. 1 at 00:16:34-00:17:00.)  And while Niemann tries to blame Play Magnus for not "disclos[ing] whether it compensates Trent" (Opp. 7), it is *Niemann's* burden to adequately allege an agency relationship.  *Viasystems*, 646 F.3d at 596.  The bottom line is that, as with Carlsen, Niemann fails to allege any acts by Play Magnus vesting Trent with actual or apparent authority to act on behalf of Play Magnus, such that Trent's conduct could support the exercise of personal jurisdiction over Play Magnus.  (Mot. 6-7.)[4]

**B.**      **Niemann Does Not Address The Missouri Long-Arm Statute, Independently Dooming His SAC.**

Niemann likewise fails to establish jurisdiction under Missouri's long-arm statute.  (Mot. 8.)  He does not argue otherwise; instead, he mentions the long-arm statute once in passing and conflates it with the due process analysis.  (Opp. 3.)  The long-arm statute extends to the limits of the Due Process Clause, but only for acts within its enumerated categories.  *See Dairy Farmers of Am., Inc., v. Bassett &Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012).  Thus, the long-arm

---

[4] Because Niemann fails to allege any facts suggesting an agency relationship, he cannot avoid dismissal by asserting that this is an "issue of fact."  (Opp. 7); *see Viasystems*, 646 F.3d at 598.

statute must be separately satisfied for this Court to exercise personal jurisdiction. *See, e.g.*, *Zazzle*, 42 F.4th at 951 ("[T]he existence of personal jurisdiction depends on the long-arm statute of the forum state *and* the federal Due Process Clause." (emphasis added)); *Dairy Farmers*, 702 F.3d at 475-76 (stressing that jurisdiction under the long-arm statute must be "separately" established). By failing to address the long-arm statute, Niemann has waived his ability to satisfy it. *See Smith v. Auto Club Servs., Inc.*, 2017 WL 4857431, at *2 (D. Minn. Oct. 25, 2017) ("Failure to respond to an argument in response to a motion to dismiss 'amounts to a waiver[.]'").

Moreover, Play Magnus's contacts with Missouri do not fall within the only relevant provision of the long-arm statute, which provides jurisdiction for "[t]he commission of a tortious act within th[e] state." Mo. Rev. Stat. § 506.500.1(3).  That provision requires that the tort be physically committed within Missouri or have actionable consequences therein.  (*See* Mot. 8.)  As explained in Play Magnus's motion and above, the SAC's allegations do not satisfy that requirement, and thus are insufficient to confer jurisdiction under the long-arm statute.

## II.   NIEMANN'S STATE LAW TORT CLAIMS FAIL.

### A.   Niemann's Opposition Does Not Save His Deficient Defamation Claims.

Niemann's defamation claims against Play Magnus are based on only two statements:  (1) a meme contained in a deleted Twitter post; and (2) a statement by Lawrence Trent during a livestream.  Neither statement suffices to state a claim for defamation against Play Magnus.

#### 1.   The Meme Is Not Defamatory As A Matter Of Law.

Niemann's attempt to turn an *Avengers*-inspired meme about beating Magnus Carlsen into fodder for defamation liability is unavailing for several reasons.

*First*, as Niemann concedes, "general statements" that are "not specific to the plaintiff" are not actionable.  (Opp. 12 (citing *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 239-40 (Mo. Ct. App. 2011)).)  That is fatal here, as the meme is

8

not specific to Niemann—it does not mention Niemann by name, and the universe of players that have beaten Carlsen is not limited to Niemann. (Mot. 10.)[5] Niemann does not contend otherwise. Instead, he strings together a theory that the meme is implicitly about him, claiming that the phrase "Chess speaks for itself" in the meme is associated with Niemann as a matter of "'chess folklore,'" and that the Twitter post has a hyperlink that redirects to a blog post by Play Magnus that mentions Niemann's Sinquefield Cup performance. (Opp. 12.) Neither of these assertions is contained in the SAC, and Niemann does not pretend otherwise. Once again, Niemann cannot overcome his pleading deficiencies (and sandbag Play Magnus) by conjuring new factual assertions in an opposition brief. *See Eagle Express*, 2018 WL 6445623, at *3.[6]

*Second*, even were the meme about Niemann, it does not convey any verifiably false fact that could support a defamation claim. (Mot. 10.) Niemann seems to take issue with him being portrayed "as the villain, as opposed to the hero," which connotes that he "committed a nefarious act" and "sacrificed his morals and integrity, as opposed to the lofty sacrifices of a hero." (Opp. 11.) This is nonsense. Portraying someone as a villain rather than a hero is not an objectively false statement of fact. (Mot. 10.) It is, at most, a "negative connotation or generalized opinion," which Niemann concedes is not actionable. (Opp. 13); *see, e.g., Kowalski v. Greski*, 2009 WL 1218666, at *1 (Conn. Super. Ct. Apr. 9, 2009) (calling someone a "villain" is not actionable);

---

[5] That sets this case apart from *Tholen v. Assist Am., Inc.*, 970 F.3d 979, 983-84 (8th Cir. 2020) (cited at Opp. 12), which held, under Minnesota law, that the plaintiff did not need to be specifically named in the defamatory statement given the "rare factual scenario experienced and the replication of those details" in the statement, which "limited" the "universe of identifiable subjects who fit all of these unique facts" to the plaintiff.

[6] Although the Court need not consider it, the blog post that Niemann debuts in his opposition (at 10 n.11) provides an extensive history of scandals in chess over the years that have nothing to do with Niemann. And while the post also discusses the Sinquefield Cup, it goes out of its way *not* to describe Niemann as a "cheat[er]" (Opp. 10), but to instead objectively note that, "so far, there have been no direct accusations against [Niemann] or evidence presented" that he cheated at the Cup. Peter Zhdanov, *The Biggest Cheating Scandals in Chess*, PLAY MAGNUS (Sept. 7, 2022), https://ibb.co/Z22byY9.

*Smith v. Humane Soc'y of the U.S.*, 519 S.W.3d 789, 802 (Mo. 2017) (en banc) ("'imaginative expressions of contempt'" and "'rhetorical hyperbole'" are not actionable (brackets omitted)). Thus, no matter how desperately Niemann wants to be depicted as a hero rather than a villain, he cannot turn that desire into a defamation claim.[7]

Niemann also claims that Play Magnus "implie[d]" that "Niemann cheated against Carlsen at the Sinquefield Cup." (Opp. 11.) But as Play Magnus explained, the *Avengers* scene in the meme has nothing to do with cheating. (Mot. 2-3, 10.) Niemann does not disagree. Instead, he recharacterizes his claim so that it extends beyond the "defamatory meme" (SAC ¶ 119) to encompass the *entire* Twitter post, which he now labels the "Defamatory Tweet." (Opp. 10.) And having broadened his claim, he now complains that the "Defamatory Tweet" is "captioned 'outrageous *cheating* scandals in chess.'" (*Id.* at 12.) But even setting aside Niemann's improper departure from the SAC's focus on the meme—and not the Tweet—nothing in this caption is actionable either. Indeed, like the meme itself, the Tweet does not mention Niemann; rather, it suggests taking a "trip down the memory lane" to "relive the most outrageous cheating *scandals*"—plural—"in chess." (SAC ¶ 119 (emphasis added).) As Niemann's own complaint indicates, this is at most a reference to "Chess Cheating *History*" over the years (*id.* (emphasis added))—not a statement about Niemann or even the Sinquefield Cup game with Carlsen.

*Third*, and perhaps most glaringly, Niemann has failed to allege that Play Magnus posted this allegedly defamatory meme with actual malice—*i.e.*, knowledge of, or reckless disregard for,

---

[7] Niemann's other cases are also far afield. In *Nunes v. Lizza*, 12 F.4th 890, 896-97 (8th Cir. 2021), the court, applying Iowa law, noted that the article identified the plaintiff and explicitly discussed the plaintiff's purported conspiracy. In *Beu v. City of Vineland*, 2021 WL 856882, at *4-5 (D.N.J. Mar. 8, 2021), the court, applying New Jersey law, noted that the meme at issue identified the plaintiff and included language indicating the plaintiff was a pedophile or rapist, even though the government had already found those allegations unfounded and unsubstantiated. Nothing like that is alleged here.

its falsity. (Mot. 10-11.)[8]  That failure is hardly surprising, given that the sole paragraph in the

SAC mentioning this meme largely just reproduces it without meaningful elaboration. (SAC

¶ 119.)  Faced with this pleading deficiency, Niemann tries to piece together a generalized theory

of "actual malice" with points from the SAC that have zero relationship to actual malice. (Opp.

13-14.)  Taking his points in turn:

- Niemann claims that he was a Play Magnus "ambassador" "prior to the Sinquefield Cup." (*Id.* at 13.)  This is irrelevant given the alleged controversy arose *after* the Sinquefield Cup.

- Niemann alleges certain "experts" now believe that "there was no basis for Carlsen's cheating accusations." (*Id.*)  This assertion is not even about Play Magnus's alleged statement.  And, at best, it reflects a hindsight view of the statement's accuracy; it does not demonstrate knowledge of falsity *when* Play Magnus posted the meme on Twitter. (*See* ECF No. 112 at 12 (Chess.com rebutting similar argument).)

- Niemann claims that Play Magnus was "digging into Niemann's past to find information to be used against him." (Opp. 13.)  Whatever this means, it has nothing to do with Play Magnus's *knowledge* of falsity with respect to the Twitter meme.

- Niemann claims that Play Magnus had "financial ties" and "motives" to defame him. (*Id.*)  This is insufficient as a matter of law.  *See, e.g.*, *Nunes v. WP Co. LLC*, 513 F. Supp. 3d 1, 8 (D.D.C. 2020) ("[C]aselaw resoundingly rejects the proposition that a motive to disparage someone is evidence of actual malice.").

In sum, this string of allegations cannot sustain a defamation claim.[9]  Realizing this,

Niemann asks the Court to bypass his pleading failure, insisting that actual malice is a "question

of fact" that "cannot be resolved on a motion to dismiss." (Opp. 14.)  Wrong again.  The Eighth

Circuit has made clear that the failure to adequately allege facts demonstrating actual malice

warrants dismissal. *See Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958-

---

[8] Contrary to Niemann's unsupported suggestion (Opp. 8), he is a public figure who must demonstrate actual malice.  Indeed, he was certainly a public figure by the time the meme was posted on Twitter. (Mot. 10-11.)

[9] This case is not like the cases cited by Niemann, as he does not allege facts showing that Play Magnus was "informed of [the] falsity" of the meme before posting it, or that Play Magnus posted this meme after deliberately "avoid[ing] facts" confirming its falsity. (Opp. 13-14.)

59 (8th Cir. 2020).  The First Amendment requires such a result, and that is the conclusion the Court should reach here.

### 2.     Trent's Statement Does Not Support Niemann's Defamation Claim.

Niemann also fails to support his defamation claim that rests on the (misleadingly) excerpted statement from chess player Lawrence Trent during a tournament livestream.

*First*, Niemann fails to allege facts that would support imposing liability on Play Magnus for Trent's statements.  (Mot. 12.)  Niemann now claims that Trent acted as Play Magnus's "agent." (Opp. 7.)  But as noted above, he not only failed to allege an agency theory in the SAC, but he failed to allege any facts that could support such a theory.  And his new agency theory contradicts statements made during the very livestream in question, where Trent was repeatedly described as a special *guest* commentator on the livestream.  (*See* ECF No. 126-3, Ex. 1 at 00:16:34-00:17:00.) The fact remains that Niemann failed to allege any basis for holding Play Magnus liable for Trent's statement, and his new but clearly erroneous agency theory does not change that.  *See, e.g.*, *Dotzler v. Perot*, 899 F. Supp. 416, 424 (E.D. Mo. 1995), *aff'd*, 124 F.3d 207 (8th Cir. 1997) (dismissing defamation claim where the plaintiff failed to support allegation of agency relationship); *DERMAdoctor*, 2022 WL 16709708, at *3 (dismissing claims on motion to dismiss where the court could not reasonably infer from the pleadings that an agency relationship existed).[10]

*Second*, the statement is not actionable on its own terms.  (Mot. 12-14.)  Niemann takes issue with the following excerpt:  "'I am not going to reveal what I've seen,' but 'I've seen things that were previously unavailable to me' and 'Magnus's side is much more credible from what I have seen.'"  (Opp. 8 (quoting SAC ¶ 120).)  As Play Magnus explained in its motion, the first

---

[10] The inapposite case Niemann cites involved a circumstance in which the defendants *themselves* defamed the plaintiff, as Niemann concedes.  (Opp. 10 (citing *Hampsey v. Nacello*, 2007 WL 9805531, at *3 (E.D. Mo. Jan. 31, 2007)).)

part of this quote—regarding "previously unavailable" information—is not defamatory.  *See Stockley v. Joyce*, 963 F.3d 809, 819 (8th Cir. 2020) (explaining that a statement that new evidence was uncovered is not defamatory as a matter of law).  Niemann has no response other than to ignore the relevant analysis in *Stockley*.  (*See* Opp. 9.)

The next part of the statement—that Trent believed "[Carlsen's] side is much more credible from what [he had] seen" (SAC ¶ 120)—is an opinion by Trent regarding his views.  It is not merely "couched as opinion" as Niemann suggests (Opp. 9)—it *is* an opinion.  (Mot. 13.)  Niemann's only response is to mischaracterize the statement beyond recognition, claiming that Trent "accuse[d] Niemann of cheating and falsely implie[d] that there was evidence of such cheating" that was "undisclosed."  (Opp. 9.)  But Niemann does not try to square that remarkable rendition with the actual words that Trent used.  And while Niemann concedes that any allegedly defamatory statement must be "considered in context" (*id.*), he refuses to acknowledge the context in which Trent made the statement at issue here.  That is because such context eviscerates Niemann's claim.  Trent stressed that he was expressing an "opinion" about which side of an ongoing controversy he found more "credible," and that this opinion was *not* based on "inside" information but instead on information "available for everyone."  (Mot. 14; ECF No. 126-3, Ex. 1 at 00:34:00-00:34:42.)  For these reasons, the handful of cases Niemann string cites without elaboration are inapposite.

Two of those cases—*Cuba's United Ready Mix, Inc. v. Bock Concrete Founds., Inc.*, 785 S.W.2d 649, 651 (Mo. Ct. App. 1990), and *Turntine v. Peterson*, 959 F.3d 873, 886-87 (8th Cir. 2020)—involved statements implying knowledge of undisclosed facts, which is not the case here.  In *Vitti v. Vockrodt*, 2016 WL 4487884, at *7 (W.D. Mo. Aug. 24, 2016), the defendant in a "one sentence argument" relied solely on the word "probably" to convert an obvious factual statement

13

into an opinion.  And *In re Westfall*, 808 S.W.2d 829 (Mo. 1991), was not a defamation case but instead an attorney disbarment proceeding for professional misconduct.  Needless to say, these cases provide no support to Niemann.

*Third*, Niemann again failed to allege this statement was made with actual malice.  (Mot. 14.)  Indeed, Niemann does not say anything about actual malice beyond his misguided theory of actual malice refuted above (*see supra* at 11-12).  And as with the *Avengers* meme, Niemann makes no effort to connect that theory to the specific statement by Trent that he is challenging.

**B.    Niemann's Intentional Interference And Conspiracy Claims Fail.**

Niemann's claim for intentional interference fails.  Niemann fails to allege (or even address in opposition for that matter) that Play Magnus knew about his "business expectancies" or that Play Magnus intentionally interfered with them.  His conclusory assertion that Defendants "worked together toward their common objectives" cannot rescue his claim.  (Opp. 14.) Niemann's civil conspiracy claim also fails because, as Niemann concedes, it is derivative of his other claims.  (ECF No. 108 at 65 n.35.)  Further, Niemann still fails to allege an agreement between the Defendants.  (Opp. 14.)  Thus, Niemann's civil conspiracy claim must be dismissed.

**III.   THE OPPOSITION CONFIRMS THAT NIEMANN'S ANTITRUST CLAIMS MUST BE DISMISSED.**

Finally, Niemann's antitrust claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, must be dismissed for all the reasons set forth in the motion and in the accompanying motion of Chess.com.  In opposition, Niemann makes no effort to allege antitrust injury or facts supporting the elements of his claims and instead relies on his prior insufficient pleadings.  (*See* Opp. 14; *see also* ECF No. 84 at 6-15; ECF No. 112 at 1-8.)  He otherwise spills his remaining ink arguing the "technical[ities]" of Chess.com and Carlsen's alleged actions and the format of the events sponsored by Play Magnus affiliates that Niemann concedes he played in.  (Opp. 14-15.)

But the bottom line is that, in Niemann's own words, "Play Magnus" did "not technically ban Niemann" from its platform.  (*Id.* at 15.)  Ever.  Thus, since his allegations supporting his antitrust claims are false, the antitrust claims against Play Magnus must be dismissed as frivolous.

## CONCLUSION

For the foregoing reasons, the claims against Play Magnus should be dismissed, and Play Magnus should be awarded fees and costs under Connecticut's anti-SLAPP statute.


DATED:  May 12, 2023                          Respectfully submitted,

*/s/ Nima H. Mohebbi*                          */s/ Jamie L. Wine*
Nima H. Mohebbi (# 275453CA)                   Jamie L. Wine (# 4529251NY)
Sarah F. Mitchell (# 308467CA)                 Blake E. Stafford (# 888324775DC)
Michael A. Hale (# 319056CA)                   **LATHAM & WATKINS LLP**
**LATHAM & WATKINS LLP**                       1271 Avenue of the Americas
355 S. Grand Ave., Suite 100                   New York, NY 10020
Los Angeles, CA 90071                          Tel: (212) 906-1200
Tel: (213) 485-1234                            *jamie.wine@lw.com*
*nima.mohebbi@lw.com*                          *blake.stafford@lw.com*
*sarah.mitchell@lw.com*
*michael.hale@lw.com*
                                               Derek Teeter (# 59031MO)
                                               Spencer Tolson (# 74467MO)
*/s/ Jeffrey B. Jensen*                        **HUSCH BLACKWELL LLP**
Jeffrey B. Jensen (# 46745MO)                  4801 Main, Suite 1000
Kate Ledden (# 66026MO)                        Kansas City, MO 64112
**HUSCH BLACKWELL LLP**                        Tel: (816) 983-8000
190 Carondelet Plaza, Suite 600                *derek.teeter@huschblackwell.com*
St. Louis, MO 63105                            *spencer.tolson@huschblackwell.com*
Tel: (314) 480 1500
*jeff.jensen@huschblackwell.com*
*kate.ledden@huschblackwell.com*


*Counsel for Defendant Play Magnus AS d/b/a Play Magnus Group*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 12, 2023, the foregoing document was served

on all counsel of record by ECF.

DATED: May 12, 2023                      */s/ Nima H. Mohebbi*
                                         Nima H. Mohebbi (# 275453CA)
                                         Attorney for Defendant Play Magnus
                                         AS d/b/a Play Magnus Group
                                         **LATHAM & WATKINS LLP**
                                         355 S. Grand Ave., Suite 100
                                         Los Angeles, CA 90071
                                         Tel: (213) 485-1234