# EXHIBIT B

346 Conn. 534
Supreme Court of Connecticut.

J. Xavier PRYOR
v.
Timothy BRIGNOLE et al.

(SC 20581), (SC 20583)
|
Argued February 24 and October 12, 2022
|
Officially Released May 2, 2023[*]

**Synopsis**

**Background:** Attorney brought action against law firm that was his former employer and firm's owner for breach of non-disparagement provision of settlement agreement arising from owner's sending letters to various news outlets and persons concerning attorney's arrest and prosecution. The Superior Court, Judicial District of Hartford, Matthew J. Budzik, J., denied defendants' special motions to dismiss under anti-SLAPP statute. Defendants appealed. The Appellate Court dismissed appeal. Defendants petitioned for certification to appeal, which was granted, and appeals were consolidated.

The Supreme Court, Robinson, C.J., held that defendants asserted a colorable anti-SLAPP claim, thus making the denial of anti-SLAPP motion a final appealable judgment.

Judgment of Appellate Court reversed and remanded.

D'Auria, J., filed dissenting opinion in which Ecker, J., joined.

**Procedural Posture(s):** Petition for Discretionary Review; Interlocutory Appeal; Motion to Dismiss.

**Attorneys and Law Firms**

Sarah F. D'Addabbo, with whom was Mario Cerame, Hartford, for the appellants (defendants).

Matthew S. Blumenthal filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

William Tong, attorney general, Clare Kindall, former solicitor general, Matthew I. Levine, assistant attorney general, and Daniel M. Salton, assistant attorney general, filed a brief for the state of Connecticut as amicus curiae.

Robinson, C. J., and McDonald, D'Auria, Mullins, Ecker and Prescott, Js.[**]

**Opinion**

ROBINSON, C. J.

*536 **702 The sole issue in these certified appeals is whether the denial of a special motion to dismiss filed pursuant to our state's anti-SLAPP[1] statute, General Statutes § 52-196a,[2] is an appealable final judgment. *537 The defendants, Timothy Brignole and Brignole, Bush & Lewis, LLC (law firm), appeal, upon our granting of their petitions for certification,[3] from the judgments of the Appellate Court, which dismissed their appeals from the order of the trial court denying their special motions to dismiss the underlying civil action brought against them by the plaintiff, **703 J. Xavier Pryor.[4] Specifically, the defendants claim that the Appellate Court improperly dismissed their respective appeals for lack of a final judgment because (1) the legislature expressly provided for an interlocutory appeal of the denial of a special motion to dismiss in subsection (d) of § 52-196a, and (2) the denial of a special motion to dismiss filed *538 pursuant to the anti-SLAPP statute constitutes an appealable final judgment under the second prong of State v. Curcio, 191 Conn. 27, 31, 463 A.2d 566 (1983). For the reasons set forth in the companion case that we also decide today, Smith v. Supple, 346 Conn. 928, ––– A.3d –––– (2023), we conclude that a trial court's denial of a colorable special motion to dismiss filed pursuant to § 52-196a is an appealable final judgment under Curcio. Accordingly, we reverse the judgment of the Appellate Court and remand the case to that court for further proceedings according to law.

The record reveals the following relevant facts and procedural history, which are undisputed for purposes of this appeal. Brignole is the owner, manager, and principal of the law firm. The law firm previously employed the plaintiff as an associate attorney. In 2015, the law firm brought a civil action against the plaintiff and another law firm in the Superior Court in the judicial district of Hartford (2015 action). In March, 2018, the plaintiff and the law firm resolved the 2015 action by executing a settlement agreement pursuant to which the plaintiff paid the law firm $45,000 in exchange for a general release of all causes of action brought or which

could have been brought in the 2015 action. The settlement agreement also included a nondisparagement clause under which Brignole, in particular, agreed "to not disparage or criticize [the plaintiff] and to not do or say anything that could harm the [plaintiff's] interests or reputation ...."

Approximately three months later, the plaintiff was arrested and charged with assault in the third degree, in violation of General Statutes § 53a-61, and risk of injury to a child, in violation of General Statutes § 53-21, in connection with an incident in West Hartford. Thereafter, Brignole sent or caused to be sent to "various news outlets and persons" an anonymous letter bearing the headline "Attorney Beats Wife [i]n Front of **\*539** Child," which stated the factual basis for the charges against the plaintiff, identified the plaintiff by his name, date of birth, and office address, and opined that his conduct was a matter of public concern because it implicated his fitness to practice law and because, Brignole claimed, the judicial system was likely to cover up the matter because the plaintiff is an attorney.[5] Brignole addressed **\*\*704** each letter with the return address of the plaintiff's law office to make it look like it was sent by a member of the plaintiff's staff.

Subsequently, the plaintiff brought this action against the defendants, claiming that Brignole's actions constituted a breach of the nondisparagement provision of the settlement agreement, could have harmed his reputation and interests, caused him to suffer economic damages, and deprived him of the benefit of the agreement.[6] The defendants thereafter filed separate special **\*540** motions to dismiss the action as a SLAPP suit pursuant to § 52-196a, along with accompanying memoranda of law, in which they (1) denied the allegations in the complaint, and (2) contended that the plaintiff's breach of contract claims were based on the exercise of a right protected by the anti-SLAPP statute, namely, "the right of free speech in connection with a matter of public concern," and that the plaintiff was unable to "show probable cause that he [would] prevail on the merits of his claim." The plaintiff objected to the defendants' respective special motions to dismiss.

On August 24, 2020, the trial court issued a memorandum of decision denying the defendants' special motions to dismiss, rejecting their argument that "the letters constitute[d] an exercise of free speech on a matter of public concern and, thus, [were] protected under § 52-196a." The court observed that the "problem ... [was] that [Brignole, as manager, owner, and principal of the law firm] denie[d] sending the letters at issue and, thus, denie[d] engaging in any speech at all, protected or not." Thus, the court determined that the defendants could not meet their "initial burden" under § 52-196a (e) (3) of showing, by a preponderance of the evidence, that they were being sued because Brignole exercised his right of free speech.[7] As such, the trial court denied the defendants' special motions to dismiss.

The defendants subsequently filed separate appeals from the denials of their special motions to dismiss **\*541** with the Appellate Court. The plaintiff moved to dismiss each appeal for lack of an appealable final judgment. The defendants then objected, arguing that the denial of a special motion to dismiss is immediately appealable both under the plain language of § 52-196a (d) and as a final judgment under this court's decision in State v. Curcio, supra, 191 Conn. at 31, 463 A.2d 566. The Appellate **\*\*705** Court ultimately granted the plaintiff's motions to dismiss and rendered judgments dismissing the appeals. These certified appeals followed.[8] See footnote 3 of this opinion.

The primary issue raised in these certified appeals—namely, whether a trial court's denial of a special **\*542** motion to dismiss under the anti-SLAPP statute can constitute an appealable final judgment—is identical to that considered in *Smith* v. *Supple*, supra, 346 Conn. at 928, ––– A.3d –––. In that case, we examined relevant statutory text, legislative history, and analogous laws from our sister states, and concluded that our "anti-SLAPP statute affords a defendant a substantive right to avoid litigation on the merits ...." Id., at 949, ––– A.3d –––; see id., at 938–60, ––– A.3d –––. We then continued to conclude that, in cases in which a defendant can assert a colorable claim that a trial court's denial of a special motion to dismiss under that statute has placed that particular right at risk, an immediate appeal may be taken pursuant to the second prong of Curcio. See id., at 949, ––– A.3d –––; see also *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 41, 213 A.3d 1110 (2019) ("[a defendant] must make at least *a colorable claim* that some recognized statutory or constitutional right is at risk" (emphasis added; internal quotation marks omitted)).

Turning to the record in these certified appeals, we now consider whether the defendants have asserted a colorable claim to the protections afforded by the anti-SLAPP statute. In particular, we must determine whether the defendants have asserted a colorable claim that Brignole's conduct, as alleged in the plaintiff's complaint, is based on the exercise of his

"right of free speech," as that term has been defined by our legislature in § 52-196a (a) (2).

The statute defines the phrase "right of free speech" as "communicating, or conduct **706 furthering communication, in a public forum on a matter of public concern ...." General Statutes § 52-196a (a) (2). Although the term "public forum" is not defined, the phrase "matter of public concern" is defined as "an issue related to (A) health or safety, (B) environmental, economic or community well-being, (C) the government, zoning and other regulatory matters, (D) a public official or public *543 figure, or (E) an audiovisual work ...." General Statutes § 52-196a (a) (1).

A review of relevant case law reveals several Superior Court decisions that have interpreted the term "public forum," as used in the anti-SLAPP statute, to include communications to newspapers and other traditional media outlets. See, e.g., *Primrose Cos., Inc.* v. *McGee*, Superior Court, judicial district of Waterbury, Docket No. UWY-CV-21-6062747-S, 2022 WL 3712636 (August 26, 2022) (citing cases and finding that defendant's letter to editors, which was published in newspaper, was action in public forum); *Lawrence* v. *Chambers*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FST-CV-20-5022942-S, 2020 WL 6121712 (September 21, 2020) ("[t]he newspaper and television station[s] are public for[a]" in exercise of free speech); *Pacheco Quevedo* v. *Hearst Corp.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FST-CV-19-5021689-S, 2019 WL 7900036 (December 19, 2019) ("[e]mbedded in anti-SLAPP laws like § 52-196a is the fundamental principle that 'news reporting activity is free speech' ").

Courts of this state, in construing our anti-SLAPP statute, have further concluded that speech that involves a "matter of public concern" includes "issues of economic or community [well-being] ... and other regulatory matters .... This would appear to include unethical behavior alleged against a regulated professional. As to an allegation of illegal behavior, [i]t is well established that [t]he commission of [a] crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions ... are without question events of legitimate concern to the public .... Indeed, [p]ublic allegations that someone is involved in crime generally are speech on a matter of public concern." (Citation omitted; internal quotation marks omitted.) *Rockoff* v. *Annulli*, Superior Court, judicial district of Hartford, Docket No. HHD-CV-20-6122116-S, 2020 WL 4333864 (July 10, 2020) (70 Conn. L. Rptr. 39, 40); see, e.g., *544 *Noble* v. *Hennessey*, Superior Court, judicial district of New London, Docket No. KNL-CV-20-6045166-S, 2021 WL 830014 (January 12, 2021) (attorney grievance complaint was related to matter of public concern because legal profession is regulated and complaint alleged unethical behavior); *Rockoff* v. *Annulli*, supra, 70 Conn. L. Rptr. at 40 (allegations of unethical and criminal behavior by regulated professional concerning private real estate transaction involved matters of public concern); see also *Graves* v. *Chronicle Printing Co.*, Superior Court, judicial district of Tolland, Docket No. CV-18-5010056-S, 2018 WL 6264070 (November 7, 2018) (67 Conn. L. Rptr. 442, 446) ("[p]ublishing articles concerning the arrest and prosecution of a person accused of harming children certainly satisfies the statutory definitions of 'free speech' and 'matter of public concern' "); cf. *Gleason* v. *Smolinski*, 319 Conn. 394, 412, 125 A.3d 920 (2015) (" '[s]peech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community ... or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public' ").

Although the pertinent case law is less developed, courts in other jurisdictions **707 presented with similarly worded anti-SLAPP statutes have also considered the merits of special motions to dismiss, even in cases in which the defendant has denied making all or some of the underlying statements alleged. Those courts have reasoned, as the defendants in the present case initially argued, that an initial analysis under their states' respective anti-SLAPP statutes should turn on the nature of the statements alleged in the complaint. See *Spirtos* v. *Yemenidjian*, 137 Nev. 711, 714, 499 P.3d 611 (2021) (concluding, under similarly worded statute, that "[the defendant's] denial that he made the alleged statement [was] irrelevant to step one of the anti-SLAPP analysis" (emphasis omitted)); *545 *Hersh* v. *Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (dismissal under Texas' anti-SLAPP statute was not precluded by fact that defendant denied making statements at issue because "[t]he basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations," and, "[w]hen it is clear from the plaintiff's pleadings that the action is covered by the [anti-SLAPP statute], the defendant need show no more").

Because the issue before us is limited to whether the defendants in the present case have asserted a *colorable*

claim to the protections afforded by our state's anti-SLAPP statute, as required to obtain an immediate review of the trial court's denial of their special motions to dismiss under the second prong of *Curcio*, we need not determine whether any of the foregoing persuasive authority is either factually distinguishable or legally correct. A showing of colorability in this context, although meaningful, presents a lower bar. See, e.g., *In re Santiago G.*, 325 Conn. 221, 231, 157 A.3d 60 (2017) ("A colorable claim is one that is superficially well founded but that may ultimately be deemed invalid .... For a claim to be colorable, the defendant need not convince the trial court that he necessarily will prevail; he must demonstrate simply that he *might* prevail." (Citation omitted; emphasis in original; internal quotation marks omitted.)). The existence of the previously cited case law affords the defendants with at least a superficially well founded claim that the conduct alleged in the plaintiff's complaint—namely, Brignole's sending letters to "various news outlets and persons" concerning the arrest and prosecution of an attorney—could be considered conduct furthering communication in a public forum on a matter of public concern. Cf. *Graves* v. *Chronicle Printing Co.*, supra, 67 Conn. L. Rptr. at 446 (police officer's sending statements to newspaper concerning allegations of criminal behavior fell within scope of anti-SLAPP statute, as officer was "furthering ***546** communication, in a public forum on a matter of public concern" (internal quotation marks omitted)).

Accordingly, we conclude that the trial court's denial of the defendants' colorable special motions to dismiss under § 52-196a constitutes an appealable final judgment under *Curcio*.[9] The Appellate Court, therefore, improperly dismissed the defendants' **708** respective appeals for lack of a final judgment.[10]

The judgments of the Appellate Court are reversed and the cases are remanded to that court for further proceedings according to law.

In this opinion McDONALD, MULLINS and PRESCOTT, Js., concurred.

D'AURIA, J., with whom ECKER, J., joins, dissenting. Today, in *Smith* v. *Supple*, 346 Conn. 928, ––– A.3d ––– (2023), one of two companion cases to the present case that we also decide today, a majority of this court holds that an appeal from the denial of a special motion to dismiss filed pursuant General Statutes § 52-196a, our anti-SLAPP statute, constitutes an appealable final judgment under the second prong of ***547** *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983), if the special motion to dismiss is premised on a "colorable claim" that the underlying cause of action is based on the defendants' exercise of their rights to free speech, to free association, or freedom to petition the government. *Smith* v. *Supple*, supra, at 930, ––– A.3d –––; see id., at 960, ––– A.3d –––. I dissented in *Smith* because I do not interpret § 52-196a to grant either a right to an immediate appeal, a right to immunity from suit, or any analogous right not to proceed to trial before an appellate court has reviewed the trial court's gatekeeping determination. In that dissent, I detailed not just my disagreement with the majority's statutory construction analysis—especially its interpretation of the nature of the right § 52-196a creates—but also my belief that an appeal of that gatekeeping ruling, on a record assembled in an expedited fashion under the statute, does not permit the level of judicial scrutiny often required to adjudicate weighty constitutional issues at the appellate level, especially such intensely fact based issues as whether statements were made in a public forum or on a matter of public concern. See id., at 966, 971–72, 1001–1002, ––– A.3d ––– (*D'Auria, J.*, dissenting). Therefore, in my view, the denial of these motions should not constitute appealable final judgments.[1] See id., at 966, 1001–1002, ––– A.3d ––– (*D'Auria, J.*, dissenting).

My disagreement with the majority in *Smith* was also premised, in no small part, on my belief that the colorable claim standard the majority established in that case is such a low bar as to be essentially no bar at all, permitting appeals from the denial of virtually every special motion to dismiss. Any illusions that the colorable ***548** claim standard will provide the Appellate Court—where, in the first instance, these interlocutory appeals will almost always be filed and any final judgment challenges **709** resolved—with a tool to bat aside and shortcircuit appeals that have little hope of prevailing are, in my view, dashed by the majority's determination in the present case that the Appellate Court improperly dismissed the defendants' appeal and that, therefore, even this appeal will have to be briefed, argued, and decided before the parties return to the trial court.

The plaintiff, J. Xavier Pryor, brought this action against the defendants, Timothy Brignole and Brignole Bush & Lewis, LLC, claiming that an anonymous letter Brignole

sent to various news outlets about the plaintiff breached the nondisparagement provision of their settlement agreement and caused the plaintiff to sustain (1) harm to his reputation and interests, (2) economic damages, and (3) the loss of the benefit of the settlement agreement. Both defendants filed special motions to dismiss the action as a SLAPP suit pursuant to § 52-196a, contending that the plaintiff's breach of contract claims were based on Brignole's "right of free speech in connection with a matter of public concern ...." The trial court denied the defendants' motions, concluding that, because Brignole had denied sending the letters at issue, the defendants had failed to satisfy their "initial burden" under § 52-196a (e) (3) of showing, by a preponderance of the evidence, that they were being sued as a result of Brignole's exercise of his free speech rights. In other words, the trial court determined that the defendants, having denied that Brignole sent the letters, could not avail themselves of the statute's protections because they could not demonstrate that they were being sued for the exercise of their first amendment rights insofar as there was no such exercise according to them. They therefore had not invoked the special **\*549** motion procedure afforded under § 52-196a for its intended purpose: to protect those claiming they had been sued for exercising their first amendment rights.

The defendants filed separate appeals with the Appellate Court, and, without opinion, the Appellate Court dismissed the appeals for lack of a final judgment. As I indicated previously, I would hold that the Appellate Court properly dismissed the appeals because I do not believe that the legislature intended to provide either a statutory right to appeal the ruling or any kind of right that would satisfy the second prong of Curcio.[2]

The majority, however, holds that the defendants have asserted "a colorable claim that Brignole's conduct, as alleged in the plaintiff's complaint, is based on the exercise of his 'right of free speech,' as that term has been defined by our legislature in § 52-196a (a) (2)." The majority's holding means that the defendants can have their cake and eat it, too. That is, Brignole can deny that he disparaged the plaintiff but can still stop his lawsuit in its **\*\*710** tracks and take advantage of a procedure by which the trial court must give priority to the defendants' motions. See General Statutes § 52-196a (e) (1) ("[t]he court shall conduct an expedited hearing on a special motion to dismiss"). And, having been unsuccessful, **\*550** the defendants can perpetuate this special treatment by taking a rarely afforded interlocutory appeal of the denials of their special motions to dismiss, preventing the plaintiff from pursuing his case for as long as the appellate process takes. The plaintiff must hurry up and wait for someone who actually denies engaging in constitutionally protected speech at all.

The majority's only support for this proposition is that "courts in [two] other jurisdictions presented with similarly worded anti-SLAPP statutes have also considered the merits of special motions to dismiss, even in cases in which the defendant has denied making all or some of the underlying statements alleged." The majority goes on to state: "Because the issue before us is limited to whether the defendants in the present case have asserted a colorable claim to the protections afforded by our state's anti-SLAPP statute, as required to obtain an immediate review of the trial court's denial of their special motions to dismiss under the second prong of Curcio, we need not determine whether any of the foregoing persuasive authority is either factually distinguishable or legally correct." (Emphasis omitted.)

The difficulty I have with the majority's approach—which provides a procedural advantage to defendants for which there is no analogue for plaintiffs—is similar to the difficulty I had with the majority's interpretation of a different part of the statute in Smith. That is, in its zeal to examine precedents of other state courts and follow suit, the majority does not conduct any kind of analysis of Connecticut's anti-SLAPP statute, under Connecticut's own legal principles (including, specifically, General Statutes § 1-2z), to determine if § 52-196a even arguably supports the majority's contention that a defendant may deny making the alleged statements —a defense that does not involve any constitutional rights —while taking advantage of the benefits afforded under § 52-196a. Irrespective of what courts in other **\*551** states have held, once we have properly construed § 52-196a, we might conclude that its protections do not even colorably extend to a defendant who denies making a statement at all.

Under a proper § 1-2z analysis, for the defendants to succeed on their special motions to dismiss under § 52-196a, they must have raised in their motions a defense that their actions constituted protected speech. Specifically, § 52-196a (b) provides in relevant part that, "[i]n any civil action in which a party files a complaint ... against an opposing party that is based on the opposing party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to dismiss ...." Also, subsection (e) (3) of § 52-196a directs that

the court "shall" grant the motion if the moving party "makes an initial showing, by a preponderance of the evidence, that the opposing party's complaint ... is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association ...."

At least arguably, the language of § 52-196a (b) indicates that a defendant has a right to file a special motion to dismiss only when the underlying action is based on the defendant's right of free speech, **711 right to petition the government, or right of association. Similarly, the plain language of subsection (e) (3) suggests that a defendant must raise and establish by a preponderance of the evidence that the plaintiff's action violates his first amendment rights. Although the defendants in the present case did raise a first amendment defense in their special motions to dismiss, they also raised as their main defense that Brignole did not make the alleged statements. Although it is standard and acceptable procedure for parties to plead and argue in the alternative, *552 § 52-196a creates a special proceeding that the statute makes very clear is reserved only for those invoking constitutional rights that are imperiled. It is thus at least arguable under the statutory language that § 52-196a does not apply to defendants who contest making the statements at issue. If true, then a plaintiff's own constitutional right—of access to courts—would be unnecessarily compromised in favor of those whom the statute does not protect. I see no impediment to deciding that issue in this certified appeal, even as a matter of whether the defendants have a colorable claim.

Accordingly, for the reasons detailed in my dissent in *Smith*, and for the reasons discussed in this opinion, I respectfully dissent. [3]

**All Citations**

346 Conn. 534, 292 A.3d 701

---

## Footnotes

\*  May 2, 2023, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

\*\*  This case originally was argued on February 24, 2022, before a panel consisting of Chief Justice Robinson, and Justices McDonald, D'Auria, Mullins and Ecker. Thereafter, the court sua sponte ordered that the case be reargued on October 12, 2022, before that same panel. Subsequently, Judge Prescott was added to the panel. He has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

1  "SLAPP is an acronym for strategic lawsuit against public participation ...." (Internal quotation marks omitted.)

Lafferty v. Jones, 336 Conn. 332, 337 n.4, 246 A.3d 429 (2020), cert. denied, ––– U.S. ––––, 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021).

2  General Statutes § 52-196a provides in relevant part: "(b) In any civil action in which a party files a complaint, counterclaim or cross claim against an opposing party that is based on the opposing party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to dismiss the complaint, counterclaim or cross claim.

\* \* \*

"(d) The court shall stay all discovery upon the filing of a special motion to dismiss. The stay of discovery shall remain in effect until the court grants or denies the special motion to dismiss and any interlocutory appeal thereof. Notwithstanding the entry of an order to stay discovery, the court, upon motion of a party and a

showing of good cause, or upon its own motion, may order specified and limited discovery relevant to the special motion to dismiss.

\* \* \*

"[e] (3) The court shall grant a special motion to dismiss if the moving party makes an initial showing, by a preponderance of the evidence, that the opposing party's complaint, counterclaim or cross claim is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, unless the party that brought the complaint, counterclaim or cross claim sets forth with particularity the circumstances giving rise to the complaint, counterclaim or cross claim and demonstrates to the court that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint, counterclaim or cross claim. ..."

3   We granted the defendants' petitions for certification to appeal to consider whether the Appellate Court properly dismissed their respective appeals from the trial court's denial of their special motions to dismiss pursuant to § 52-196a for lack of a final judgment. See *Pryor* v. *Brignole*, 336 Conn. 941, 249 A.3d 353 (2021); *Pryor* v. *Brignole*, 336 Conn. 933, 248 A.3d 3 (2021). This court subsequently consolidated the defendants' certified appeals and ordered joint briefing. See Practice Book § 61-7 (b) (1).

4   We note that the plaintiff declined to exercise his right to briefing and oral argument in this consolidated appeal and that we granted permission to the state of Connecticut and the Connecticut Trial Lawyers Association to file briefs as amici curiae.

5   Specifically, the letter provided in relevant part: "To Whom It May Concern:

"On June 10, 2018 [the plaintiff] ([o]ffice, 525 Windsor [Avenue], Windsor, CT) was arrested in West Hartford ... on charges of [a]ssault [in the third] [d]egree 'with intent to cause grave physical injury' and [r]isk of [i]njury to a [m]inor, a [c]lass C [f]elony. While driving a car in West Hartford with his young child in the back seat, [the plaintiff] got in an argument with his wife and he punched her in the face. When he stopped the car, she fled to an adjacent store and called [the] police. The police observed [that] she had a swollen eye from being punched.

"Under [rule 8.4 of the] Connecticut Rules of Professional Conduct ... it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the fitness of a lawyer. Commentary: [l]awyers are subject to discipline when they violate these rules and 'offenses involving violence, dishonesty and breach of trust are in that category.'

"I bring this to your attention out of public concern and under your watchful eye of enforcing the rules and public mandates. The fact that [the plaintiff] is a lawyer going around assaulting people reflects badly on the legal community as a whole. As a lawyer in the Hartford [c]ourts he is held to a high standard of public trust. His [w]ife and [c]hild are real victims and he needs to be held accountable. Just because he is a lawyer the system will try to cover this up. You are our [v]ictims' [a]dvocates. Help us please."

6   The plaintiff also filed an attorney grievance against Brignole, claiming that Brignole's actions violated several Rules of Professional Conduct. The Hartford Judicial District Grievance Panel for Geographic Area 13 and the city of Hartford reviewed the complaint and the proffered defenses and determined that no probable cause existed that Brignole had committed professional misconduct by sending the letters.

7   In so concluding, the trial court rejected the defendants' argument "that the court should simply assume [that] the allegations of the complaint are true for purposes of the motion, as may be done, in some circumstances, on a motion to dismiss pursuant to Practice Book § 10-30." The court determined that "[§] 52-196a (e) (3)

plainly sets forth a requirement that the moving party must establish his right to the special protections of the statute by the presentation of actual facts, not assumptions valid only for purposes of the [special] motion [to dismiss]."

8    On February 1, 2022, this court ordered supplemental briefing on the issue of "whether the Appellate Court's dismissal of [the law firm's] appeal ... can be affirmed on the alternative ground that the Appellate Court lacked subject matter jurisdiction to consider the appeal because [the law firm] failed to amend its appeal under Practice Book § 61-9 to include the trial court's November 18, 2020 ruling denying its special motion to dismiss." (Internal quotation marks omitted.) Having reviewed the record in this case as a whole, we conclude that the trial court's November 18, 2020 ruling is most fairly characterized as an articulation clarifying that it had previously denied the law firm's special motion to dismiss—for the same reason as Brignole's—in its initial ruling dated August 24, 2020. The trial court's articulation, which was issued in response to a sua sponte order from the Appellate Court, does not appear to us to constitute a separate, substantive decision on the merits of the law firm's underlying motion to dismiss so as to require an amended appeal under Practice Book § 61-9. See, e.g., *In re Santiago G.*, 325 Conn. 221, 232–33, 157 A.3d 60 (2017) (noting that "the well established rule that every presumption is to be indulged in favor of jurisdiction" extends to appellate proceedings (internal quotation marks omitted)). But cf. *Gibson v. Jefferson Woods Community, Inc.*, 206 Conn. App. 303, 304–305 n.1, 260 A.3d 1244 (given plaintiff's failure to file amended appeal, Appellate Court lacked jurisdiction over appeal from trial court's subsequent granting of motion to dismiss filed by codefendant, when existing appeal was limited to granting of motion to dismiss filed by different defendant, despite fact that motions were granted on "same bases" (internal quotation marks omitted)), cert. denied, 339 Conn. 911, 261 A.3d 747 (2021); *Juliano v. Juliano*, 96 Conn. App. 381, 386, 900 A.2d 557 (Appellate Court lacked jurisdiction over appeal from denial of motion to open conversion and fraud judgment, filed subsequent to original appeal from that judgment, because, "[i]f [the party] desired appellate review of the court's denial of his motion to open, he should have filed an appeal form indicating such intention or amended the existing form"), cert. denied, 280 Conn. 921, 908 A.2d 544 (2006).

9    We note that the trial court's decision in the present case focused exclusively on the first step of the burden shifting analysis set forth in § 52-196a (e) (3). As a result, we express no opinion on the various other aspects of this case, such as issues of contractual waiver and causation, which are more properly considered under the second step of § 52-196a (e) (3). See, e.g., *Thompson v. Inglewood Unified School District*, Docket No. B264151, 2016 WL 5462850, *5 n.4 (Cal. App. September 29, 2016) (finding that defendants had met their burden under step one of California's anti-SLAPP statute and noting that whether speech violated nondisparagement clause was issue addressed in probability of prevailing on claims analysis under step two).

10   The dissent posits that we should "not saddle the Appellate Court with a remand" in this case because of the several novel issues that this case presents. Footnote 3 of the dissenting opinion. We disagree. We note that transfer remains available as an appropriate means for addressing—without additional delay—any novel constitutional or statutory issues that are presented with respect to the merits of this appeal. See Practice Book § 65-1.

1    Rather, I interpret § 52-196a as granting a new procedural right, entitling the defendants to raise as early as possible in the litigation their preexisting right to immunity from liability when the underlying defense is premised on their exercise of a first amendment right or a state constitutional analogue. The defendants had the right to file a special motion to dismiss early in the litigation process, with discovery and its associated costs and burdens stayed until the trial court resolved the special motion. See *Smith v. Supple*, supra, 346 Conn. at 970–71, 976, 987–88, ––– A.3d ––– (*D'Auria, J.*, dissenting).

2   As I indicated in my dissent in *Smith*, under my interpretation of the statutory right at issue, the defendants have received the intended benefits of § 52-196a. See *Smith* v. *Supple*, supra, 346 Conn. at 966, ––– A.3d ––– (*D'Auria, J.*, dissenting). The trial court, acting in its gatekeeping function, considered the merits of the underlying lawsuit, determining that the defendants had failed to " '[make] an initial showing, by a preponderance of the evidence,' " establishing that the plaintiff brought the underlying lawsuit abusively or frivolously to chill the defendants' right to free speech. More specifically, the trial court ruled that nothing in the record demonstrated that Brignole had actually exercised his right to free speech. Thus, the defendants, "early in the process," had the opportunity to "try to dismiss a frivolous or abusive claim that has no merit" and did not have to incur significant costs of litigation until they received a determination on their motion. (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 382 n.36, 246 A.3d 429 (2020), cert. denied, ––– U.S. –––, 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021).

3   I also disagree with the rescript in this case. I would not saddle the Appellate Court with a remand and ask it to decide, even in the first instance, the several novel issues that the majority's approach to our statute creates in a case such as this. For one reason, we are going to have to resolve these questions anyhow at some point. Moreover, if it turns out that the trial court properly denied the special motions to dismiss, the plaintiff's action has already been delayed almost three years.

---

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.